UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. JAMES R. BERKLEY, Relator, <br><br> v. <br><br> OCEAN STATE, LLC; NEW HARBOR CAPITAL FUND LP; NEW HARBOR CAPITAL FUND II LP; NEW HARBOR CAPITAL MANAGEMENT LP; BLUEPRINT TEST PREPARATION, LLC; and FYZICAL ACQUISITION HOLDINGS, LLC, Defendants. | C.A. No. 20-538-JJM-PAS |

## ORDER

Pursuant to the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3730, Relator James R. Berkley filed this lawsuit against Defendants Ocean State, LLC, New Harbor Capital Fund LP, New Harbor Capital II LP, New Harbor Capital Management LP, Blueprint Test Preparation, LLC, and Fyzical Acquisition Holdings, LLC alleging three counts for violating the FCA. ECF No. 28. Defendants have moved to dismiss. ECF No. 29. For the reasons stated below, the Court DENIES the motion.

### I. BACKGROUND

The Court states the facts relevant to its decision here.

The COVID-19 pandemic thrust the entire world into a personal and economic downturn, shutting down schools, businesses, and government agencies. Small

businesses and those who worked in them, suffered immediately. In response, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). This law, among other things, established the Paycheck Protection Program ("PPP"), which allowed small businesses adversely affected by COVID-19 to apply for and receive a PPP loan. Various regulations and restrictions applied to PPP applicants and recipients including those that relate to the size of the company (the affiliation requirement) and whether the loan is necessary (the necessity requirement).

This lawsuit is against six companies. The three New Harbor Defendants (New Harbor Capital Fund LP, New Harbor Capital II LP, New Harbor Capital Management LP) are private equity firms and the management company that employs the people who manage the investments. None of these entities applied for or received PPP loans, but Mr. Berkley alleges that New Harbor had a controlling investment in the remaining three Defendants (Ocean State, LLC, Blueprint Test Preparation, LLC, and Fyzical Acquisition Holdings, LLC) who did apply for and receive PPP loans. He alleges that the three PPP recipients committed fraud because their certifications that they met the affiliation and necessity requirements of the CARES Act were false—essentially he asserts that Ocean State, Blue Print, and Fyzical did not meet the size requirement and they had plenty of funds available to them via New Harbor, a well-capitalized private equity firm; so they did not qualify for a PPP loan. He alleges that New Harbor's liability is rooted in its ability to direct and control the three PPP recipient companies.

Mr. Berkley's connection to this case is that his wife's business rented office space to Ocean State who stopped paying rent during the pandemic. When Mr. Berkley suggested that Ocean State get funds from New Harbor, he was told "that's not how it works." Concluding that Ocean State and these other named PPP recipients backed by New Harbor submitted false information to the government to get money they were not entitled to, he sued them under the FCA. The FCA contains *qui tam* provisions that encourage private citizens to come forward with claims of fraud on the government. As a Relator, Mr. Berkley filed an original complaint, amended it once, and then after Defendants moved to dismiss the amended complaint, he amended the complaint a second time. The Second Amended Complaint is the operative one here and Defendants move to dismiss it. ECF No. 29.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) tests the plausibility of the claims presented in a plaintiff's complaint. "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). At this stage, "the plaintiff need not demonstrate that she is likely to prevail, but her claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* at 102–03 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"The plausibility inquiry necessitates a two-step pavane." *García-Catalán*, 734 F.3d at 103. "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *Id.* (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)). "In determining whether a complaint crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

## III. DISCUSSION

"The FCA imposes liability upon persons who (1) present or cause to be presented to the United States government, a claim for approval or payment, where (2) that claim is false or fraudulent, and (3) the action was undertaken 'knowingly,' in other words, with actual knowledge of the falsity of the information contained in the claim, or in deliberate ignorance or reckless disregard of the truth or falsity of that information." *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 225 (1st Cir. 2004) (quoting 31 U.S.C. § 3729(a)(1)(b)). To prove liability under the statute, a party must show submission of a false claim for payment. Proof of an intent to defraud is not required. *See* 31 U.S.C. § 3729(b); *Karvelas*, 360 F.3d at 225.

4

The FCA contains qui tam provisions that encourage private citizens to come forward with claims of fraud on the government. *U.S. ex rel. Duxbury v. Ortho Biotech Prod., L.P.*, 579 F.3d 13, 16 (1st Cir. 2009). "The qui tam provisions permit whistleblowers (known as relators) to bring certain fraud claims on behalf of the United States; in return, '[a] private relator is entitled to a portion of any proceeds from the suit, whether the United States intervenes as an active participant in the action or not.'" *Id.* (quoting *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 727 (1st Cir. 2007)). To avoid rewarding "opportunists [] seek[ing] compensation based on fraud already apparent from information in the public domain", *United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 206 (1st Cir. 2016), the FCA requires a court to "dismiss an action . . . if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . unless . . . the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A); *U.S. ex rel. Poteet v. Bahler Med., Inc.*, 619 F.3d 104 (1st Cir. 2010). It is this public disclosure bar that Defendants argue requires dismissal of Mr. Pellechio's FCA suit.[1]

---

[1] Before the Court gets started on Defendants' arguments, it must address Mr. Berkley's argument that because the 2010 Amendments to the FCA converted the current public disclosure bar provision to an affirmative defense rather than it being viewed as a jurisdictional issue, it cannot be resolved on a motion to dismiss, citing the District of Massachusetts court in *United States ex rel. Winkelman v. CVS Caremark Corp.* The First Circuit reviewed that case on appeal, however, and held that even if it could be viewed as an affirmative defense, "an affirmative defense may serve as a basis for dismissal under Rule 12(b)(6)." *Winkelman*, 827 F.3d at 207 (citing *Banco Santander de P.R. v. Lopez–Stubbe (In re Colonial Mortg. Bankers Corp.)*, 324 F.3d 12, 16 (1st Cir. 2003)). Therefore, without deciding whether the

### A. Public Disclosure Bar

"A prior, public disclosure of fraud occurs 'when the essential elements exposing the particular transaction as fraudulent find their way into the public domain.'" *Poteet*, 619 F.3d at 110 (quoting *U.S. ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 54 (1st Cir. 2009)). "To be a disclosure "of fraud" the disclosure must contain either (1) a direct allegation of fraud, or (2) both a misrepresented state of facts and a true state of facts so that the listener or reader may infer fraud." *Id.* at 110 (internal citations omitted).

The public disclosure bar is analyzed using a three-step process that asks whether "the allegations or transactions identified in the relators' complaint have already been publicly disclosed," "that disclosure occurred through one of the statutorily prescribed methods," and "if these two queries yield affirmative answers, we proceed to examine whether the allegations or transactions on which the relators' suit rests are substantially the same as the publicly disclosed allegations or transactions." *Winkelman*, 827 F.3d at 208. The only way a relator can defeat the public disclosure bar is if she is the original source of the information, which is a person with "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions" and that she "voluntarily provided the information to the Government before filing an action under this section." *Id.* at 211; 31 U.S.C. § 3730(e)(4)(B)(2).

---

public disclosure bar is an affirmative defense, the Court moves on to deciding the substance of Defendants' 12(b)(6) motion.

6

Because there is some crossover with the parties' arguments on the first two elements, the Court will address them together.

### 1. Disclosure and Sources

Public disclosure occurs when allegations of fraud are placed in the public domain. *Rost*, 507 F.3d at 730-731. Statutorily articulated sources are (1) "criminal, civil, or administrative hearing[s]," (2) "congressional, administrative, or Government Accounting Office report[s], hearing[s], audit[s], or investigation[s]," or (3) "from the news media." *Poteet*, 619 F.3d at 113 (quoting *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 130 S. Ct. 1396, 1401–02 (2010)). The information both parties invoke here comes from the Small Business Administration ("SBA") PPP loan data, New Harbor's website, press releases issued by New Harbor and republished by third-party news source websites, and a *Daily Beast* article. Mr. Berkley concedes that the SBA PPP loan data and the *Daily Beast* article were publicly disclosed for purposes of the FCA public disclosure bar. ECF No. 31 at 5, 22. He does not appear to dispute that the information on New Harbor's website and its press releases issued and then republished on third-party websites was publicly available but argues that they were not published through statutorily prescribed sources. *Id.* at 15.

Defendants argue that all the information is publicly available and publicly disclosed in news media. The FCA does not define "news media," but "courts that have considered the issue have construed the term to include readily accessible websites." *United States ex rel. Green v. Serv. Contract Educ. & Training*

7

*Tr. Fund*, 843 F. Supp. 2d 20, 32 (D.D.C. 2012) (collecting cases). Mr. Berkley doubts the newsworthiness of the press releases and argues that those issued and republished in *Providence Business News*, the *Wall Street Journal*, *Pro-Private Equity*, and *Private Equity Professional* do not count as "news media" reports because they were posted online and the re-posts contained no curated information or exercise of editorial judgment. *United States ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*, Case No. CV 17-1694 PSG (SSx), 2019 WL 3282619, at *14 (C.D. Cal. July 16, 2019).

Mr. Berkley has not argued that the websites involved here were not readily accessible to the public. And the Court finds Mr. Berkley's heavy reliance on the multilayered analysis of what constitutes "news media" in the *Integra* case to be unconvincing; reading the FCA in accordance with its plain meaning, the Court finds that there is no requirement that the website must curate the information or exercise editorial judgment on the information the website re-posts in order to be considered a public disclosure under the statutory language. *See, e.g., Poteet*, 619 F.3d at 110 (articles published in the *New York Times* that discuss allegations in a complaint qualify as public disclosures); *United States ex rel. Beauchamp v. Academi Training Ctr., Inc.*, 933 F. Supp. 2d 825, 844–45 (E.D. Va. 2013) (coverage of lawsuit on Wired.com is a public disclosure).

By its nature, a press release is written and circulated to disseminate information, usually something newsworthy, to an audience of readers. Those readers are generally members of the public at large. That the third-party news sites

did not add information to the press releases or somehow curate this information into a larger story does not take away from the fact that New Harbor had news to release to the public, chose to do so through a press release, and those other sites found them newsworthy such that they decided to further disseminate that information. *See Winkelman*, 827 F.3d at 209 (relying on a press release and resulting media coverage to find a public disclosure). While the Court agrees that not all websites will qualify as "news media," it concludes that the sources the parties cite in this case qualify as news media as referenced in the FCA.

### 2. Basis

Finally, the Court considers whether Mr. Berkley's qui tam action is "based upon" prior disclosures of fraud. "The 'based upon' requirement is satisfied when the relator's allegations are substantially similar to allegations or transactions already in the public domain at the time he brings his qui tam action." *Ondis*, 587 F.3d at 58. The Court "must compare the substance of the prior disclosures with the substance of the relator's complaint." *Poteet*, 619 F.3d at 114. The Court must determine whether Defendants' alleged misrepresentation (that they satisfied the size and necessity requirements to receive PPP loans) and what Mr. Berkley alleges was their plan (to falsify information in order to receive PPP loans to which they were not entitled) were in the public domain such that an inference of fraud can be drawn.[2] *Ondis*, 587 F.3d at 54.

---

[2] Mr. Berkley appears to argue that each individual piece of data or information must contain both the misrepresentation and the true fraudulent plan, but the case law allows that "[t]he two states of facts may come from different sources, as long as

9

Mr. Berkley alleges that Ocean State, Blueprint, and Fyzical applied for PPP loans and certified that the money would be used for payroll and that they complied with the affiliation and necessity requirements relating to the number of employees and financial need. ECF No. 28 ¶¶ 117-133. He alleges that the loans were unnecessary because the companies could have accessed New Harbor's billion-dollar portfolio to survive any pandemic economic shortfall. *Id.* ¶¶ 178-179. Mr. Berkley also alleges that the PPP recipients falsely certified their employee counts to appear "small." *Id.* ¶¶ 215-217. He alleges that New Harbor either directed these companies to apply for the PPP loans or at least knew they applied while knowing that they could not truthfully certify compliance with the regulations. *Id.* ¶ 146.

The SBA loan data and New Harbor's press releases provide background information on each Defendant vis-à-vis the PPP applications and New Harbor's relationship to the PPP applicants and company financials. The SBA information shows that Defendants applied for and received PPP money and New Harbor's website and press releases show its relationship with the Defendants. This is basic data that does not suggest a fraudulent scheme. It is the *Daily Beast* article, if anything, that has the potential to be the bow around the package of publicly available information standing in the way of Mr. Berkley's *qui tam* FCA suit.

The July 15, 2020 *Daily Beast* article, entitled "Inside the Pandemic Cash Bonanza for Private Equity-backed Firms", describes how about 1,300 companies

---

the disclosures together lead to a plausible inference of fraud." *Ondis*, 587 F.3d at 54.

backed by wealthy private equity firms applied for forgivable PPP loans and questions whether the government was properly overseeing the administration of these public funds.[3] The author calls out companies that merged the year before the pandemic and yet still applied for PPP money when it seems impossible that the merged company could meet the size requirement. This article does not mention the Defendants in this case or definitively accuse any company of FCA violations. Acknowledging that there could be other explanations for these applications, a former federal inspector general "was careful not to characterize it as fraud because 'there could be some explanation, but it does look like a problem. ... It looks like an anomaly that should be investigated further.'" The article considered whether some private equity firms might have devised clever workarounds in order to access the PPP money. It lamented that attention given by banks to bigger companies was at the expense of smaller mom and pop businesses and their underpaid employees who disproportionally suffered during the pandemic. The article also suggests that companies receiving PPP money could commit fraud by taking the money and then lying about retaining their employees and could use the pandemic as an excuse to cut back expenses even after receiving money to bolster their bottom lines.

This available information is not substantially similar to the facts alleged against Defendants in Mr. Berkley's Second Amended Complaint. Taking his allegations in the Second Amended Complaint as true, Mr. Berkley argues that he

---

[3] "Inside the Pandemic Cash Bonanza for Private Equity-Backed Firms," *Daily Beast*, July 15, 2020, available at https://www.thedailybeast.com/private-equity-backed-firms-got-ppp-funds-for-businesses-hit-by-coronavirus.

was only able to discern the fraud through his "experience and knowledge of the private equity fund model and compensation structure, coupled with his investigation and analysis into New Harbor Capital and its portfolio companies." ECF No. 28 ¶ 160. He interviewed former Ocean State employees and landlords and communicated with Ocean State CEO. *Id.* ¶¶ 162-179. "In evaluating substantial similarity, an inquiring court should bear in mind the core purpose of the FCA: to encourage suits by individuals with valuable knowledge of fraud unknown to the government." *Winkelman*, 827 F.3d at 210. Nowhere in any of this publicly disclosed information does it demonstrate that these Defendants misstated facts or defrauded the government by falsifying their PPP loan applications.

Mr. Berkley's own research and inference drawing supports his allegations that Defendants committed fraud in certifying that they were eligible for PPP loans. Mr. Berkley's allegations demonstrate that he has added many more facts about these Defendants and their PPP loans—much more than a "sprinkle of factual garnish" of more facts. *U.S. ex rel. Lisitza v. Johnson & Johnson*, 765 F. Supp. 2d 112, 123 (D. Mass. 2011). The Court finds it significant that the *Daily Beast* article, arguably the best source of synthesized public information relating to looming questions about private equity-backed companies applying for PPP loans, does not name the Defendants in this case. Almost all of the cases the parties have cited to the Court have identified one or more defendants ultimately sued under the FCA.[4] The fact

---

[4] The Court does not conclude that the public disclosure bar requires that a specific defendant be named to meet the "basis" element but, given all the other facts alleged in Mr. Berkley's complaint, the Court highlights this deficit.

12

that Mr. Berkley had to ferret out Defendants' alleged role in defrauding the government through his own investigation and knowledge demonstrates that the government was not put on notice of the potential fraud. *U.S. ex rel. Bartz v. Ortho-McNeil Pharm., Inc.*, 856 F. Supp. 2d 253, 265 (D. Mass. 2012) ("[T]he public disclosure bar's focus is on notice and not detail.") Because the Court finds that the basis for Mr. Berkley's FCA lawsuit was not publicly disclosed, such that the government was not alerted to conduct its own investigation of potential fraud, the public disclosure bar does not apply.

### B. Rule 9(b)

Because Mr. Berkley's FCA claims sound in fraud, they must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir. 2009). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This standard "means that a complaint must specify 'the time, place, and content of an alleged false representation.'" *Rost*, 507 F.3d at 731 (quoting *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996)). In other words, Rule 9(b) requires the pleader "to specify the who, what, where, and when of the allegedly false or fraudulent representation." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004) "Conclusory allegations ... are not sufficient" to satisfy Rule 9(b). *Rost*, 507 F.3d at 731. The rule may be satisfied, however, "where, although some questions remain unanswered, the complaint as a whole is sufficiently particular to pass muster under

the FCA." *Id.* at 732; *see also U.S. ex rel. Franklin v. Parke-Davis, Div. of Warner-Lambert Co.*, 147 F. Supp. 2d 39, 46–47 (D. Mass 2001) (observing that, reading Rule 9(b) in conjunction with Federal Rule of Civil Procedure 8(a), "while Relator must allege the circumstances of the fraud, he is not required to plead all of the evidence or facts supporting it" (citation omitted)).

"The purpose of this requirement is to 'give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during discovery.'" *Karvelas*, 360 F.3d at 226, *abrogated by Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662 (2008); *see also U.S. ex rel. Ge v. Takeda Pharm. Co., Ltd.*, 737 F.3d 116, 123 (1st Cir. 2013) (particularity requirement inhibits "parasitic relators who bring FCA damages claims based on information within the public domain or that the relator did not otherwise discover").

Defendants raise countless deficiencies that, in their view, doom Mr. Berkley's complaint in the face of Rule 9(b)'s heightened pleading requirements. These deficiencies relate to the PPP loan programs necessity and affiliation requirements. The Court will examine the complaint allegations as to each of these in terms of each count in Mr. Berkley's complaint.

1. **Count I - FCA subsection 3729 (a)(1)(A)**

    a. **Necessity Requirement**

Defendants argue that Mr. Berkley has not adequately alleged that Defendants violated the necessity requirement because he does not identify what made their certifications of financial need false and by focusing on New Harbor, looks at the wrong corporate entity.

Mr. Berkley must allege with particularity "the who, what, where and when of the allegedly false or fraudulent representation." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004). Accepting his allegations as true as Rule 12(b)(6) requires all the while keeping in mind the purpose of Rule 9(b)'s heightened pleading standard for fraud claims, the Court finds that Mr. Berkley's complaint survives Defendants' challenge. Mr. Berkley's allegations about whether Defendants falsely certified that they needed PPP funds from the government are extensive. Essentially, Mr. Berkley alleges that these PPP recipients falsely certified to the government and therefore caused false claims to be presented to the government that the loan was necessary even though they had access to other sources of available liquidity. *See* ECF No. 28 ¶¶ 4-10, 54-55, 57-58, 92, 97, 105-107, 113-116, 124, 132, 146-151, 152, 154-156, 158-186; *see also* ECF No. 31 at 29-32.

### b. Affiliation Requirement

Defendants argue that Mr. Berkley fails to allege that Defendants violated the affiliation requirement because he does not allege any facts contradicting Defendants' contention that each of the PPP recipients qualified for an exception to the size and affiliation rules.

Mr. Berkley's complaint contains allegations sufficient to overcome Defendants' motion. He alleges that the PPP recipients did not meet the size standards, they knew or should have known that they did not, and that the CARES Act's waiver of the affiliation rules did not apply to them. ECF No. 28 ¶¶ 187-219. At this stage of the case, the Court finds that the complaint states a claim such that Defendants' Motion to Dismiss is DENIED as to Count I.

### 2. Count II–FCA Subsection 3729 (a)(1)(B)

This section makes liable a person who "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(b). It requires allegations that "the defendant made a false record or statement for the purpose of getting 'a false or fraudulent claim paid or approved by the Government.'" *Gagne*, 565 F.3d at 46 (quoting *Allison Engine Co.*, 553 U.S. at 665-67). Because Mr. Berkley has alleged with particularity that Defendants prepared and submitted or caused to be submitted to the SBA loan applications containing false information, this claim survives Defendants' motion to dismiss.

### 3. Count III–FCA Subsection 3729(a)(1)(G)

This section makes liable any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). "Obligation" is defined as

"an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3).

Mr. Berkley contends that Defendants violated the second part of this section. He alleges that because they were not entitled to the PPP loans, they knowingly retained an overpayment. ECF No. 28 ¶¶ 42, 55-60, 220-231, 250-253. The Court finds that these allegations are sufficient to survive Defendants' motion to dismiss.

### C. Allegations as to New Harbor

Defendants argue that Mr. Berkley's allegations against New Harbor fail because they are separate corporate entities and not liable for the PPP recipients' actions. They focus on the corporate structure which they argue provides a barrier to New Harbor's liability here. Mr. Berkley points to the statutory language in support of his allegations that as the private equity backer of these PPP recipients, New Harbor caused a false claim for payment to the government.

Mr. Berkley relies on cases in which courts have allowed claims against private equity firms who were alleged to be involved—whether it be by exerting control or influence over the portfolio company or working through those entities—in submitting false claims to the government. Mr. Berkley alleges that New Harbor controlled and directed the PPP recipients' conduct during their submission of the PPP loans applications and receipt of the PPP funds. ECF No. 28 ¶¶ 4-10, 105-107, 113-116, 146-151, 162-163, 165, 177, 185. He alleges that New Harbor was at least aware of

17

the false claims in the applications to the government and did nothing to prevent them from being submitted or from receiving the money. *Id.* While the nuances of the relationship between these entities will be revealed during discovery, the Court finds that this is sufficient at this motion to dismiss stage to keep New Harbor in the case. Through their well-briefed and researched motion, Defendants attempt to recast Mr. Berkley's complaint in terms of their defenses as an expedient way to define it as deficient under the Rule 9(b) heightened pleading standard for FCA claims. While Mr. Berkley's complaint at times paints his fraud claims against these Defendants with a broad brush, the Court finds that his pleadings are enough to survive Defendants' motion. Defendants' Motion to Dismiss New Harbor is DENIED.

## IV.   CONCLUSION

The Court DENIES Defendants' Motion to Dismiss. ECF No. 29.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

May 2, 2023