UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ex. rel. JAMES R. BERKLEY, <br><br> Plaintiff, <br><br> vs. <br><br> OCEAN STATE, LLC, NEW HARBOR CAPITAL FUND LP, NEW HARBOR CAPITAL FUND II LP, NEW HARBOR CAPITAL MANAGEMENT LP, BLUEPRINT TEST PREPARATION, LLC, FYZICAL ACQUISITION HOLDINGS, LLC, <br><br> Defendants. | C.A. No. 1:20-cv-00538-JJM-PAS |

## DEFENDANTS' ANSWER TO RELATOR'S SECOND AMENDED COMPLAINT

Defendants New Harbor Capital Fund LP, New Harbor Capital Fund II LP, and New Harbor Capital Management LP (collectively, "New Harbor"), and Ocean State, LLC ("Ocean State"), Blueprint Test Preparation, LLC ("Blueprint"), and Fyzical Acquisition Holdings, LLC ("Fyzical") (collectively with New Harbor, "Defendants"), through their undersigned attorneys, hereby respond to Relator's Second Amended Complaint (the "Complaint") upon knowledge as to their own actions and upon information and belief as to all other matters, and assert defenses based upon information currently available to them.

Defendants answer and set forth their defenses to Relator's Second Amended Complaint as follows. Each Defendant answers the Complaint individually and based on its own independent knowledge and reasonable investigation to date. Unless otherwise noted, each Defendant sets forth each answer, defense, and other statement contained herein. Defendants deny each and every allegation in the Complaint except as expressly admitted below.

Plaintiff, United States of America ex rel. James R. Berkley, brings this action against defendants, Ocean State, LLC ("Ocean State"), New Harbor Capital Fund LP, New Harbor Capital Fund II LP, New Harbor Capital Management LP, Blueprint Test Preparation, LLC ("Blueprint Test Prep") and Fyzical Acquisition Holdings, LLC ("Fyzical Holdings") (collectively, the "Defendants"), and alleges as follows:

**ANSWER:**

Relator's introductory paragraph contains Relator's characterization of his claims and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions and deny that Relator has grounds to bring any action described therein. Defendants deny any remaining allegations in the introductory paragraph.

## NATURE OF ACTION[1]

1.      This action is brought by relator, James R. Berkley ("Relator" or "Berkley"), on behalf of the United States of America (the "United States" or the "Government") and against the named Defendants alleging violations of the False Claims Act, 31 U.S.C. §§ 3729 et seq. (the "False Claims Act"), and Relator claims entitlement to a portion of any recovery obtained by the United States as a *qui tam* plaintiff authorized by 31 U.S.C. § 3730.

**ANSWER:**

Paragraph 1 contains Relator's characterization of his claims and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions and deny that Relator has grounds to bring any action described therein. Defendants deny any remaining allegations in Paragraph 1.

2.      Relator brings this action to impose liability upon Defendants for violation of 31 U.S.C. § 3729 and non-compliance with various federal laws, regulations, and guidance by submission of a false claim for payment made under the United States Small Business Administration ("SBA") Paycheck Protection Program ("PPP").

---

[1]     The headings and titles in Relator's Complaint are not factual allegations to which a response is required. To the extent that a response is deemed required, Defendants deny any allegations in Relator's headings and titles. All footnotes are omitted and any response to a footnote is included in the Answer to the relevant Paragraph of the Complaint. To the extent any further response is deemed required, Defendants deny any allegation in a footnote.

**ANSWER:**

Paragraph 2 contains Relator's characterization of his claims and/or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions and deny that Relator has grounds to bring any action described therein.  Defendants deny any remaining allegations in Paragraph 2.

## PARTIES

3.    Relator, James R. Berkley, is a citizen of Massachusetts residing in Hopkinton, Massachusetts.  Berkley is a Chartered Financial Analyst with a BS in finance from Bentley University and a MS in finance from the Bentley University McCallum Graduate School of Business.  Berkley is the founder of FI Real Estate Capital Management, LLC ("FIRE CM"), which is a private equity real estate fund.  Prior to forming FIRE CM, Berkley worked for years as a vice president and equity analyst at various asset management, investment and research firms and investment banks.  Through his experience, Berkley has a deep understanding of the private equity fund model, compensation structure and practices.

**ANSWER**:

To the extent the allegations in Paragraph 3 purport to describe Relator and/or third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny these allegations.  Defendants deny any remaining allegations in Paragraph 3.

4.    Defendant, Ocean State, is a Delaware limited liability company with a principal place of business at 2130 Mendon Road, Cumberland, Rhode Island 02864.  Ocean State is a private equity firm portfolio company that is 84% owned and controlled by Chicago-based private equity firm New Harbor Capital Fund LP and/or its parent fund New Harbor Capital Management LP.

**ANSWER**:

Ocean State admits that it is a Delaware limited liability company with its principal place of business in Cumberland, Rhode Island.  Ocean State and New Harbor admit that certain New Harbor entities have previously made investments in Ocean State.  To the extent the allegations in Paragraph 4 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them.  As the terms "private equity firm portfolio company" and "owned and controlled" are imprecise, Defendants

are unable to form a belief as to the truth of the allegations in the second sentence of Paragraph 4, and on that basis deny those allegations. To the extent Paragraph 4 contains Relator's characterization of his claims and/or legal conclusions to which no response is required, Defendants deny Relator's characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 4.

5.    Upon information and belief, defendant, New Harbor Capital Fund LP, is a Delaware limited partnership with a principal place of business at 500 West Madison Street, Suite 2830, Chicago, IL 60661. Upon information and belief, New Harbor Capital Fund LP is a private equity fund and is managed and controlled by its parent New Harbor Capital Management LP.

**ANSWER**:

New Harbor admits that New Harbor Capital Fund LP is a Delaware limited partnership with its principal place of business in Chicago, IL. To the extent the allegations in Paragraph 5 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them. As the terms "private equity fund" and "managed and controlled" are imprecise, Defendants are unable to form a belief as to the truth of the allegations in the second sentence of Paragraph 5, and on that basis deny those allegations. Defendants deny any remaining allegations in Paragraph 5.

6.    Upon information and belief, defendant, New Harbor Capital Fund II LP, is a Delaware limited partnership with a principal place of business at 500 West Madison Street, Suite 2830, Chicago, IL 60661. Upon information and belief, New Harbor Capital Fund II LP is a private equity fund and is managed and controlled by its parent New Harbor Capital Management LP.

**ANSWER**:

New Harbor admits that New Harbor Capital Fund II LP is a Delaware limited partnership with its principal place of business in Chicago, IL. To the extent the allegations in Paragraph 6 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them. As the terms "private equity fund" and "managed and controlled" are imprecise, Defendants are unable to form a belief as to

the truth of the allegations in the second sentence of Paragraph 6, and on that basis deny those allegations. Defendants deny any remaining allegations in Paragraph 6.

7.    Upon information and belief, defendant, New Harbor Capital Management LP, is a Delaware limited partnership with a principal place of business at 500 West Madison Street, Suite 2830, Chicago, IL 60661. Upon information and belief, New Harbor Capital Management LP is a private equity firm and is the parent of New Harbor Capital Fund LP and New Harbor Capital Fund II LP and other New Harbor Capital funds. Upon information and belief, at all relevant times, New Harbor Capital Management LP has owned a controlling stake in New Harbor Capital Fund LP and New Harbor Capital Fund II LP and has managed, controlled, and directed the conduct of New Harbor Capital Fund LP and New Harbor Capital Fund II LP on behalf of New Harbor Capital Fund LP and New Harbor Capital Fund II LP's investors. (New Harbor Capital Fund LP, New Harbor Capital Fund II LP and New Harbor Capital Management LP may be referred to collectively herein as "New Harbor Capital").

**ANSWER**:

New Harbor admits that New Harbor Capital Management LP is a Delaware limited

partnership with its principal place of business in Chicago, IL. To the extent the allegations in

Paragraph 7 relate to third parties or other Defendants, Defendants are without information

sufficient to form a belief as to the truth of these allegations and therefore deny them. As the terms

"private equity firm," "controlling stake," and "managed, controlled and directed" are imprecise,

Defendants are unable to form a belief as to the truth of the allegations in the second and third

sentences of Paragraph 7, and on that basis deny those allegations. Defendants deny any remaining

allegations in Paragraph 7.

8.    Upon information and belief, defendant, Blueprint Test Prep, is a California limited liability company with a principal place of business at 6080 Center Drive, Suite 520, Los Angeles, CA 90045. Upon information and belief, Blueprint Test Prep is a private equity firm portfolio company that is majority owned and controlled by New Harbor Capital. Upon information and belief, at all relevant times, New Harbor Capital has owned a controlling stake in Blueprint Test Prep and has managed, controlled, and directed the conduct of Blueprint Test Prep with resect the matters alleged herein.

**ANSWER**:

Blueprint admits that it is a California limited liability company with its principal place of

business in Los Angeles, CA. Blueprint and New Harbor admit that certain New Harbor entities

have previously made investments in Blueprint. To the extent the allegations in Paragraph 8 relate

to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them.  As the terms "private equity firm portfolio company" "controlling stake," and "managed, controlled, and directed" are imprecise, Defendants are unable to form a belief as to the truth of the allegations in the second and third sentences of Paragraph 8, and on that basis deny those allegations.  Defendants deny any remaining allegations in Paragraph 8.

9.      Upon information and belief, defendant, Fyzical Holdings, is a Delaware limited liability company with a principal place of business at 1751 Mound Street, Suite 102, Sarasota, FL 34236.  Upon information and belief, Fyzical Holdings is a private equity firm portfolio company that is majority owned and controlled by New Harbor Capital.  Upon information and belief, at all relevant times, New Harbor Capital has owned a controlling stake in Fyzical Holdings and has managed, controlled, and directed the conduct of Fyzical Holdings with resect [*sic*] the matters alleged herein.

**ANSWER**:

Fyzical admits that it is a Delaware limited liability company with its principal place of business in Sarasota, FL.  Fyzical and New Harbor admit that certain New Harbor entities have previously made investments in Fyzical.  To the extent the allegations in Paragraph 9 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them.  As the terms "private equity firm portfolio company" "controlling stake," and "managed, controlled, and directed" are imprecise, Defendants are unable to form a belief as to the truth of the allegations in the second and third sentences of Paragraph 9 and on that basis deny those allegations.  Defendants deny any remaining allegations in Paragraph 9.

10.      Upon information and belief, New Harbor Capital Management LP made its investments in Ocean State, Blueprint Test Prep and Fyzical Holdings through a private equity funds, New Harbor Capital Fund LP, New Harbor Capital Fund II LP and/or other related funds. New Harbor Capital Management LP is the manager of New Harbor Capital Fund LP, New Harbor Capital Fund II LP, and other related funds and controlled and directed the conduct of Ocean State, Blueprint Test Prep, LLC and Fyzical Holdings on behalf of New Harbor Capital Fund LP, New Harbor Capital Fund II LP and/or its other funds' investors.

**ANSWER**:

Defendants admit that certain New Harbor entities have previously made investments in Ocean State, Blueprint, and Fyzical. As the terms "manager of" and "controlled and directed" are imprecise, Defendants are unable to form a belief as to the truth of the allegations in the second sentence of Paragraph 10, and on that basis deny those allegations. Defendants deny any remaining allegations in Paragraph 10.

## JURISDICTION AND VENUE

11. This action arises under the False Claims Act, 31 U.S.C. §§ 3729-3733. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C. §§ 3730 and 3732.

**ANSWER**:

Paragraph 11 contains Relator's characterization of his claims and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions, deny that Relator has grounds to bring any action described therein, and deny any remaining allegations in Paragraph 11.

12. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because Ocean State can be found, resides, and transacts business within Rhode Island, because one or more acts proscribed by the False Claims Act occurred in Rhode Island, and because each of the Defendants has sufficient contacts with the United States as a whole and have availed themselves of the privileges of American law and they could reasonably anticipate being involved in litigation in the United States.

**ANSWER**:

Paragraph 12 contains Relator's characterization of his claims and/or legal conclusions to which no response is required. To the extent a response is required, Ocean State admits that it transacts business within Rhode Island. To the extent the allegations in Paragraph 12 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them. Defendants otherwise deny Relator's

characterizations and/or conclusions and deny that Relator has grounds to bring any action described therein. Defendants deny any remaining allegations in Paragraph 12.

13.    Venue is proper under 28 U.S.C. § 1391(b) and (c), because events giving rise to this action occurred in this forum and plaintiff suffered harm in this forum.

**ANSWER:**

Paragraph 13 contains Relator's characterization of his claims and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 13.

14.    Additionally, venue is proper in this district under 28 U.S.C. §1395 and 31 U.S.C. § 3732(a) because Ocean State can be found, resides, and transacts business within Rhode Island.

**ANSWER:**

Paragraph 14 contains Relator's characterization of his claims and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 14.

## THE FALSE CLAIMS ACT

15.    Originally enacted in the 1860s to combat fraud against the Union Army during the Civil War, the False Claims Act is the primary tool with which the United States combats false or fraudulent claims against the Government and protects federal funds. The Supreme Court has held that the False Claims Act's provisions must be construed broadly to reach "all types of fraud, without qualification, that might result in financial loss to the Government." *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968).

**ANSWER:**

To the extent the allegations in Paragraph 15 purport to characterize or describe the False Claims Act or *United States v. Neifert-White Co.*, 390 U.S. 228 (1968), Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 15 contains Relator's characterization of his claims, the history and purpose of the False Claims Act, legal argument, and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 15.

16.    The False Claims Act provides that a person is liable to the United States Government for each instance in which the person knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval.  31 U.S.C. § 3729(a)(1)(A).

**ANSWER:**

To the extent the allegations in Paragraph 16 purport to characterize or describe 31 U.S.C.

§ 3729(a)(1)(A) or other provisions of the False Claims Act, Defendants state that such sources

speak for themselves and specifically deny any characterization or description that is inconsistent

with the referenced sources.  Paragraph 16 contains Relator's characterization of his claims, legal

argument, and/or legal conclusions to which no response is required.  To the extent a response is

required, Defendants deny such characterizations and/or conclusions.  Defendants deny any

remaining allegations in Paragraph 16.

17.    The False Claims Act also makes liable any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

**ANSWER:**

To the extent the allegations in Paragraph 17 purport to characterize or describe 31 U.S.C.

§ 3729(a)(1)(B) or other provisions of the False Claims Act, Defendants state that such sources

speak for themselves and specifically deny any characterization or description that is inconsistent

with the referenced sources.  Paragraph 17 contains Relator's characterization of his claims, legal

argument, and/or legal conclusions to which no response is required.  To the extent a response is

required, Defendants deny such characterizations and/or conclusions.  Defendants deny any

remaining allegations in Paragraph 17.

18.    The False Claims Act also contains a "reverse false claim" provision, which makes liable any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government."  31 U.S.C. § 3729(a)(1)(G). An obligation includes "the retention of any overpayment."   Id.  § 3729(b)(3).   Generally speaking, an "overpayment" means any funds that a person or entity receives or retains to which that person or entity is not entitled. 42 U.S.C. § 1320a–7k(d)(4)(B).

**ANSWER:**

To the extent the allegations in Paragraph 18 purport to characterize or describe 31 U.S.C. § 3729(a)(1)(G), 31 U.S.C. § 3729(b)(3), 42 U.S.C. § 1320a–7k(d)(4)(B), other provisions of the False Claims Act, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 18 contains Relator's characterization of his claims, legal argument, and/or legal conclusions to which no response is required.    To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 18.

19.    The False Claims Act defines "knowingly" to mean that a person "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).  The False Claims Act provides that no proof of specific intent to defraud is required. 31 U.S.C. § 3729(b)(1)(B).

**ANSWER:**

To the extent the allegations in Paragraph 19 purport to characterize or describe 31 U.S.C. § 3729(b)(1)(A), 31 U.S.C. § 3729(b)(1)(B), or other provisions of the False Claims Act, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 19 contains Relator's characterization of his claims, legal argument, and/or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 19.

20.    The False Claims Act defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

**ANSWER:**

To the extent the allegations in Paragraph 20 purport to characterize or describe 31 U.S.C. § 3729(b)(4) or other provisions of the False Claims Act, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with

the referenced sources. Paragraph 20 contains Relator's characterization of his claims, legal argument, and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 20.

21. The False Claims Act defines the term "claim" to mean, in relevant part: "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government – (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

**ANSWER:**

To the extent the allegations in Paragraph 21 purport to characterize or describe 31 U.S.C.

§ 3729(b)(2)(A) or other provisions of the False Claims Act, Defendants state that such sources

speak for themselves and specifically deny any characterization or description that is inconsistent

with the referenced sources. Paragraph 21 contains Relator's characterization of his claims, legal

argument, and/or legal conclusions to which no response is required. To the extent a response is

required, Defendants deny such characterizations and/or conclusions. Defendants deny any

remaining allegations in Paragraph 21.

22. The Supreme Court has made clear that a request for payment made under a federal loan guarantee that was obtained in violation of a statute, regulation, or program requirement, by the use of a false statement, or by means of other fraudulent conduct qualifies as a "claim" under the False Claims Act. *See Neifert-White Co.*, 390 U.S. at 232-33 (the term "claim" is not limited to legally enforceable claims, but includes all fraudulent attempts to cause government to pay out money).

**ANSWER:**

To the extent the allegations in Paragraph 22 purport to characterize or describe *United*

*States v. Neifert-White Co.*, 390 U.S. 228 (1968), or other sources, Defendants state that such

sources speak for themselves and specifically deny any characterization or description that is

inconsistent with the referenced sources.  Paragraph 22 contains Relator's characterization of his claims, legal argument, and/or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 22.

23.    The False Claims Act is an "expansive" statute, reaching "all types of fraud, without qualification, that might result in financial loss to the Government."  *Cook Cnty., Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 129, 123 S. Ct. 1239, 155 L. Ed. 2d 247 (2003) (*quoting Neifert-White Co.,* 390 U.S. at 232).

**ANSWER:**

To the extent the allegations in Paragraph 23 purport to characterize or describe *Cook Cnty., Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 129 (2003), or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 23 contains Relator's characterization of his claims, legal argument, and/or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 23.

24.    Any person who violates the False Claims Act "is liable to the United States Government for a civil penalty of not less than [$11,665] and not more than [$23,331] … plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1); 28 C.F.R. § 85.5(a)(9); 28 C.F.R. § 85.5.

**ANSWER:**

To the extent the allegations in Paragraph 24 purport to characterize or describe 31 U.S.C. § 3729(a)(1), 28 C.F.R. § 85.5(a)(9), 28 C.F.R. § 85.5, or other provisions of the False Claims Act, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 24 contains Relator's characterization of his claims, legal argument, and/or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 24.

## FACTUAL BACKGROUND

**A.    The SBA Paycheck Protection Program**

**1.    SBA Loan Programs in General**

25.    Created in 1953, the mission of the United States Small Business Administration (SBA) is to help small business owners and entrepreneurs pursue the American dream.  The SBA is a cabinet-level agency of the United States.  It is fully dedicated to small business and provides counseling, capital, and contracting expertise as the nation's only go-to resource and voice for small businesses.

**ANSWER:**

Defendants admit that the United States Small Business Administration ("SBA") is an agency of the United States federal government.  To the extent the allegations in Paragraph 25 relate to third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them.  Defendants deny any remaining allegations in Paragraph 25.

26.    The SBA works with lenders to provide loans to small businesses.  The SBA doesn't lend money directly to small business owners.  Instead, it sets guidelines for loans made by its partnering lenders, community development organizations, and micro-lending institutions.

**ANSWER:**

To the extent the allegations in Paragraph 26 relate to third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them.  Defendants deny any remaining allegations in Paragraph 26.

27.    Loans guaranteed by the SBA range from small to large and can be used for most business purposes, including long-term fixed assets and operating capital.  Certain loan programs set restrictions on how businesses can use the funds.

**ANSWER:**

To the extent the allegations in Paragraph 27 relate to third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them.  Defendants deny any remaining allegations in Paragraph 27.

28.    Additionally, SBA loan programs have unique eligibility requirements.  In general, eligibility is based on what a business does to receive its income, the character of its ownership,

and where the business operates.  Normally, businesses must meet size standards, be able to repay, and have a sound business purpose.

**ANSWER:**

To the extent the allegations in Paragraph 28 purport to characterize or describe SBA loan program rules or regulations, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  To the extent the allegations in Paragraph 28 relate to third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them.  Defendants deny any remaining allegations in Paragraph 28.

### 2.    Applicable Laws, Regulations, and Guidance for the SBA's Paycheck Protection Program

29.    On March 27, 2020, the President signed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") (Pub. L. 116-136) to provide emergency assistance and health care response for individuals, families, and businesses affected by the coronavirus pandemic.  The SBA received funding and authority through the CARES Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency.

**ANSWER:**

To the extent the allegations in Paragraph 29 purport to characterize or describe the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") (Pub. L. 116-136), Defendants state that such source speaks for itself and specifically deny any characterization or description that is inconsistent with the referenced source.  To the extent the allegations in Paragraph 29 relate to third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them.  Defendants deny any remaining allegations in Paragraph 29.

30.    Section 1102 of the Act temporarily permits SBA to guarantee 100 percent of 7(a) loans under a new program titled the Paycheck Protection Program (PPP).  Section 1106 of the Act provides for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

**ANSWER:**

To the extent the allegations in Paragraph 30 purport to characterize or describe Sections 1102 or 1106 of the CARES Act or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 30 contains Relator's characterization of his claims and/or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 30.

31.     The SBA and the United States Department of the Treasury ("Treasury") worked together to implement PPP, releasing regulations and guidance on a regular basis.

**ANSWER:**

To the extent the allegations in Paragraph 31 relate to third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them.

Defendants deny any remaining allegations in Paragraph 31.

32.     Title I of the CARES Act established PPP under a new Section 7(a)(36) of the Small Business Act of 1953 (the "Small Business Act").  PPP was subsequently expanded by the Paycheck Protection Program and Health Care Enhancement Act, which was signed into law on April 24, 2020, and extended by the Paycheck Protection Program Flexibility Act (the "Flexibility Act"), which was signed into law on June 5, 2020.

**ANSWER:**

To the extent the allegations in Paragraph 32 purport to characterize or describe Title I of the CARES Act, the Paycheck Protection Program and Health Care Enhancement Act, the Paycheck Protection Program Flexibility Act, or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 32 contains Relator's characterization of his claims, legal argument, and/or legal conclusions to which no response is required.  To the extent a response is

15

required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 32.

33.    Loans guaranteed under the PPP will be 100 percent guaranteed by SBA, and the full principal amount of the loans may qualify for loan forgiveness.

**ANSWER:**

To the extent the allegations in Paragraph 33 purport to characterize or describe SBA loan program rules or regulations, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. To the extent the allegations in Paragraph 33 relate to third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny those allegations. Defendants deny any remaining allegations in Paragraph 33.

34.    Because PPP is a loan program under Section 7(a) of the Small Business Act, it is subject to the regulations applicable to SBA Section 7(a) business loans except where the CARES Act or applicable regulations provide otherwise.

**ANSWER:**

To the extent the allegations in Paragraph 34 purport to characterize or describe Section 7(a) of the Small Business Act or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 34 contains Relator's characterization of his claims, legal argument, and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 34.

35.    Section 7(a) loan regulations are generally found in 13 C.F.R. part 120. PPP is also subject to SBA affiliation rules in 13 C.F.R. § 121.301(f).

**ANSWER:**

To the extent the allegations in Paragraph 35 purport to characterize or describe Section 7(a) of the Small Business Act, 13 C.F.R. part 120, 13 C.F.R. § 121.301(f), or other sources,

Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 35 contains Relator's characterization of his claims, legal argument, and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 35.

36. In addition to the laws and regulations that apply to PPP loans, the SBA has issued ongoing official guidance regarding PPP loans. Relevant guidance is discussed below.

**ANSWER:**

To the extent the allegations in Paragraph 36 relate to third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them. Defendants deny any remaining allegations in Paragraph 36.

37. On April 2, 2020, the SBA published its first Interim Final Rule on Business Loan Program Temporary Changes; Paycheck Protection Program (the "Interim Final Rule").

**ANSWER:**

To the extent the allegations in Paragraph 37 relate to third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them. Defendants deny any remaining allegations in Paragraph 37.

38. On April 3, 2020, the SBA published an Interim Final Rule on Applicable Affiliation Rules ("IFR #2").

**ANSWER:**

To the extent the allegations in Paragraph 38 relate to third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them. Defendants deny any remaining allegations in Paragraph 38.

39. Also on April 3, 2020, SBA published a summary of affiliation rules applicable to PPP (the "Affiliation Guidance"), which confirmed that the affiliation rules of 13 C.F.R. § 121.301(f) apply to PPP.

**ANSWER:**

To the extent the allegations in Paragraph 39 purport to characterize or describe a summary of affiliation rules published by the SBA or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 39 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 39.

40.     On April 24, 2020, SBA published an Interim Final Rule on Requirements for Promissory Notes, Authorizations, Affiliation, and Eligibility ("IFR #4"), which provided clarification regarding eligibility for private equity fund portfolio companies, and a guide on How to Calculate Maximum Loan Amounts.

**ANSWER:**

To the extent the allegations in Paragraph 40 purport to characterize or describe an Interim Final Rule on Requirements for Promissory Notes, Authorizations, Affiliation, and Eligibility published by the SBA or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 40 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 40.

41.     On April 30, 2020, SBA published an Interim Final Rule on Corporate Groups and Non-Bank and Non-Insured Depository Institution Lenders ("IFR #7").

**ANSWER:**

To the extent the allegations in Paragraph 41 relate to third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them. Defendants deny any remaining allegations in Paragraph 41.

42.    On May 8, 2020, SBA published an Interim Final Rule on Extension of Limited Safe Harbor with Respect to Certification Concerning Need for PPP Loan Request ("IFR #9").

**ANSWER:**

To the extent the allegations in Paragraph 42 relate to third parties, Defendants are without

information sufficient to form a belief as to the truth of these allegations and therefore deny them.

Defendants deny any remaining allegations in Paragraph 42.

43.    On May 20, 2020, SBA published an Interim Final Rule on Second Extension of Limited Safe Harbor with Respect to Certification Concerning Need for PPP Loan and Lender Reporting ("IFR #13").

**ANSWER:**

To the extent the allegations in Paragraph 43 relate to third parties, Defendants are without

information sufficient to form a belief as to the truth of these allegations and therefore deny them.

Defendants deny any remaining allegations in Paragraph 43.

44.    On May 22, 2020, SBA published an Interim Final Rule on Loan Forgiveness ("IFR #14") and an Interim Final Rule on SBA Loan Review Procedures and Related Borrower and Lender Responsibilities ("IFR #15").

**ANSWER:**

To the extent the allegations in Paragraph 44 relate to third parties, Defendants are without

information sufficient to form a belief as to the truth of these allegations and therefore deny them.

Defendants deny any remaining allegations in Paragraph 44.

45.    On June 11, 2020, SBA published an Interim Final Rule on Revisions to First Interim Final Rule ("IFR #17") to revise the Interim Final Rule to account for changes made by the Flexibility Act.

**ANSWER:**

To the extent the allegations in Paragraph 45 purport to characterize or describe an Interim

Final Rule on Revisions to First Interim Final Rule published by the SBA or other sources,

Defendants state that such sources speak for themselves and specifically deny any characterization

or description that is inconsistent with the referenced sources.  To the extent Paragraph 45 contains

Relator's characterization of his claims, legal argument, and/or legal conclusions, no response is

required.  To the extent a response is required, Defendants deny such characterizations and/or

conclusions.  Defendants deny any remaining allegations in Paragraph 45.

46.    On June 22, 2020, SBA published an Interim Final Rule on Revisions to Loan
Forgiveness Interim Final Rule and SBA Loan Review Procedures Interim Final Rule ("IFR #20")
to revise IFR #14 and IFR #15 to account for changes made by the Flexibility Act.

**ANSWER:**

To the extent the allegations in Paragraph 46 purport to characterize or describe an Interim

Final Rule on Revisions to Loan Forgiveness Interim Final Rule and SBA Loan Review

Procedures Interim Final Rule published by the SBA or other sources, Defendants state that such

sources speak for themselves and specifically deny any characterization or description that is

inconsistent with the referenced sources.  To the extent Paragraph 46 contains Relator's

characterization of his claims and/or legal conclusions, no response is required.  To the extent a

response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny

any remaining allegations in Paragraph 46.

47.    Since early April 2020, guidance from SBA can be found in a regularly updated
FAQ (the "SBA FAQ") that is posted on the SBA and Treasury websites.

**ANSWER:**

To the extent the allegations in Paragraph 47 purport to characterize or describe an SBA

FAQ or other sources, Defendants state that such sources speak for themselves and specifically

deny any characterization or description that is inconsistent with the referenced sources.  To the

extent Paragraph 47 contains Relator's characterization of his claims and/or legal conclusions, no

response is required.  To the extent a response is required, Defendants deny such characterizations

and/or conclusions.  Defendants deny any remaining allegations in Paragraph 47.

### 3.    PPP Loan Eligibility

48.    A business is eligible for a PPP loan if it meets any one of the following standards:

  i.    Together with its affiliates, it has 500 or fewer employees,
regardless of their principal place of residence.  See 15 USCS

§ 636(a)(36)(D)(i)(I); SBA FAQ Question 44 (published May 5, 2020).

ii.   Together with its affiliates, it meets the SBA employee-based size standard for the North American Industry Classification System ("NAICS") code applicable to its primary industry.  See 15 USCS § 636(a)(36)(D)(i)(II); SBA FAQ Question 3.

iii.  Its primary industry is in NAICS category 72 (accommodations and food service) and it has, together with its affiliates, no more than 500 employees per physical location.  See 15 USCS § 636(a)(36)(D)(iii).

iv.   On its own, it meets the size standard (employee-based or receipts-based) established by SBA for the NAICS code applicable to its primary industry, and together with its affiliates, it meets the size standard (employee-based or receipts-based) established by SBA for the NAICS code applicable to either its primary industry or the primary industry of itself and its affiliates on a combined basis, whichever standard is higher.  See 13 C.F.R. § 121.301(a); SBA FAQ Question 2.

v.    It has, together with its affiliates, $15 million or less of tangible net worth as of March 27, 2020, and $5 million or less of average net income after Federal income taxes (excluding carry-over losses) for the last two full fiscal years before the date of application.  See 15 USCS § 632(a)(5)(B); SBA FAQ Question 2.

**ANSWER:**

To the extent the allegations in Paragraph 48 purport to characterize or describe 15 USCS § 636 or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 48 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 48.

49.    In counting employees for purposes of determining PPP eligibility, PPP applicants may use (a) their average number of employees over the previous 12 months, (b) their average number of employees for calendar year 2019, or (c) their average number of employees for each pay period during the last 12 calendar months completed prior to the loan application.  If the business has been operational for less than 12 months, it may use the average number of employees for each of the pay periods that it has been operational.  See 13 C.F.R. § 121.106(b); SBA FAQ

Question 14.  The employee test for determining PPP loan eligibility is a head-count test, including full-time, part-time, temporary, leased, and furloughed employees.  See 13 C.F.R § 121.106(a).

**ANSWER:**

To the extent the allegations in Paragraph 49 purport to characterize or describe 3 C.F.R. § 121.106(b) or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 49 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 49.

50.    Certain businesses are ineligible for PPP loans even if they meet the size tests described above.  Among the ineligible businesses, financial businesses primarily engaged in the business of lending and speculative businesses are ineligible.  See Interim Final Rule § 2(c); 13 C.F.R. § 120.110; SBA Standard Operating Procedure (SOP) 50 10 5(K), Subpart B, Chapter 2.

**ANSWER:**

To the extent the allegations in Paragraph 50 purport to characterize or describe an SBA Interim Final Rule, C.F.R. § 120.110, SBA Standard Operating Procedure (SOP) 50 10 5(K), or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 50 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 50.

51.    As a result, private equity funds and management companies are ostensibly ineligible for PPP loans.  SBA has taken the position that "[h]edge funds and private equity firms are primarily engaged in investment or speculation, and such businesses are therefore ineligible to receive a PPP loan."  See IFR #4 § 2(a).

**ANSWER:**

To the extent the allegations in Paragraph 51 purport to characterize or describe an SBA Interim Final Rule or other sources, Defendants state that such sources speak for themselves and

specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 51 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 51.

52. Private equity fund portfolio companies may be generally eligible for PPP loans, assuming they meet the size standards (described above) and are not in an ineligible business.

**ANSWER:**

Defendants admit that companies that have received investment from private equity entities are generally eligible for loans under the Paycheck Protection Program. To the extent that Paragraph 52 contains Relator's characterization of his claims and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 52.

53. However, the SBA's affiliation rules apply and can cause other portfolio companies of the private equity fund to be aggregated for purposes of the size test (see below).

**ANSWER:**

Paragraph 53 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 53.

54. In addition, the SBA notes that "all borrowers should carefully review the required certification on the Paycheck Protection Program Borrower Application Form (SBA Form 2483) stating that '[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.'" See IFR #4 § 2(b).

**ANSWER:**

To the extent the allegations in Paragraph 54 purport to characterize or describe an SBA Interim Final Rule or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced

sources.  Paragraph 54 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 54.

55.    SBA guidance further provides that "Borrowers must make this certification in good faith, taking into account their current business activity and their ability to access other sources of liquidity sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business."  See SBA FAQ Question 31.

**ANSWER:**

To the extent the allegations in Paragraph 55 purport to characterize or describe an SBA FAQ or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 55 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 55.

56.    An applicant is not specifically required to show that it is unable to obtain credit elsewhere in order to get a PPP loan, but SBA guidance issued on April 23, 2020 and April 26, 2020 informs this analysis.  The CARES Act waives the SBA requirement that a borrower show it is unable to obtain credit elsewhere.  See 15 USCS § 636(a)(36)(I).

**ANSWER:**

To the extent the allegations in Paragraph 56 purport to characterize or describe 15 USCS § 636(a)(36)(I) or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 56 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 56.

57.     However, SBA FAQ Question 31 indicates that availability of alternate liquidity sources is relevant to whether an applicant can certify in good faith that a PPP loan is necessary, as required by the PPP loan application.  See SBA FAQ Question 37 (published April 23, 2020). While SBA FAQ Question 31 refers to "public company[ies] with substantial market value and access to capital markets," SBA FAQ Question 37 extends SBA FAQ Question 31 to all businesses owned by private companies with adequate sources of liquidity.  See SBA FAQ Question 37 (published April 26, 2020).

**ANSWER:**

To the extent the allegations in Paragraph 57 purport to characterize or describe SBA FAQs or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 57 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 57.

58.     SBA FAQ 31 states:

> In addition to reviewing applicable affiliation rules to determine eligibility, all borrowers must assess their economic need for a PPP loan under the standard established by the CARES Act and the PPP regulations at the time of the loan application. Although the CARES Act suspends the ordinary requirement that borrowers must be unable to obtain credit elsewhere (as defined in section 3(h) of the Small Business Act), borrowers still must certify in good faith that their PPP loan request is necessary. Specifically, before submitting a PPP application, all borrowers should review carefully the required certification that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant." Borrowers must make this certification in good faith, taking into account their current business activity and their ability to access other sources of liquidity sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business. For example, it is unlikely that a public company with substantial market value and access to capital markets will be able to make the required certification in good faith, and such a company should be prepared to demonstrate to SBA, upon request, the basis for its certification.

**ANSWER:**

To the extent the allegations in Paragraph 58 purport to characterize or describe an SBA FAQ or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 58 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 58.

59.    For applicants that applied for and received a PPP loan but then believed, based on subsequent SBA guidance, that they could not certify in good faith that current economic uncertainty makes their PPP loan necessary to support ongoing operations, the SBA provided a safe harbor that permitted borrowers to repay PPP loans in full by May 18, 2020.

**ANSWER:**

To the extent the allegations in Paragraph 59 purport to characterize or describe an SBA publication, other supposed SBA "guidance," or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 59 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 59.

60.    Borrowers that repaid their PPP loans in full by May 18, 2020, will be deemed to have made the required certification of need in good faith. See IFR #4 § 5 as modified by IFR #9 and IFR #13 § 1; SBA FAQ Question 31, as modified by SBA FAQ Question 43 and SBA FAQ Question 47.

**ANSWER:**

To the extent the allegations in Paragraph 60 purport to characterize or describe SBA FAQs, Interim Final Rules, or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 60 contains Relator's characterization of his claims, legal argument,

and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 60.

61.    In addition, the SBA has stated that: "Any borrower that, together with its affiliates, received PPP loans with an original principal amount of less than $2 million will be deemed to have made the required certification concerning the necessity of the loan request in good faith." Affiliation for this purpose is determined based on the rules that apply for determining eligibility for a PPP loan. See SBA FAQ Question 46.

**ANSWER:**

To the extent the allegations in Paragraph 61 purport to characterize or describe an SBA FAQ or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 61 contains Relator's characterization of his claims, legal arguments, and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 61.

### 4.    Affiliation for Purposes of PPP Size Tests

62.    The SBA defines "affiliation" as one business controlling or having the power to control another or when a third party (or parties) controls or has the power to control both businesses. See 13 C.F.R. § 121.301(f); Affiliation Guidance. The SBA has an expansive view of what constitutes "control," and it does not matter whether control is exercised, so long as the power to control exists. SBA applies four specific affiliation rules for purposes of the PPP size tests:

i.    *Affiliation based on ownership.* For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50% of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the board of directors or president or chief executive officer (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern. SBA will deem a minority shareholder to be in control if that individual or entity has the ability, under the concern's charter, bylaws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders. See 13 C.F.R. § 121.301(f)(1).

ii.   *Affiliation arising under stock options, convertible securities, and agreements to merge.*  For purposes of determining control and affiliation, options, convertible securities, and agreements to merge (including agreements in principle) are considered effective as if exercised or consummated, as the case may be, unless subject to conditions precedent which are incapable of fulfillment, speculative, conjectural, or unenforceable under state or Federal law, or where the probability of the transaction (or exercise of the rights) occurring is shown to be extremely remote.  Significantly, a person or entity that controls one or more other entities cannot use options, convertible securities, or agreements to appear to eliminate control before actually doing so.  SBA will not give present effect to a person's or entity's ability to divest all or part of its ownership interest in order to avoid a finding of affiliation.  See 13 C.F.R. § 121.301(f)(2).

iii.  *Affiliation based on management.*  Where the chief executive officer or president of an entity (or other officers, managing members, or partners who control the management of the entity) also controls the management of another entity, the two entities will be deemed affiliates under common control.  Where a single person or entity that controls the board of directors or management of one entity also controls the board of directors or management of another entity, the two entities will be deemed affiliates under common control.  Where a person or entity controls the management of another entity through a management agreement, the entities are deemed affiliated.  See 13 C.F.R. § 121.301(f)(3).

iv.   *Affiliation based on identity of interest*.  Where there is an identity of interest between close relatives with identical or substantially identical business or economic interests (e.g., in the same or similar industry in the same geographic area), such interests are presumed to be affiliated.  This presumption may be rebutted with evidence showing that the interests are separate.  See 13 C.F.R. § 121.301(f)(4).

**ANSWER:**

To the extent the allegations in Paragraph 62 purport to characterize or describe 13 C.F.R. § 121.301 or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 62 contains Relator's characterization of his claims, legal arguments, and/or legal conclusions, to which no response is required.  To the extent a response is required,

Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 62.

63.    Affiliation is particularly relevant for private equity and venture funds because, if a private equity or venture fund is deemed to be an affiliate of a PPP applicant, all other affiliates of the fund (e.g., all other portfolio companies controlled by the fund) will be deemed affiliates of that PPP applicant.

**ANSWER:**

Paragraph 63 contains Relator's characterization of his claims, legal arguments, and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 63.

64.    Moreover, if the fund is part of a family or series of funds under common control, the affiliates of those funds would also be deemed affiliates of the PPP applicant. In many cases, such extended affiliation would make it impossible for the applicant to meet the size standards for PPP eligibility.

**ANSWER:**

Paragraph 64 contains Relator's characterization of his claims, legal arguments, and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 64.

65.    In addition, private equity management companies are deemed affiliates of the funds they manage by virtue of common management or common control, which make them affiliates of controlled portfolio companies and exclude them from PPP eligibility. In any of these situations, a PPP applicant must account for affiliates in size determinations.

**ANSWER:**

Paragraph 65 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 65.

66.    There are certain circumstances in which the affiliation rules do not apply.  See 15 USCS § 636(a)(36)(D)(iv).  Specifically, during the "covered period" (which is defined as February 15, 2020 through June 30, 2021) the CARES Act waives the affiliation rules with respect to eligibility of a PPP applicant that is one of the following:

    i.    A business within NAICS category 72 that has no more than 500 employees.

    ii.    A business operating as a franchise with a franchise identifier code assigned by SBA in the SBA Franchise Directory.

    iii.    A business that receives financial assistance from a small business investment company licensed by SBA ("SBIC").

**ANSWER:**

To the extent the allegations in Paragraph 66 purport to characterize or describe 15 USCS § 636 or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 66 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 66.

67.    Potentially, a portfolio company controlled by a private equity fund could qualify for a PPP loan using the tangible net worth and net income test (described above), assuming the portfolio company and its affiliates, which would include the fund's other controlled portfolio companies, meet the tangible net worth and net income tests on a combined basis.

**ANSWER:**

Paragraph 67 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 67.

### 5.    PPP Loan Terms

68.    PPP loans funded before the enactment of the Flexibility Act mature two years from the date of funding, see Interim Final Rule § 2(j), unless modified by the lender and borrower, see Flexibility Act § 2(b).  PPP loans funded after the enactment of the Flexibility Act on June 5, 2020,

mature five years after the date of funding.  See Small Business Act § 7(a)(36)(K)(ii), as amended by Flexibility Act § 2.

**ANSWER:**

To the extent the allegations in Paragraph 68 purport to characterize or describe an SBA Interim final Rule, Small Business Act § 7(a)(36)(K)(ii), or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 68 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 68.

69.    No payments are due on a PPP loan until the SBA has paid the lender the amount of the PPP loan to be forgiven or notified the lender that no forgiveness will be allowed, but interest will accrue during that period.  See 15 USCS § 636(a)(36)(M)(ii), as amended by Flexibility Act § 3(c); Interim Final Rule § 2(n), as revised by IFR #17 § 1(c).

**ANSWER:**

To the extent the allegations in Paragraph 69 purport to characterize or describe an SBA Interim Final Rule, 15 USCS § 636(a)(36)(M)(ii), or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 69 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 69.

70.    Thereafter, most banks will charge monthly or quarterly payments of principal and interest until maturity.  However, any borrower that does not apply for forgiveness within ten months after the end of its eight-week or 24-week covered period must begin making payments of principal and interest on or after the expiration of that ten-month period.  See 15 USCS § 636(a)(36)(M)(v), as amended by Flexibility Act § 3(c).

**ANSWER:**

To the extent the allegations in Paragraph 70 purport to characterize or describe 15 USCS § 636(a)(36)(M)(v) or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 70 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 70.

71.     Lenders must notify borrowers when SBA pays the forgiveness amount or determines that no forgiveness is allowed. See Interim Final Rule § 2(n), as revised by IFR #17 § 1(c).

**ANSWER:**

To the extent the allegations in Paragraph 71 purport to characterize or describe an SBA Interim Final Rule or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 71 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 71.

### 6.    Permitted Uses and Forgivable Uses of PPP Loan Funds

72.     Permitted Uses and Forgivable Uses of PPP Loan Funds:

      i.      Payroll costs.

      ii.     Costs related to the continuation of group health care benefits during periods of paid sick, medical, or family leave, and insurance premiums;

     iii.    Employee salaries, commissions, or similar compensations.

    iv.     Payments of interest on any mortgage obligation (but not principal payments or prepayments).

    v.     Rent (including rent under a lease agreement).

    vi.    Utilities.

    vii.   Interest on any other debt obligations that were incurred before the covered period.

*See* 15 USCS § 636(a)(36)(F)(i).

**ANSWER:**

To the extent the allegations in Paragraph 72 purport to characterize or describe 15 USCS § 636 or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 72 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 72.

73.    Prior to the enactment of the Flexibility Act on June 5, 2020, the SBA required that at least 75% of PPP loan proceeds be used for payroll costs. See Interim Final Rule § 2(r). The Flexibility Act revised the CARES Act to provide that a borrower must use at least 60% of PPP loan proceeds for payroll costs in order to be eligible for forgiveness of its PPP loan, *see* CARES Act § 1106(d)(7), as added by Flexibility Act § 3(b), and IFR #17 revised the Interim Final Rule to require that at least 60% of PPP loan proceeds be used for payroll costs. See IFR #17 § 1(e), amending Interim Final Rule § 2(r). Additionally, not all permitted uses of PPP loan proceeds qualify for forgiveness.

**ANSWER:**

To the extent the allegations in Paragraph 73 purport to characterize or describe an SBA Interim Final Rules or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 73 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required. To the extent a response is required,

Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 73.

74.    Technically speaking, PPP loan proceeds may be used for other allowable purposes under Section 7(a) of the Small Business Act. However, the PPP loan application requires the applicant to disclose the purpose of the loan and includes a certification that the proceeds of the loan will be used "to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments…." Based on that certification, borrowers may not use PPP loan proceeds for purposes that were not disclosed in the loan application or would not fall within the certification on the loan application form.

**ANSWER:**

To the extent the allegations in Paragraph 74 purport to characterize or describe Section 7(a) of the Small Business Act or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 74 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 74.

75.    If a borrower uses PPP loan funds for unauthorized purposes, SBA will require those amounts to be repaid. If a borrower knowingly uses PPP loan proceeds for unauthorized purposes, it will be subject to additional liability, such as fraud charges. If a borrower's shareholder, member, or partner uses PPP loan proceeds for unauthorized purposes, SBA will have recourse against that shareholder, member, or partner. See Interim Final Rule § 2(s).

**ANSWER:**

To the extent the allegations in Paragraph 75 purport to characterize or describe an SBA Interim Final Rule or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 75 contains Relator's characterization of his claims and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 75.

76.    Subject to various limitations, the outstanding principal amount of a PPP loan can be forgiven to the extent that PPP loan proceeds were used to pay the following:

    i.     Payroll costs.

    ii.    Mortgage interest (but not principal payments or prepayments) on mortgage obligations on real or personal property incurred before February 15, 2020.

    iii.   Rent under leases for real or personal property in force before February 15, 2020.

    iv.   Utilities where service began before February 15, 2020.

*See* CARES Act § 1106(b).

**ANSWER:**

To the extent the allegations in Paragraph 76 purport to characterize or describe Section 1106(b) of the CARES Act or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 76 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 76.

77.    However, the Flexibility Act amended the CARES Act to provide that a borrower must use at least 60% of PPP loan proceeds for payroll costs in order to be eligible for forgiveness of its PPP loan, *see* CARES Act § 1106(d)(7), as added by Flexibility Act § 3(b), and IFR #17 revised the Interim Final Rule to require that at least 60% of PPP loan proceeds be used for payroll costs *see* IFR #17 § 1(e), amending Interim Final Rule § 2(r).

**ANSWER:**

To the extent the allegations in Paragraph 77 purport to characterize or describe Section 1106(b) of the CARES Act, an SBA Interim Final Rule, or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 77 contains Relator's characterization of his claims and/or legal conclusions, to which no response is required. To the extent a response is

required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 77.

78.    The CARES Act and initial SBA forgiveness guidance tie forgiveness of PPP loan proceeds to use during an eight-week period beginning when the PPP loan is funded or, with respect to payroll costs of certain borrowers, beginning with the start of the first pay period after the PPP loan is funded.

**ANSWER:**

Paragraph 78 contains Relator's characterization of his claims and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 78.

79.    The Flexibility Act revised the CARES Act to permit (but not require) borrowers to use PPP loan proceeds over 24 weeks instead of eight weeks, provided that the 24-week period may not extend beyond December 31, 2020. See CARES Act § 1106(a)(3), as amended by Flexibility Act § 3(b). The "covered period" will be 24 weeks unless a borrower elects to use the original eight-week period.

**ANSWER:**

To the extent the allegations in Paragraph 79 purport to characterize or describe Section 1106(b) of the CARES Act or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 79 contains Relator's characterization of his claims and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 79.

80.    In order to obtain forgiveness of a PPP loan, borrowers must submit to their PPP lenders a Loan Forgiveness Application plus documentation showing the permitted use of PPP loan proceeds and employment and payroll records for the relevant periods, together with certifications of accuracy.

**ANSWER:**

Paragraph 80 contains Relator's characterization of his claims and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 80.

81.     The lender must perform a good faith review of the borrower's calculations and supporting documents and work with the borrower to remedy any errors the lender identifies. The lender is not required to independently verify the borrower's reported information. See IFR #15 § 2(a), as amended by IFR #20 § 2(b).

**ANSWER:**

To the extent the allegations in Paragraph 81 purport to characterize or describe an SBA Interim Final Rule or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 81 contains Relator's characterization of his claims and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 81.

82.     The lender has 60 days after it has received a complete forgiveness application to make a determination of the forgiveness amount, if any, and submit its determination and supporting documentation to SBA. Subject to any SBA review of the loan or loan application, SBA will pay the forgiveness amount, plus interest accrued through the date of payment, to the lender within 90 days after the lender submits its determination to SBA. See CARES Act § 1106(e)-(g); IFR #15 § 2(b), as amended by IFR #20 § 2(b).

**ANSWER:**

To the extent the allegations in Paragraph 82 purport to characterize or describe Section 1106(b) of the CARES Act, an SBA Interim Final Rule, or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 82 contains Relator's characterization of his claims and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 82.

83.    A PPP borrower may submit its forgiveness application any time on or before the maturity date of the loan if the borrower has used all of the PPP loan proceeds for which it is requesting forgiveness. A borrower may apply before the end of its chosen eight-week or 24-week covered period, but if it does so and has reduced any employee's salary or hourly wage by more than 25%, it must account for the excess reduction for the full eight-week or 24-week covered period, as applicable. If a borrower does not file its forgiveness application within ten months after the end of its eight-week or 24-week covered period, it must begin paying principal and interest on the PPP loan. See IFR #14 § 2(b), as added by IFR #20 § 1(c).

**ANSWER:**

To the extent the allegations in Paragraph 83 purport to characterize or describe an SBA

Interim Final Rule or other sources, Defendants state that such sources speak for themselves and

specifically deny any characterization or description that is inconsistent with the referenced

sources. Paragraph 83 contains Relator's characterization of his claims, legal argument, and/or

legal conclusions, to which no response is required. To the extent a response is required,

Defendants deny such characterizations and/or conclusions. Defendants deny any remaining

allegations in Paragraph 83.

84.    SBA began approving PPP forgiveness applications and remitting forgiveness payments to PPP lenders for PPP borrowers on October 2, 2020.

**ANSWER:**

To the extent the allegations in Paragraph 84 relate to third parties, Defendants are without

information sufficient to form a belief as to the truth of these allegations and therefore deny them.

Defendants deny any remaining allegations in Paragraph 84.

### 7.    The PPP Loan Application and Required Certifications

85.    The PPP Loan Application form requires the applicant to certify its number of employees.

**ANSWER:**

To the extent the allegations in Paragraph 85 purport to characterize or describe an SBA

Loan Application form or other sources, Defendants state that such sources speak for themselves

and specifically deny any characterization or description that is inconsistent with the referenced

sources. Defendants deny any remaining allegations in Paragraph 85.

86.    The PPP Loan Application form also requires the applicant to identify all owners of 20% of more of the equity of the applicant.

**ANSWER:**

To the extent the allegations in Paragraph 86 purport to characterize or describe an SBA Loan Application form or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Defendants deny any remaining allegations in Paragraph 86.

87.    For limited liability companies, the instructions to the PPP loan application state that all members owning 20% or more of the company are "owners."

**ANSWER:**

To the extent the allegations in Paragraph 87 purport to characterize or describe an SBA Loan Application form or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Defendants deny any remaining allegations in Paragraph 87.

88.    The loan application requires an express certification that the applicant "has read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them."

**ANSWER:**

To the extent the allegations in Paragraph 88 purport to characterize or describe an SBA Loan Application form or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Defendants deny any remaining allegations in Paragraph 88.

89.    The loan application also requires an express certification that "[t]he applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)."

**ANSWER:**

To the extent the allegations in Paragraph 89 purport to characterize or describe an SBA Loan Application form or other sources, Defendants state that such sources speak for themselves

and specifically deny any characterization or description that is inconsistent with the referenced sources. Defendants deny any remaining allegations in Paragraph 89.

90.     The loan application also requires an express certification that the applicant "employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry."

**ANSWER:**

To the extent the allegations in Paragraph 90 purport to characterize or describe an SBA Loan Application form or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Defendants deny any remaining allegations in Paragraph 90.

91.     The loan application also requires an express certification that "[a]ll SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule."

**ANSWER:**

To the extent the allegations in Paragraph 91 purport to characterize or describe an SBA Loan Application form or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Defendants deny any remaining allegations in Paragraph 91.

92.     The loan application also requires the applicant to expressly certify that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."

**ANSWER:**

To the extent the allegations in Paragraph 92 purport to characterize or describe an SBA Loan Application form or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Defendants deny any remaining allegations in Paragraph 92.

93.     The loan application also requires the applicant to expressly certify that "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I

understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

    **ANSWER:**

    To the extent the allegations in Paragraph 93 purport to characterize or describe an SBA Loan Application form or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Defendants deny any remaining allegations in Paragraph 93.

    94.    The loan application also requires the applicant to expressly certify that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and that "[the applicant] understand[s] that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."

    **ANSWER:**

    To the extent the allegations in Paragraph 94 purport to characterize or describe an SBA Loan Application form or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Defendants deny any remaining allegations in Paragraph 94.

    95.    The loan application also requires the applicant to expressly certify that "[the applicant] acknowledge[s] that the lender will confirm the eligible loan amount using required documents submitted."

    **ANSWER:**

    To the extent the allegations in Paragraph 95 purport to characterize or describe an SBA Loan Application form or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Defendants deny any remaining allegations in Paragraph 95.

    96.    The loan application requires an authorized representative of the applicant to sign.

**ANSWER:**

To the extent the allegations in Paragraph 96 purport to characterize or describe an SBA Loan Application form or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Defendants deny any remaining allegations in Paragraph 96.

97.    As noted, at least with respect to larger companies and businesses owned by private companies with adequate sources of liquidity, the SBA has indicated that applicants must take into account "their current business activity and their ability to access other sources of liquidity sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business." See SBA FAQ Questions 31 and 37. Accordingly, in making the express certification, applicants are required to consider their need for PPP funding in light of SBA FAQ Question 31, stated above.

**ANSWER:**

To the extent the allegations in Paragraph 97 purport to characterize or describe an SBA FAQ or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 97 contains Relator's characterization of his claims and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 97.

98.    Absent the applicable express certifications for a PPP loan as described above, the applicant is not eligible to receive PPP loan funds and the lender cannot approve the loan for PPP funds.

**ANSWER:**

Paragraph 98 contains Relator's characterization of his claims and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 98.

99.    Each of the foregoing PPP loan application certifications is material condition to SBAs approval, guarantee and payment of any claim submitted under the PPP. SBA does not review PPP loan applications for approval prior to the loan funds being disbursed; instead, it relies on its lenders to comply with SBA requirements and to ensure that every loan is in fact eligible for the PPP. The certifications are required for approval of the PPP loan application and for each

applicant to receive payment of PPP loan funds.  The certifications are critical to SBA's and the United States' ability to ensure that only qualified and eligible loans are approved and paid.  And the certifications are needed to protect SBA and the United States from undue risk and loss.

**ANSWER:**

To the extent the allegations in Paragraph 99 relate to third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them. Paragraph 99 contains Relator's characterization of his claims and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 99.

100.    The SBA permitted any borrower that received a PPP loan and believed upon reconsideration that it could not make the required certification in light of SBA's guidance to repay the PPP loan in full by May 18, 2020.  According to the SBA, it would deem any borrower that repaid by May 18, 2020 to have made the required certification of need in good faith.  See IFR #4 § 5 as modified by IFR #9 and IFR #13 § 1; SBA FAQ Question 31, as modified by SBA FAQ Question 43 and SBA FAQ Question 47.

**ANSWER:**

To the extent the allegations in Paragraph 100 purport to characterize or describe an SBA FAQ, an SBA Interim Final Rule, or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 100 contains Relator's characterization of his claims and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 100.

101.    On May 13, 2020, the SBA published FAQ Question and Answer 46 ("FAQ 46"), which provides a new safe harbor based on the principal amount of PPP loans received by a borrower and its affiliates: "Any borrower that, together with its affiliates, received PPP loans with an original principal amount of less than $2 million will be deemed to have made the required certification concerning the necessity of the loan request in good faith."  (Affiliation for this purpose is determined based on the rules that apply for determining eligibility for a PPP loan, as announced in IFR #2.)

**ANSWER:**

To the extent the allegations in Paragraph 101 purport to characterize or describe an SBA FAQ, an SBA Interim Final Rule, or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 101 contains Relator's characterization of his claims and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 101.

102.    FAQ 46 also gives PPP borrowers with loans greater than $2 million that do not satisfy the new safe harbor a means to limit their exposure to sanctions from the SBA. If the SBA determines that such a borrower did not have an adequate basis for the certification of need, SBA will notify the borrower and seek repayment in full of the PPP loan, and tell the lender that the borrower is not eligible for loan forgiveness. FAQ 46 provides that SBA will not pursue further administrative enforcement or refer the borrower to other governmental agencies based on its determination regarding the certification of need if the borrower repays the loan in full after receiving notification from SBA. See SBA FAQ Question 46.

**ANSWER:**

To the extent the allegations in Paragraph 102 purport to characterize or describe an SBA FAQ or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 102 contains Relator's characterization of his claims and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 102.

103.    Notably, repaying the loan pursuant to FAQ 46 does not shield the borrower from all potential liability. FAQ 46 merely states that SBA will not pursue additional action based on a determination that the borrower lacked an adequate basis for the certification of need. A borrower is still liable if there are other violations of the PPP statute or implementing regulations. Further, nothing in FAQ 46 prevents the Government or a qui tam relator or whistleblower who believes that the borrower knowingly made a false statement in connection with its PPP loan application from bringing a complaint under the False Claims Act.

**ANSWER:**

To the extent the allegations in Paragraph 103 purport to characterize or describe an SBA FAQ or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Paragraph 103 contains Relator's characterization of his claims and/or legal conclusions, to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 103.

**B.    Ocean State, Blueprint Test Prep and Fyzical Holdings' PPP Loan Applications and Receipt of PPP Loan Funds**

**1.    Ocean State, Blueprint Test Prep, Fyzical Holdings and Their Private Equity Firm Parent New Harbor Capital**

104.    Founded in 2013, Ocean State is an independent provider of primary care, urgent care and related services in Rhode Island.

**ANSWER:**

Ocean State admits that Ocean State Healthcare was founded in 2013 and provides primary care, urgent care, and related services in Rhode Island. To the extent the allegations in Paragraph 104 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them. Defendants deny any remaining allegations in Paragraph 104.

105.    In October 2017, Chicago-based private equity firm New Harbor Capital Fund LP and its parent New Harbor Capital Management LP (collectively, New Harbor Capital) completed a controlling equity investment in Ocean State.

**ANSWER:**

Ocean State and New Harbor admit that certain New Harbor entities have previously made investments in Ocean State, including an investment completed in 2017. To the extent the allegations in Paragraph 105 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them. As the term "controlling equity investment" is imprecise, Defendants are unable to form a belief

as to the truth of the allegations in Paragraph 105, and on that basis deny those allegations. Defendants deny any remaining allegations in Paragraph 105.

106.    That is, in October 2017, New Harbor Capital Management LP made a controlling investment in Ocean State through the private equity fund, New Harbor Capital Fund LP.  In its capacity as the manager of New Harbor Capital Fund LP, New Harbor Capital Management LP controlled and directed the conduct of Ocean State on behalf of investors of the fund.  New Harbor Capital Management LP Operating Partner John Roselli became an officer (CEO) of Ocean State and served as board member along with other New Harbor Capital Management LP partners. Through New Harbor Capital Fund LP's controlling stake in Ocean State, New Harbor Capital Management LP controlled a majority of the seats on Ocean State's management/board of directors.

**ANSWER:**

Ocean State and New Harbor admit that certain New Harbor entities have previously made

investments in Ocean State.  Ocean State and New Harbor further admit that John Roselli is

employed by New Harbor Capital Management, LP and has undertaken roles in the manner of an

Operating Partner with respect to Ocean State.  To the extent the allegations in Paragraph 106

relate to third parties or other Defendants, Defendants are without information sufficient to form a

belief as to the truth of these allegations and therefore deny them.  As the terms "controlling equity

investment," "controlled and directed," and "controlled a majority of the seats" are imprecise,

Defendants are unable to form a belief as to the truth of the allegations in Paragraph 106, and on

that basis deny those allegations.  Defendants deny any remaining allegations in Paragraph 106.

107.    New Harbor Capital Fund, LP is a private equity fund with a gross asset value of approximately $260,099,243 as of March 30, 2020.

**ANSWER:**

As the terms "private equity fund" and "gross asset value" are imprecise, Defendants are

unable to form a belief as to the truth of the allegations of Paragraph 107, and on that basis deny

those allegations.  To the extent the allegations in Paragraph 107 address the financial position of

New Harbor entities, Ocean State, Blueprint, and Fyzical note that they are without knowledge

regarding these distinct corporate entities, and on that basis deny the allegations in Paragraph 107.

Defendants deny any remaining allegations in Paragraph 107.

108.    In addition to New Harbor Capital Fund LP, New Harbor Capital Management, LP is the parent fund for at least three other private equity funds: New Harbor Capital Fund II-A, LP, New Harbor Capital Fund-A, LP, and New Harbor Capital Fund II, LP.

**ANSWER:**

New Harbor admits that New Harbor Capital Fund LP is affiliated with several related New Harbor entities, including New Harbor Capital Fund II-A, LP, New Harbor Capital Fund-A, LP, and New Harbor Capital Fund II, LP.  As the term "parent fund" is imprecise, Defendants are unable to form a belief as to the truth of the allegations of Paragraph 108, and on that basis deny those allegations.  To the extent the allegations in Paragraph 108 address the relationship between New Harbor entities, Ocean State, Blueprint, and Fyzical note that they are without knowledge regarding these distinct corporate entities, and on that basis deny the allegations in Paragraph 108. Defendants deny any remaining allegations in Paragraph 108.

109.    New Harbor Capital Fund II LP had a gross asset value of approximately $225,398,276 as of March 30, 2020.

**ANSWER:**

As the term "gross asset value" is imprecise, Defendants are unable to form a belief as to the truth of the allegations of Paragraph 109, and on that basis deny those allegations.  To the extent the allegations in Paragraph 109 address the financial position of New Harbor entities, Ocean State, Blueprint, and Fyzical note that they are without knowledge regarding these distinct corporate entities, and on that basis deny the allegations in Paragraph 109.  Defendants deny any remaining allegations in Paragraph 109.

110.    In total, upon information and belief, New Harbor Capital Management, LP had discretionary assets under management of $509,963,209 (gross asset value) as of March 30, 2020.

**ANSWER:**

As the terms "discretionary assets under management" and "gross asset value" are imprecise, Defendants are unable to form a belief as to the truth of the allegations of Paragraph 110, and on that basis deny those allegations. To the extent the allegations in Paragraph 110 address the financial position of New Harbor entities, Ocean State, Blueprint, and Fyzical note that they are without knowledge regarding these distinct corporate entities, and on that basis deny the allegations in Paragraph 110. Defendants deny any remaining allegations in Paragraph 110.

111.    New Harbor Capital is registered with the SEC as a large advisory firm meaning that it has regulatory assets under management of $100 million or more.

**ANSWER:**

New Harbor admits that certain New Harbor entities are registered with the SEC as an "investment advisory firm." To the extent the allegations in Paragraph 111 address the financial position or registration status of New Harbor entities, Ocean State, Blueprint, and Fyzical note that they are without knowledge regarding these distinct corporate entities, and on that basis deny the allegations in Paragraph 111. Defendants deny any remaining allegations in Paragraph 111.

112.    In addition to Ocean State, New Harbor Capital's other current private equity portfolio companies during the relevant time-period included: Fix-It 24/7; Quigley Eye Specialists; Blueprint Test Prep, LLC; Fyzical Therapy & Balance Centers; LGM Pharma; Wedgewood Pharmacy; Certica Solutions; and New York Kids Club.

**ANSWER:**

New Harbor admits that certain New Harbor entities have previously invested in certain businesses, including ones known as or operating under the names Fix-It 24/7; Quigley Eye Specialists; Blueprint Test Prep, LLC; Fyzical Therapy & Balance Centers; LGM Pharma; Wedgewood Pharmacy; Certica Solutions; and New York Kids Club. To the extent the allegations in Paragraph 112 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them. Defendants deny any remaining allegations in Paragraph 112.

113.    In or around April 2018, New Harbor Capital completed a controlling equity investment in Blueprint Test Prep.  Blueprint Test Prep is a LSAT test preparation provider in the United States, offering in-person and asynchronous online courses, private tutoring, self-study materials and application consulting services.

**ANSWER:**

New Harbor and Blueprint admit that certain New Harbor entities have previously made investments in Blueprint.  New Harbor and Blueprint further admit that Blueprint offers test preparation and related services.  To the extent the allegations in Paragraph 113 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them.  As the term "controlling equity investment" is imprecise, Defendants are unable to form a belief as to the truth of the allegations in the first sentence of Paragraph 113, and on that basis deny those allegations.  Defendants deny any remaining allegations in Paragraph 113.

114.    That is, as with Ocean State, in April 2018, New Harbor Capital Management LP made a controlling investment in Blueprint Test Prep through the private equity fund, New Harbor Capital Fund II LP.  In its capacity as the manager of New Harbor Capital Fund II LP, New Harbor Capital Management LP controlled and directed the conduct of Blueprint Test Prep on behalf of investors of the fund.  One or more New Harbor Capital Management LP partners became officer(s) of Blueprint Test Prep.  Upon information and belief, through New Harbor Capital Fund II LP's controlling stake in Blueprint Test Prep, New Harbor Capital Management LP controlled a majority of the seats on Blueprint Test Prep's management/board of directors.

**ANSWER:**

New Harbor and Blueprint admit that certain New Harbor entities have previously made investments in Blueprint, and that certain individuals associated with New Harbor entities served in various roles with respect to Blueprint.  To the extent the allegations in Paragraph 114 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them.  As the terms "controlling investment," "controlled and directed," "controlling stake," and "controlled a majority of [board] sheets" are imprecise, Defendants are unable to form a belief as to the truth of the allegations in Paragraph

114, and on that basis deny those allegations.  Defendants deny any remaining allegations in

Paragraph 114.

115.    In or around December 2017, New Harbor Capital completed a controlling equity
investment in the Fyzical-brand franchise through Fyzical Holdings.  Upon information and belief,
Fyzical Holdings is a holding company incorporated in December 2017 and set up for the
acquisition and ownership of separate franchise owner-operators of physical rehabilitation centers
with an emphasis on balance therapy, medical based fitness and wellness programs operating under
the Fyzical brand.  Upon information and belief, as a holding company, Fyzical Holdings does not
perform physical rehabilitation services itself.  Instead, it is the Fyzical franchisee owner-operators
that perform that work under the Fyzical name.

**ANSWER:**

New Harbor and Fyzical admit that certain New Harbor entities have previously made

investments in Fyzical.  New Harbor and Fyzical further admit that businesses operating under the

"Fyzical" brand name offer physical rehabilitation and related services.   To the extent the

allegations in Paragraph 115 relate to third parties or other Defendants, Defendants are without

information sufficient to form a belief as to the truth of these allegations and therefore deny them.

Defendants deny Relator's characterization of Fyzical's operations and structure.  Defendants deny

any remaining allegations in Paragraph 115.

116.    As with Ocean State and Blueprint Test Prep, in December 2017, New Harbor
Capital Management LP made a controlling investment in Fyzical Holdings through the private
equity fund, New Harbor Capital Fund LP or New Harbor Capital Fund II LP or another fund.  In
its capacity as the manager of New Harbor Capital Fund LP and/or New Harbor Capital Fund II
LP and/or other fund, New Harbor Capital Management LP controlled and directed the conduct of
Fyzical Holdings on behalf of investors of the fund.   One or more New Harbor Capital
Management LP partners became officer(s) of Fyzical Holdings.  Upon information and belief,
through New Harbor Capital Fund LP or New Harbor Capital Fund II LP or other fund's
controlling stake in Fyzical Holdings, New Harbor Capital Management LP controlled a majority
of the seats on Fyzical Holdingss' management/board of directors.

**ANSWER:**

New Harbor and Fyzical admit that certain New Harbor entities have previously made

investments in Fyzical, and that certain individuals associated with New Harbor entities served in

various roles with respect to Fyzical.  To the extent the allegations in Paragraph 116 relate to third

parties or other Defendants, Defendants are without information sufficient to form a belief as to

the truth of these allegations and therefore deny them. As the terms "controlling investment," "controlled and directed," "controlling stake," and "controlled a majority of [board] sheets" are imprecise, Defendants are unable to form a belief as to the truth of the allegations in Paragraph 116, and on that basis deny those allegations. Defendants deny any remaining allegations in Paragraph 116.

### 2. Ocean State, Blueprint Test Prep and Fyzical Holdings' Express Certifications Made in Their PPP Loan Applications

117. On or about April 3, 2020, Ocean State submitted a PPP borrower application form.

**ANSWER:**

Ocean State admits that it submitted an application under the PPP loan program on or about April 3, 2020. To the extent the allegations in Paragraph 117 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them. Defendants deny any remaining allegations in Paragraph 117.

118. Ocean State certified that the purpose of the loan was for only payroll, lease/mortgage interest, and utilities. Ocean State did not identify any other purpose for the loan.

**ANSWER:**

To the extent the allegations in Paragraph 118 purport to characterize or describe loan application materials submitted by Ocean State or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Defendants deny any remaining allegations in Paragraph 118.

119. As required, Ocean State identified in the application New Harbor Capital Fund LP as the owner of 84% of Ocean State.

**ANSWER:**

To the extent the allegations in Paragraph 119 purport to characterize or describe loan application materials submitted by Ocean State or other sources, Defendants state that such sources

speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Defendants deny any remaining allegations in Paragraph 119.

120.    Ocean State certified in the loan application that it "has read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them."

**ANSWER:**

To the extent the allegations in Paragraph 120 purport to characterize or describe loan application materials submitted by Ocean State or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Defendants deny any remaining allegations in Paragraph 120.

121.    Ocean State certified in the loan application that "[t]he applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).

**ANSWER:**

To the extent the allegations in Paragraph 121 purport to characterize or describe loan application materials submitted by Ocean State or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Defendants deny any remaining allegations in Paragraph 121.

122.    Ocean State certified in the loan application that it "employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry."

**ANSWER:**

To the extent the allegations in Paragraph 122 purport to characterize or describe loan application materials submitted by Ocean State or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Defendants deny any remaining allegations in Paragraph 122.

123.    Ocean State certified in the loan application that "[a]ll SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule."

**ANSWER:**

To the extent the allegations in Paragraph 123 purport to characterize or describe loan application materials submitted by Ocean State or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Defendants deny any remaining allegations in Paragraph 123.

124.    Ocean State certified in the loan application that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."

**ANSWER:**

To the extent the allegations in Paragraph 124 purport to characterize or describe loan application materials submitted by Ocean State or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Defendants deny any remaining allegations in Paragraph 124.

125.    Ocean State certified in the loan application that "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

**ANSWER:**

To the extent the allegations in Paragraph 125 purport to characterize or describe loan application materials submitted by Ocean State or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Defendants deny any remaining allegations in Paragraph 125.

126.    Ocean State certified in the loan application that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and that  "[the applicant] understand[s] that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not

more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."

**ANSWER:**

To the extent the allegations in Paragraph 126 purport to characterize or describe loan application materials submitted by Ocean State or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Defendants deny any remaining allegations in Paragraph 126.

127. Ocean State certified in the loan application that "[the applicant] acknowledge[s] that the lender will confirm the eligible loan amount using required documents submitted."

**ANSWER:**

To the extent the allegations in Paragraph 127 purport to characterize or describe loan application materials submitted by Ocean State or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Defendants deny any remaining allegations in Paragraph 127.

128. The loan application was signed by Ocean State's Controller, Sarah Charette, as Ocean State's authorized representative.

**ANSWER:**

To the extent the allegations in Paragraph 128 purport to characterize or describe loan application materials submitted by Ocean State or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Defendants deny any remaining allegations in Paragraph 128.

129. Similarly, in or around April 2020, Blueprint Test Prep and Fyzical Holdings also each submitted a PPP borrower application form.

**ANSWER:**

Blueprint and Fyzical admit that they submitted applications under the PPP loan program on or about April 2020. To the extent the allegations in Paragraph 129 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of

these allegations and therefore deny them. Defendants deny any remaining allegations in Paragraph 129.

130.    Upon information and belief, Blueprint Test Prep and Fyzical Holdings each certified that the purpose of the loan was for only payroll and for no other purpose.

**ANSWER:**

To the extent the allegations in Paragraph 130 purport to characterize or describe loan application materials submitted by Blueprint and Fyzical, or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Defendants deny any remaining allegations in Paragraph 130.

131.    Upon information and belief, as required, Blueprint Test Prep and Fyzical Holdings each identified in the applications New Harbor Capital Fund LP and/or New Harbor Capital Fund II LP and/or other New Harbor Capital fund as the majority owner of the equity of each.

**ANSWER:**

To the extent the allegations in Paragraph 131 purport to characterize or describe loan application materials submitted by Blueprint and Fyzical or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Defendants deny any remaining allegations in Paragraph 131.

132.    Blueprint Test Prep and Fyzical Holdings each made all of the same above-referenced required certifications in their respective PPP loan applications as did Ocean State.

**ANSWER:**

To the extent the allegations in Paragraph 132 purport to characterize or describe loan application materials submitted by Blueprint and Fyzical or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Defendants deny any remaining allegations in Paragraph 132.

133.    At the time of their PPP applications, New Harbor Capital and its portfolio companies—Ocean State, Blueprint Test Prep and Fyzical Holdings—had knowledge of the various federal laws, regulations, and guidance related to the PPP loan application, certifications, eligibility and use requirements.

**ANSWER:**

Defendants state that each Defendant submitting a PPP loan application reasonably believed that they acted in compliance with existing federal laws, regulations, and relevant authoritative guidance in connection with the submission of any PPP loan application or otherwise adopted an interpretation of ambiguous laws, regulations, and relevant authoritative guidance that was objectively reasonable.  As the phrase "the various laws, regulations and guided related to the PPP loan" program is imprecise, overbroad, and vague and ambiguous, Defendants are unable to form a belief as to the truth of the allegations of Paragraph 133, and on that basis deny those allegations.  Defendants deny any remaining allegations in Paragraph 133.

### 3.    Ocean State, Blueprint Test Prep and Fyzical Holdings Each Received PPP Loan Funds

134.    According to SBA PPP loan data made public by the SBA and Treasury, Ocean State received PPP loan funds of $3,159,800 million through Bristol County Savings Bank, which was approved on April 10, 2020.

**ANSWER:**

To the extent the allegations in Paragraph 134 purport to characterize or describe SBA PPP loan data or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Defendants deny any remaining allegations in Paragraph 134.

135.    Based on standard PPP eligibility rules, Ocean State's total 2019 payroll expenses were between $9.6 million and $24 million in order to qualify for the PPP loan amount received. Based on Ocean State's reported 277 jobs retained, this equals an estimated average yearly compensation between $34,657 and $86,643 per employee.

**ANSWER:**

To the extent the allegations in Paragraph 135 purport to characterize or describe SBA PPP loan data, loan application materials submitted by Ocean State, or other sources, Defendants state

that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 135 contains Relator's characterization of his claims and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 135.

136.    Because the loan received by Ocean State is at least $2 million, it is subject to a full review by the SBA to ensure eligibility and compliance with PPP program requirements.

**ANSWER:**

Paragraph 136 contains Relator's characterization of his claims and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 136.

137.    In addition to Ocean State, the data show that at least two of New Harbor Capital's other portfolio companies applied for and received PPP loan funds.

**ANSWER:**

To the extent the allegations in Paragraph 137 purport to characterize or describe SBA PPP loan data or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Defendants deny any remaining allegations in Paragraph 137.

138.    Blueprint Test Prep applied for and received PPP loan funds of $1,267,200 million through PNC Bank, NA, which was approved on April 14, 2020.

**ANSWER:**

Blueprint admits that it applied for and received certain funds through the PPP loan program.  To the extent the allegations in Paragraph 138 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them.  Defendants deny any remaining allegations in Paragraph 138.

139.    Based on standard PPP eligibility rules, Blueprint Test Prep's total 2019 payroll expenses were between $4.8 million and $9.6 million in order to qualify for the PPP loan amount received.    Based on its reported 160 jobs retained, this equals an estimated average yearly compensation between $30,000 and $60,000 per employee.

**ANSWER:**

To the extent the allegations in Paragraph 139 purport to characterize or describe SBA PPP loan data, loan application materials submitted by Blueprint, other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 139 contains Relator's characterization of his claims and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 139.

140.    Because the loan received by Blueprint Test Prep, *together with its affiliates*, is at least $2 million, it is subject to a full review by the SBA to ensure eligibility and compliance with PPP program requirements.  See SBA FAQ Question 46.

**ANSWER:**

To the extent the allegations in Paragraph 140 purport to characterize or describe loan application materials submitted by Blueprint, an SBA FAQ, or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 140 contains Relator's characterization of his claims and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 140.

141.    Fyzical Holdings applied for and received PPP loan funds of $3,076,600 million through Webster Bank, NA, which was approved on April 27, 2020.

**ANSWER:**

Fyzical admits that it applied for and received certain funds through the PPP loan program. To the extent the allegations in Paragraph 141 relate to third parties or other Defendants,

Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them.  Defendants deny any remaining allegations in Paragraph 141.

142.    Based on standard PPP eligibility rules, Fyzical Holdings' total 2019 payroll expenses were between $9.6 million and $24 million in order to qualify for the PPP loan amount received.  Unlike most businesses, it did not report the number of jobs retained by its receipt of the PPP loan, so per-employee payrolls cannot be estimated.

**ANSWER:**

To the extent the allegations in Paragraph 142 purport to characterize or describe SBA PPP loan data, loan application materials submitted by Fyzical, or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 142 contains Relator's characterization of his claims and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 142.

143.    Because the loan received by Fyzical Holdings is at least $2 million, it is subject to a full review by the SBA to ensure eligibility and compliance with PPP program requirements.

**ANSWER:**

To the extent the allegations in Paragraph 143 purport to characterize or describe loan application materials submitted by Blueprint or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 143 contains Relator's characterization of his claims and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 143.

144.    Necessarily, Blueprint Test Prep and Fyzical Holdings also made all of the required certifications in their respective PPP loan applications.  Otherwise, they would not have received the PPP loan funds.

**ANSWER:**

To the extent the allegations in Paragraph 144 purport to characterize or describe loan application materials submitted by Blueprint or Fyzical or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Defendants deny any remaining allegations in Paragraph 144.

145.    Thus, Ocean State and its affiliates, Blueprint Test Prep and Fyzical Holdings, collectively applied for and received PPP loan funds of $7,503,600 and reported 437 jobs retained by their receipt of the PPP loans.

**ANSWER:**

Defendants admit that Ocean State, Blueprint, and Fyzical applied for and received certain funds through the PPP loan program. To the extent the allegations in Paragraph 145 purport to characterize or describe loan application materials submitted by Ocean State, Blueprint, or Fyzical or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Defendants deny any remaining allegations in Paragraph 145.

### 4.    New Harbor Capital Directed Ocean State, Blueprint Test Prep and Fyzica Holdings' PPP Loan Applications and Receipt of PPP Loan Funds

146.    As alleged, New Harbor Capital controlled and directed the conduct of Ocean State, Blueprint Test Prep, LLC and Fyzical Holdings, including, but not limited to, Ocean State, Blueprint Test Prep and Fyzical Holdings' PPP loan applications and receipt of PPP loan funds. In the very least, New Harbor Capital was aware of Ocean State, Blueprint Test Prep and Fyzical Holdings' PPP loan applications and receipt of PPP loan funds. As a result, New Harbor Capital may be held liable for the submission of false claims by its portfolio companies. *See, e.g.*, *United States ex rel. Martino-Fleming v. S. Bay Mental Health Centers*, No. 15-CV-13065-PBS, 2021 WL 2003016 (D. Mass. May 19, 2021); *United States ex rel. Carmen Medrano v. Diabetic Care RX, LLC*, No. 15-CV-62617, 2018 WL 6978633 (S.D. Fla. Nov. 30, 2018).

**ANSWER:**

As the term "controlled and directed" is imprecise, Defendants are unable to form a belief as to the truth of the allegations in the first sentence of Paragraph 146, and on that basis deny those

allegations.  Paragraph 146 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 146.

147.    New Harbor Capital was more than merely a passive investor in Ocean State, Blueprint Test Prep and Fyzical Holdings.  New Harbor Capital provided management, oversight, and strategic guidance for the operations of these portfolio companies.

**ANSWER:**

As the terms "passive investor" and "management, oversight, and strategic guidance" are imprecise, Defendants are unable to form a belief as to the truth of the allegations in the first sentence of Paragraph 147, and on that basis deny those allegations.  Paragraph 147 contains Relator's characterization of his claims, legal argument, and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 147.

148.    As noted, as to Ocean State, at all relevant times New Harbor Capital was an 84% owner of Ocean State and its Operating Partner, John Roselli, was Ocean State's CEO and served as board member along with other New Harbor Capital partners.  New Harbor Capital, through Mr. Roselli and other partners, actively participated in, controlled and directed, the management and conduct of its portfolio company, Ocean State, including, but not limited to, Ocean State's PPP loan application and receipt and use of PPP loan funds.

**ANSWER:**

New Harbor and Ocean State admit that certain New Harbor entities have previously made investments in Ocean State.  New Harbor and Ocean State further admit that John Roselli is employed by New Harbor Capital Management, LP and has undertaken roles in the manner of an Operating Partner with respect to Ocean State.  To the extent the allegations in Paragraph 148 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them.  As the terms "participated in, controlled, and directed" are imprecise, Defendants are unable to form a belief as to the truth of

the allegations in Paragraph 148, and on that basis deny those allegations.  Defendants deny any remaining allegations in Paragraph 148.

149.    Likewise, upon information and belief, at all relevant times New Harbor Capital was a majority owner of Blueprint Test Prep and Fyzical Holdings and New Harbor Capital actively participated in, controlled and directed, the management and conduct of its other portfolio companies, Blueprint Test Prep and Fyzical Holdings.

**ANSWER:**

New Harbor, Blueprint, and Fyzical admit that certain New Harbor entities have previously made investments in Blueprint and Fyzical.  To the extent the allegations in Paragraph 149 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them.  As the terms "participated in, controlled, and directed" are imprecise, Defendants are unable to form a belief as to the truth of the allegations in Paragraph 149, and on that basis deny those allegations.  Defendants deny any remaining allegations in Paragraph 149.

150.    In this regard, as with Ocean State, at all relevant times New Harbor Capital was a majority owner of Blueprint Test Prep and Fyzical Holdings and one or more of its partners were officers and directors of Blueprint Test Prep and Fyzical Holdings.  New Harbor Capital, through one or more of its partners, actively participated in, controlled and directed, the management and conduct of its portfolio companies, Blueprint Test Prep and Fyzical Holdings, including, but not limited to, Blueprint Test Prep and Fyzical Holdings' PPP loan applications and receipt and use of PPP loan funds.

**ANSWER:**

New Harbor, Blueprint, and Fyzical admit that certain New Harbor entities have previously made investments in Blueprint and Fyzical.  To the extent the allegations in Paragraph 150 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them.  As the terms "participated in, controlled, and directed" are imprecise, Defendants are unable to form a belief as to the truth of the allegations in Paragraph 150, and on that basis deny those allegations.  Defendants deny any remaining allegations in Paragraph 150.

151.    Upon information and belief, New Harbor Capital controlled, directed and/or assisted Ocean State, Blueprint Test Prep and Fyzical Holdings with respect to their PPP applications, the information and certifications contained therein, and these portfolio companies' use of PPP funds.

**ANSWER:**

As the terms "controlled," "directed," and "assisted" are imprecise, Defendants are unable to form a belief as to the truth of the allegations in Paragraph 150, and on that basis deny those allegations.  Defendants deny any remaining allegations in Paragraph 150.

**C.    Defendants Knowingly Submitted and Caused to be Submitted False Claims for Payment to the SBA**

**1.    Ocean State, Blueprint Test Prep and Fyzical Holdings Falsely Certified the Necessity of Their PPP Loans, with New Harbor Capital's Knowledge, Direction, and Oversight**

152.    As noted, applicants for PPP funds must make several express certifications when applying for loans and loan forgiveness.  One of those express certifications is that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."

**ANSWER:**

To the extent the allegations in Paragraph 152 purport to characterize or describe an SBA Loan Application form or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 152 contains Relator's characterization of his claims and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 152.

153.    Because the SBA requires an express certification of necessity to determine eligibility, and thoroughly discussed the certification in guidance, a false certification of necessity is a materially false misrepresentation that would have affected SBA's decision to approve a PPP loan.

**ANSWER:**

Paragraph 153 contains Relator's characterization of his claims and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 153.

154.    The SBA notes that "all borrowers should carefully review the required certification on the Paycheck Protection Program Borrower Application Form (SBA Form 2483) stating that '[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.'"  *See* IFR #4 § 2(b).

**ANSWER:**

To the extent the allegations in Paragraph 154 purport to characterize or describe an SBA Interim Final Rule or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  To the extent Paragraph 154 contains Relator's characterization of his claims and/or legal conclusions, no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 154.

155.    SBA FAQ 31 explains that applicants making the PPP loan certification should "tak[e] into account their current business activity and their ability to access other sources of liquidity sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business."

**ANSWER:**

To the extent the allegations in Paragraph 155 purport to characterize or describe an SBA FAQ or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  To the extent Paragraph 155 contains Relator's characterization of his claims and/or legal conclusions, no response is required.  To the extent a response is required, Defendants deny such

characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 155.

156.    SBA FAQ 31 states the general principle that, in order to certify in good faith that the PPP loan is necessary, as required by the PPP loan application, a borrower must take into account other sources of liquidity (e.g., cash and cash equivalents, short-term funds, bank loans, liquidating assets, capital raises, etc.) that could be utilized instead of a PPP loan, and SBA FAQ Question 37 extends SBA FAQ Question 31 to all businesses owned by private companies with adequate sources of liquidity.  See SBA FAQ Question 37.

**ANSWER:**

To the extent the allegations in Paragraph 156 purport to characterize or describe an SBA FAQ or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  To the extent Paragraph 156 contains Relator's characterization of his claims and/or legal conclusions, no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 156.

157.    Despite the fact that the PPP was intended for small businesses, many apparently large businesses, such as companies backed by private equity firms, claimed PPP funds while making the necessity certification.  Ocean State, Blueprint Test Prep and Fyzical Holdings are each one of those companies.

**ANSWER:**

Defendants admit that Ocean State, Blueprint, and Fyzical applied for and received certain funds through the PPP loan program.  To the extent the allegations in Paragraph 157 relate to third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them.  Defendants deny any remaining allegations in Paragraph 157.

158.    In December 2014, New Harbor Capital Fund, LP completed final closing of a $146 million fund.  In May 2017, New Harbor Capital Fund II, LP closed a $265 million fund.  As described, on or around the date of Ocean State, Blueprint Test Prep and Fyzical Holdings' PPP loan applications, New Harbor Capital Fund LP had a gross asset value of approximately $260,099,243, New Harbor Capital Fund II LP had a gross asset value of approximately

$225,398,276, and their parent fund, New Harbor Capital Management, LP, had discretionary assets under management of $509,963,209.

**ANSWER:**

New Harbor admits that New Harbor entities have raised funds for several investment vehicles from 2014 to present. To the extent the allegations in Paragraph 158 address the financial position and structure of New Harbor entities, Ocean State, Blueprint, and Fyzical note that they are without knowledge regarding these distinct corporate entities, and on that basis deny the allegations in Paragraph 158. As the terms "final closing," "closed," and "gross asset value" imprecise, Defendants are unable to form a belief as to the truth of the allegations in Paragraph 158, and on that basis deny those allegations. Defendants deny any remaining allegations in Paragraph 158.

159.    Upon information and belief, in and around between March 13, 2020 and the end of the loan forgiveness covered period of the subject PPP loans, New Harbor Capital had substantial cash and cash equivalents and other assets on hand and available to its portfolio companies. Given the opaque, non-transparent nature of the private equity industry in general, and New Harbor Capital and its portfolio companies in particular, coupled with the self-certifying "honor-system" of the PPP loan process, specific information concerning New Harbor Capital and its portfolio companies' liquidity and contractual relationships with one another is peculiarly within their knowledge and control.

**ANSWER:**

As the terms "substantial cash and cash equivalents" imprecise, Defendants are unable to form a belief as to the truth of the allegations in Paragraph 159, and on that basis deny those allegations. To the extent Paragraph 159 contains Relator's characterization of his claims and/or legal conclusions, no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. To the extent the allegations in Paragraph 159 address the financial position of New Harbor entities, Ocean State, Blueprint, and Fyzical note that they are without knowledge regarding these distinct corporate entities, and on that basis deny the allegations in Paragraph 159. Defendants deny any remaining allegations in Paragraph 159.

160.    Nevertheless, as detailed herein, through Berkley's experience and knowledge of the private equity fund model and compensation structure, coupled with his investigation and analysis into New Harbor Capital and its portfolio companies, Berkley discovered that despite being well-capitalized with substantial cash and cash equivalents and other liquidity sources on hand and available, rather than inject its own money, extend funding, sell off assets or tap other available sources of liquidity in order to assist its portfolio companies—Ocean State, Blueprint Test Prep and Fyzical Holdings—New Harbor Capital and its portfolio companies chose instead to wrongfully take millions in PPP money that was intended to provide relief to small businesses affected by the pandemic and for which neither New Harbor Capital nor its portfolio companies were eligible.  At the same time, New Harbor Capital paid its employees and owners substantial compensation.  New Harbor Capital could have and should have supported its portfolio companies in a crisis.  Instead of doing so, New Harbor Capital and its portfolio companies went with willing hands to take money from public support that could have gone to firms with less access to credit and greater need.  New Harbor Capital and its portfolio companies manipulated the COVID-19 pandemic for profit.

**ANSWER:**

To the extent the allegations in Paragraph 160 purport to describe Relator and/or third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny these allegations.  Defendants deny any remaining allegations in Paragraph 160.

161.    Highlighting this point, on November 22, 2019, Fortuna Three Realty, LLC ("Fortuna"), which is a single member limited liability company owned by Berkley (or, technically, his wife), purchased a commercial real estate office building in Providence, Rhode Island, where Ocean State was a tenant under two separate leases for the first and second floors of the building.  Following its purchase of the building, Fortuna became Ocean State's landlord under these two preexisting leases that Ocean State had with the prior owner/landlord.

**ANSWER:**

Ocean State admits that it had certain lease agreements with Fortuna Three Realty, LLC. To the extent the allegations in Paragraph 161 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them.  As the reference to "a commerce real estate office building in Providence" is imprecise, Defendants are unable to form a belief as to the truth of the allegations in Paragraph 161, and on that basis deny those allegations.  To the extent the allegations in Paragraph 161 purport to describe Relator and/or third parties, Defendants are without information

sufficient to form a belief as to the truth of these allegations and therefore deny these allegations.

Defendants deny any remaining allegations in Paragraph 161.

162.    Beginning in March 2020, Ocean State stopped making rent payments to Fortuna under its lease for the second floor (which it had abandoned in January 2019), claiming among other things that it was unable to pay rent due to the COVID-19 pandemic.  On March 17, 2020, John Roselli—New Harbor Capital's operating partner and Ocean State's CEO—sent an email from his New Harbor Capital email address but with a signature block indicating his role as Ocean State's CEO.  In that email, Mr. Roselli failed to distinguish among New Harbor Capital and Ocean State and he spoke on behalf of them collectively.  In his email, Mr. Roselli used the collective pronouns "we" and "our" to discuss the operations and rent payments of New Harbor Capital's portfolio company, Ocean State, and when referencing a cash infusion being sought by New Harbor Capital.

**ANSWER:**

As the reference to "a commerce real estate office building in Providence" in Paragraph 161 is imprecise, Defendants are unable to form a belief as to the truth of the allegations in the first sentence in Paragraph 162, and on that basis deny those allegations.  To the extent the allegations in Paragraph 162 purport to describe Relator and/or third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny these allegations.  To the extent the allegations in Paragraph 156 purport to characterize or describe an email exchange involving John Roselli, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Defendants deny any remaining allegations in Paragraph 162.

163.    After Ocean State stopped making payments, Berkley communicated on several occasions with Mr. Roselli to inquire when Ocean State would resume payments.  Specifically, Berkley asked Mr. Roselli why Ocean State did not just use money available at the sponsor level: i.e., why didn't Ocean State obtain funding from its owner New Harbor Capital to cover the payments given the fact that New Harbor Capital was a well-capitalized private equity fund that could easily serve as an available source of liquidity for Ocean State.  Mr. Roselli did not indicate that New Harbor Capital did not have the liquidity available to support Ocean State.  Instead, his response was simply "that's not how it works."  Mr. Roselli's statement shows, or at least supports the strong inference, that New Harbor Capital had adequate liquidity available to support Ocean State and its other portfolio companies' ongoing operations, but New Harbor Capital and the portfolio companies under its direction and control chose instead to take over $3 million in PPP loans rather than tap New Harbor Capital's available liquidity.

**ANSWER:**

To the extent the allegations in Paragraph 163 purport to describe Relator and/or third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny these allegations.  To the extent the allegations in Paragraph 163 purport to characterize or describe communications between Relator and John Roselli or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Defendants deny any remaining allegations in Paragraph 163.

164.    Berkley also learned from his communications with Mr. Roselli that New Harbor mismanaged its investment and decided to default on a loan with its bank to try and negotiate better loan terms before throwing any more money into Ocean State.  In short, based on Mr. Roselli's disclosures to Berkely, rather than use New Harbor Capital's cash for what it viewed as throwing good money after bad, Ocean State (or, more specifically New Harbor Capital) pointed to COVID-19 as a pretext to avoid Ocean State's payment obligations and chose to take over $3 million in PPP money, even though Ocean State was admittedly able to pay its debts as they became due in the ordinary and usual course of business, was owned by a well-capitalized private equity fund that was an available source of liquidity, and was fully able to fulfill its payment obligations to Fortuna but simply chose not to do so.

**ANSWER:**

To the extent the allegations in Paragraph 164 purport to describe Relator and/or third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny these allegations.  To the extent the allegations in Paragraph 164 purport to characterize or describe communications between Relator and John Roselli, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Defendants deny any remaining allegations in Paragraph 164.

165.    Berkley also interviewed numerous Ocean State landlord/employees at other Ocean State locations (i.e., doctors that had previously sold their practices to New Harbor Capital but still owned the buildings and now worked for Ocean State).  Through these interviews, Berkely discovered that Ocean State—under the control and direction of New Harbor Capital—had also stopped paying rent to these landlords and was shaking them down for major rent concessions

based on the pretext of the COVID-19 pandemic and despite taking PPP money and despite being owned by a well-capitalized private equity fund that was an available source of liquidity.

**ANSWER:**

To the extent the allegations in Paragraph 165 purport to describe Relator and/or third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny these allegations. Defendants deny any remaining allegations in Paragraph 165.

166.    Berkley also interviewed a recently laid off Ocean State employee who corroborated that Ocean State was not paying rent and laying off employees despite taking PPP money and despite being owned by a well-capitalized private equity fund that was an available source of liquidity.

**ANSWER:**

To the extent the allegations in Paragraph 166 purport to describe Relator and/or third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny these allegations. Defendants deny any remaining allegations in Paragraph 166.

167.    As noted herein, New Harbor Capital had $509,963,209 in assets under management as of March 2020 in or around the date of Ocean State, Blueprint Test Prep and Fyzical Holdings' PPP loan applications. (See ¶¶ 110, 158 supra.) New Harbor Capital's profitability flourished during the pandemic. As of March 2022, New Harbor Capital's assets under management had ballooned to $840,383,271.

**ANSWER:**

As the terms "discretionary assets under management" and "gross asset value" as used in Paragraph 110 and referenced in Paragraph 167, and the term "assets under management" used in Paragraph 167 are imprecise, Defendants are unable to form a belief as to the truth of the allegations of Paragraph 167, and on that basis deny those allegations. To the extent the allegations in Paragraph 167 address the financial position of New Harbor entities, Ocean State, Blueprint, and Fyzical note that they are without knowledge regarding these distinct corporate entities, and

on that basis deny the allegations in Paragraph 167.  Defendants deny any remaining allegations in Paragraph 167.

168.    Based on Berkley's experience and investigation, and upon information and belief, New Harbor Capital adheres to the industry standard 2 and 20 form of private equity fund compensation structure.  Under this pay structure, 2% represents the annual management fee which is applied to the total assets under management and is paid to the private equity fund manager regardless of how well the investment is performing.  A 20% carried interest fee (or, performance fee) is charged on the profits that the private equity fund generates above a certain predefined benchmark and is payable when an investment (i.e., a portfolio company) is sold.  The annual 2% flat rate charged on total assets under management is used to pay staff salaries, administrative and office expenses, and other operational expenses.  The 20% carried interest fee is used to reward the private equity fund's key executives and portfolio managers.  This bonus structure is what makes private equity fund managers some of the highest paid financial professionals.  And this does not even include other fees that New Harbor Capital presumably collects from its portfolio companies.  These can include consulting fees, advisory fees, monitoring fees, servicing fees, transaction fees, director's fees, and others.  These fees too can be quite significant.

**ANSWER:**

Defendants deny that New Harbor entities apply a uniform "2 and 20" structure as described in Paragraph 168, and state that New Harbor entities apply a variety of fee structures to their investment funds.  To the extent the allegations in Paragraph 168 address the financial situation and fee structure of New Harbor entities, Ocean State, Blueprint, and Fyzical note that they are without knowledge regarding these distinct corporate entities, and on that basis deny the allegations in Paragraph 168.  Defendants deny any remaining allegations in Paragraph 168.

169.    Accounting only for the annual 2% management fee based on New Harbor Capital's $509,963,209 assets under management as of March 2020, there was over $10 million in management fees going to New Harbor Capital each year.  And again, that doesn't even take into account the carried interest fees or other fees New Harbor Capital received during that time.

**ANSWER:**

Defendants state that New Harbor entities apply a variety of fee structures to their investment funds.  To the extent the allegations in Paragraph 169 address the financial situation and fee structure of New Harbor entities, Ocean State, Blueprint, and Fyzical note that they are without knowledge regarding these distinct corporate entities, and on that basis deny the allegations in Paragraph 169.  Defendants deny any remaining allegations in Paragraph 169.

170.    Again, though, New Harbor Capital prospered during the pandemic.  Against the $840,383,271 assets under management as of March 2022, there was almost $17 million in management fees going to New Harbor Capital per year.

**ANSWER:**

Defendants state that New Harbor entities apply a variety of fee structures to their

investment funds.  To the extent the allegations in Paragraph 170 address the financial situation

and fee structure of New Harbor entities, Ocean State, Blueprint, and Fyzical note that they are

without knowledge regarding these distinct corporate entities, and on that basis deny the

allegations in Paragraph 170.  Defendants deny any remaining allegations in Paragraph 170.

171.    This compensation structure leads to New Harbor Capital reaping huge sums of money.  The management fees alone—which are only supposed to cover a fund's running costs— are sufficient to make New Harbor Capital's owners and employees very rich.  Upon information and belief, during the loan forgiveness period of the subject PPP loans, New Harbor Capital's employees and/or owners were compensated in an average amount of approximately $477,222 and ranging from a low of approximately $416,708 to a high of approximately $548,942.  And again, this does not even include the 20% carried interest fee paid to New Harbor Capital when an investment is sold.

**ANSWER:**

Defendants state that New Harbor entities apply a variety of fee structures to their

investment funds.  To the extent the allegations in Paragraph 171 address the financial situation

and fee structure of New Harbor entities, Ocean State, Blueprint, and Fyzical note that they are

without knowledge regarding these distinct corporate entities, and on that basis deny the

allegations in Paragraph 171.  Defendants deny any remaining allegations in Paragraph 171.

172.    This seemingly innocuous information shows, or at least supports the strong inference, that New Harbor Capital and its portfolio companies—Ocean State, Blueprint Test Prep and Fyzical Holdings—applied for and received taxpayer-backed PPP loan funds of over $7.5 million despite having access to millions (if not billions) in cash that could have been used to support these portfolio companies and despite paying its owners and employees exorbitant sums of money.  These portfolio companies plainly could have survived the pandemic without taxpayer funds.  They knew they didn't need the PPP money but they took it anyway.

**ANSWER:**

Paragraph 172 contains Relator's characterization of his claims and/or legal conclusions,

to which no response is required.  To the extent a response is required, Defendants deny such

characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 172.

173.    What's more, after taking over $3 million in PPP money, New Harbor Capital exited its investment in Ocean State in March 2021 when it sold off Ocean State to Village MD, a national primary healthcare provider.  In typical private equity playbook fashion, at the time Ocean State was acquired in October 2017, New Harbor Capital planned to increase Ocean State's value and sell it for a profit a few years later.  To do this, as Mr. Roselli and the other Ocean State doctors and workers confirmed, New Harbor Capital loaded up Ocean State with debt and management fees.  Then, to make Ocean State more attractive to other buyers, New Harbor Capital slashed costs, including by laying off employees and renegotiating leases at significant discounts when COVID-19 appeared, and paying off debt financing.  Rather than using the PPP money (much less its own money) to support Ocean State's ongoing operations and keep Ocean State's doors open, New Harbor Capital instead chose to sell off its investment in Ocean State months after taking over $ 3 million in PPP money.

**ANSWER:**

New Harbor and Ocean State admit that certain New Harbor entities have previously made investments in Ocean State and have since sold certain of those investments to third parties.  To the extent the allegations in Paragraph 173 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them.  Defendants deny any remaining allegations in Paragraph 173.

174.    Again, this sale shows, or at least supports the strong inference, that Ocean State did not need access to the PPP emergency relief program, which was intended for struggling small businesses.  Rather than use its own money, the PPP funds functioned as an easy taxpayer grant that New Harbor Capital used to pay down debt, position Ocean State for sale, and then enrich its investors and executives via the 20% carried interest payment upon Ocean State's sale.  New Harbor Capital's focus on profit—including its plans to sell Ocean State in the near term—propelled it to cause its portfolio companies to submit the unlawful PPP loan applications at issue.

**ANSWER:**

Paragraph 174 contains Relator's characterization of his claims and/or legal conclusions, no response is required.   To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 174.

175.    Ocean State was not the only portfolio company that New Harbor Capital cashed Ocean State was not the only portfolio company that New Harbor Capital cashed Psychiatry

Management, New York Kids Club, Certica Solutions and Wedgewood Pharmacy. These sales too show, or at least support the strong inference, that Ocean State, Blueprint Test Prep and Fyzical Holdings did not need to take PPP money because New Harbor Capital had more than sufficient liquidity to support them.

**ANSWER:**

New Harbor admits that certain New Harbor entities have previously made investments in various companies, including Psychiatry Management, New York Kids Club, Certica Solutions and Wedgewood Pharmacy. To the extent the allegations in Paragraph 175 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them. Paragraph 175 contains Relator's characterization of his claims and/or legal conclusions, no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 175.

176.    At all relevant times, New Harbor Capital and its portfolio companies—Ocean State, Blueprint Test Prep and Fyzical Holdings—had knowledge of the various federal laws, regulations, and guidance related to the PPP loan application, certifications, eligibility and use requirements.

**ANSWER:**

Defendants state that each Defendant submitting a PPP loan application reasonably believed that they acted in compliance with existing federal laws, regulations, and relevant authoritative guidance in connection with the submission of any PPP loan application or otherwise adopted an interpretation of ambiguous laws, regulations, and relevant authoritative guidance that was objectively reasonable. As the term "the various laws, regulations and guided related to the PPP loan" program is imprecise, Defendants are unable to form a belief as to the truth of the allegations of Paragraph 176, and on that basis deny those allegations. Defendants deny any remaining allegations in Paragraph 176.

177.    As alleged herein, New Harbor Capital and its portfolio companies—Ocean State, Blueprint Test Prep and Fyzical Holdings—conspired to defraud the public fisc by knowingly applying for and receiving PPP loan funds for which they were not eligible or entitled to receive.

Berkley was able to discern this fraud through his investigation and experience and his synthesis and analysis of otherwise facially valid and innocuous garden-variety information concerning these Defendants and the subject PPP loans.   As alleged herein, through its ownership, management, and exercise of control over its portfolio companies, New Harbor Capital initiated and directed Ocean State, Blueprint Test Prep and Fyzical Holdings' decision to submit PPP loan applications and receipt and use of PPP loan funds knowing that these portfolio companies were not eligible or entitled to receive the PPP loan funds.  Indeed, New Harbor Capital has claimed that in responding to COVID-19 it worked side-by-side with the leaders and management of its portfolio companies.

**ANSWER:**

To the extent the allegations in Paragraph 177 purport to characterize or describe statements made on behalf of New Harbor entities, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Defendants deny any remaining allegations in Paragraph 177.

178.    Through his experience and efforts, Berkley discovered that Ocean State falsely certified in its application that a PPP loan was "necessary" and that it could not "access other sources of liquidity sufficient to support its ongoing operations," which was intended to preclude affiliates of large companies such as Ocean State from receiving support, according to the Treasury Department.  See SBA FAQ Question 31, 37.

**ANSWER:**

To the extent the allegations in Paragraph 178 purport to describe Relator and/or third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny these allegations.  Defendants deny any remaining allegations in Paragraph 178.

179.    Likewise, through his experience and efforts, Berkley discovered that New Harbor Capital's other portfolio companies—Blueprint Test Prep and Fyzical Holdings—also falsely certified in their applications that a PPP loan was "necessary" and that they could not "access other sources of liquidity sufficient to support [their] ongoing operations."

**ANSWER:**

To the extent the allegations in Paragraph 179 purport to describe Relator and/or third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny these allegations.  Defendants deny any remaining allegations in Paragraph 179.

180.    As described, on the date of Ocean State's PPP loan application, 84% of Ocean State's equity (or membership interests) was owned by New Harbor Capital Management LP's private equity fund, New Harbor Capital Fund LP.

**ANSWER:**

Ocean State and New Harbor admit that certain New Harbor entities have previously made investments in Ocean State.  To the extent the allegations in Paragraph 180 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them.  Defendants deny any remaining allegations in Paragraph 180.

181.    Likewise, as described, on the date of Blueprint Test Prep and Fyzical Holdings' PPP loan applications, a majority of Blueprint Test Prep and Fyzical's equity (or membership interests) was owned by New Harbor Capital Management LP's private equity fund, New Harbor Capital Fund LP and/or New Harbor Capital Fund II LP and/or another New Harbor Capital fund.

**ANSWER:**

New Harbor, Blueprint, and Fyzical admit that certain New Harbor entities have previously made investments in Blueprint and Fyzical.  To the extent the allegations in Paragraph 181 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them.  Defendants deny any remaining allegations in Paragraph 181.

182.    To wit, taking into account New Harbor Capital's liquidity, significant financial resources and 84% ownership of Ocean State, Ocean State knowingly misrepresented that its PPP loan request was "necessary" to support its ongoing operations insofar as Ocean State had alternate sources of liquidity available and was able to access those sources without significantly damaging its business.

**ANSWER:**

Paragraph 182 contains Relator's characterization of his claims and/or legal conclusions, no response is required.   To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 182.

183.    Likewise, taking into account New Harbor Capital's liquidity, significant financial resources and controlling ownership of Blueprint Test Prep and Fyzical Holdings, Blueprint Test Prep and Fyzical Holdings each also knowingly misrepresented that its PPP loan request was "necessary" to support its ongoing operations insofar as Blueprint Test Prep and Fyzical had alternate sources of liquidity available and were able to access those sources without significantly damaging its business.

**ANSWER:**

Paragraph 183 contains Relator's characterization of his claims and/or legal conclusions, no response is required.   To the extent a response is required, Defendants deny such characterizations and/or conclusions.   Defendants deny any remaining allegations in Paragraph 183.

184.    Ocean State, Blueprint Test Prep, and Fyzical Holdings' false certifications of necessity were material because the certification affected their eligibility for the PPP loan and the SBA's decision to approve and guarantee the loans and the SBA would not have done so but for these false certifications.

**ANSWER:**

Paragraph 184 contains Relator's characterization of his claims and/or legal conclusions, no response is required.   To the extent a response is required, Defendants deny such characterizations and/or conclusions.   Defendants deny any remaining allegations in Paragraph 184.

185.    As alleged, New Harbor Capital directed and oversaw Ocean State, Blueprint Test Prep, and Fyzical Holdings' PPP loan applications and the information and certifications contained therein.   In the least, New Harbor Capital had knowledge of Ocean State, Blueprint Test Prep, and Fyzical Holdings' PPP loan applications and the information and certifications contained therein. As a result, New Harbor Capital may be held liable for the submission of false claims by its portfolio companies.  (*See* ¶ 146 supra.)

**ANSWER:**

Paragraph 185 contains Relator's characterization of his claims and/or legal conclusions, no response is required.   To the extent a response is required, Defendants deny such characterizations and/or conclusions.   Defendants deny any remaining allegations in Paragraph 185.

186.    All Defendants—inclusive of New Harbor Capital, Ocean State, Blueprint Test Prep and Fyzical Holdings—knew that compliance with the certification of "necessity" was a condition of eligibility for the PPP loans and the SBA's decision to approve the loans and material requirement for SBA's guarantee and payment of the PPP loans.

**ANSWER:**

Defendants state that each Defendant submitting a PPP loan application reasonably believed that they acted in compliance with existing federal laws, regulations, and relevant authoritative guidance in connection with the submission of any PPP loan application or otherwise adopted an interpretation of ambiguous laws, regulations, and relevant authoritative guidance that was objectively reasonable.  Paragraph 186 contains Relator's characterization of his claims and/or legal conclusions, no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.   Defendants deny any remaining allegations in Paragraph 186.

### 2.    Ocean State, Blueprint Test Prep and Fyzical Holdings Falsely Certified Compliance with the PPP Size and Affiliation Rules, with New Harbor Capital's Knowledge, Direction, and Oversight

187.    The CARES Act expressly limits PPP loans to businesses with less than 500 employees, or otherwise qualifying as a small business concern under other SBA standards, with certain limited exceptions.

**ANSWER:**

To the extent the allegations in Paragraph 187 purport to characterize or describe the CARES Act or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 187 contains Relator's characterization of his claims and/or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 187.

188.    The "alternative size standard" for PPP loans also allows businesses to qualify if, as of March 27, 2020, the maximum tangible net worth of the business is not more than

$15 million, and their average net income after federal income taxes for the two full fiscal years before the date of the application was not more than $5 million.

**ANSWER:**

Paragraph 188 contains Relator's characterization of his claims and/or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 188.

189.    Businesses must include the employees of affiliate businesses in its size determinations, according to the SBA's affiliation rules.  See 13 C.F.R. § 121.301(f)(1); Affiliation Guidance.

**ANSWER:**

To the extent the allegations in Paragraph 189 purport to characterize or describe 13 C.F.R. § 121.301 or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources.  Paragraph 189 contains Relator's characterization of his claims and/or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 189.

190.    New Harbor Capital is an affiliate of Ocean State because *inter alia* it owns and has the power to control more than 50% of Ocean State's voting equity.

**ANSWER:**

Paragraph 190 contains Relator's characterization of his claims, legal argument, and/or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 190.

191.    Likewise, upon information and belief, New Harbor Capital is an affiliate of Blueprint Test Prep and Fyzical Holdings because inter alia it owns and has the power to control more than 50% of Blueprint Test Prep and Fyzical Holdings' voting equity.

**ANSWER:**

Paragraph 191 contains Relator's characterization of his claims and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 191.

192.    Because New Harbor Capital is an affiliate of Ocean State, both New Harbor Capital along with all other affiliates of New Harbor Capital (e.g., all other portfolio companies that are majority owned and/or controlled by New Harbor Capital) are deemed affiliates of Ocean State. The same is true for Blueprint Test Prep and Fyzical Holdings.

**ANSWER:**

Paragraph 192 contains Relator's characterization of his claims and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 192.

193.    Upon information and belief, New Harbor Capital is the majority owner of and controls or has the power to control its other portfolio companies, including: Fix-It 24/7; Quigley Eye Specialists; Blueprint Test Prep; Fyzical Holdings, Fyzical Therapy & Balance Centers; LGM Pharma; Wedgewood Pharmacy; Certica Solutions; and New York Kids Club.

**ANSWER:**

As the term "control or has the power to control" is imprecise, Defendants are unable to form a belief as to the truth of the allegations of Paragraph 193, and on that basis deny those allegations. Defendants deny any remaining allegations in Paragraph 193.

194.    Accordingly, New Harbor Capital is an affiliate of each of these other portfolio companies and, in turn, the portfolio companies are affiliates of Ocean State, Blueprint Test Prep and Fyzical Holdings for purposes of PPP size and net-worth tests. See 13 C.F.R. § 121.301(f); Affiliation Guidance.

**ANSWER:**

Paragraph 194 contains Relator's characterization of his claims and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such

characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph

194.

195.    As a result of this extended affiliation, it was impossible for Ocean State to meet he size standards for PPP eligibility and Ocean State and New Harbor Capital knew or should have known that Ocean State did not meet these standards and was thus ineligible for a PPP loan.

**ANSWER:**

Paragraph 195 contains Relator's characterization of his claims and/or legal conclusions to

which no response is required.  To the extent a response is required, Defendants deny such

characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph

195.

196.    Likewise, as a result of this extended affiliation, it was also impossible for Blueprint Test Prep and Fyzical Holdings to meet the size standards for PPP eligibility and New Harbor Capital, Blueprint Test Prep and Fyzical Holdings knew or should have known that Blueprint Test Prep and Fyzical Holdings did not meet these standards and were thus ineligible for a PPP loan.

**ANSWER:**

Paragraph 196 contains Relator's characterization of his claims and/or legal conclusions to

which no response is required.  To the extent a response is required, Defendants deny such

characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph

196.

197.    Upon information and belief, the CARES Act's limited waiver of the affiliation rules does not apply to Ocean State, Blueprint Test Prep or Fyzical Holdings because during the covered period they: (i) were not a business within NAICS category 72; (ii) were not a business operating as a franchise with a franchise identifier code assigned by SBA; and (iii) did not receive financial assistance from a SBIC.  See 15 USCS § 636(a)(36)(D)(iv); see also SBA FAQ Question 23 (published April 13, 2020) ("If a franchise brand is listed on the SBA Franchise Directory, each of its franchisees that meets the applicable size standard can apply for a PPP loan.  (The franchisor does not apply on behalf of its franchisees.)") (Emphasis added).  Thus, the affiliation rules apply to Ocean State, Blueprint Test Prep and Fyzical Holdings.

**ANSWER:**

Paragraph 197 contains Relator's characterization of his claims and/or legal conclusions to

which no response is required.  To the extent a response is required, Defendants deny such

characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 197.

198. First, together with its affiliates, Ocean State, Blueprint Test Prep and Fyzical Holdings each had more than 500 employees at the time it filed its PPP application. See 15 USCS § 636(a)(36)(D)(i)(I); SBA FAQ Question 44.

**ANSWER:**

Paragraph 198 contains Relator's characterization of his claims and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 198.

199. Ocean State reported 277 employees in its PPP application.

**ANSWER:**

To the extent the allegations in Paragraph 199 purport to characterize or describe loan application materials submitted by Ocean State or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. Defendants deny any remaining allegations in Paragraph 199.

200. Upon information and belief, New Harbor Capital had approximately 19 employees at the time of Ocean State's PPP application.

**ANSWER:**

Based upon a reasonable investigation at this time, Defendants are unable to form a precise belief as the allegations in Paragraph 200, and therefore denies the allegations in Paragraph 200 on that basis.

201. Blueprint Test Prep reported 160 employees in its PPP application and, upon information and belief, has annual revenue of roughly $30 million.

**ANSWER:**

To the extent the allegations in Paragraph 201 purport to characterize or describe loan application materials submitted by Ocean State or other sources, Defendants state that such sources

speak for themselves and specifically deny any characterization or description that is inconsistent

with the referenced sources. Defendants deny any remaining allegations in Paragraph 201.

202.    Upon information and belief, Quigley Eye Specialists had approximately 70 employees at the time of Ocean State's PPP application.

**ANSWER:**

To the extent the allegations in Paragraph 202 relate to third parties, Defendants are without

information sufficient to form a belief as to the truth of these allegations and therefore deny them.

Defendants deny any remaining allegations in Paragraph 202.

203.    Upon information and belief, LGM Pharma had approximately 191 employees and an estimated annual revenue of $38 million at the time of Ocean State's PPP application.

**ANSWER:**

To the extent the allegations in Paragraph 203 relate to third parties, Defendants are without

information sufficient to form a belief as to the truth of these allegations and therefore deny them.

Defendants deny any remaining allegations in Paragraph 203.

204.    Upon information and belief, Wedgewood Pharmacy had approximately 650 employees and an estimated annual revenue of $43 million at the time of Ocean State's PPP application.

**ANSWER:**

To the extent the allegations in Paragraph 204 relate to third parties, Defendants are without

information sufficient to form a belief as to the truth of these allegations and therefore deny them.

Defendants deny any remaining allegations in Paragraph 204.

205.    Upon information and belief, Certica Solutions had approximately 130 employees and an estimated annual revenue of $27 million at the time of Ocean State's PPP application.

**ANSWER:**

To the extent the allegations in Paragraph 205 relate to third parties, Defendants are without

information sufficient to form a belief as to the truth of these allegations and therefore deny them.

Defendants deny any remaining allegations in Paragraph 205.

206.    Upon information and belief, New York Kids Club had approximately 452 employees and an estimated annual revenue of $86 million at the time of Ocean State's PPP application.

**ANSWER:**

To the extent the allegations in Paragraph 206 relate to third parties, Defendants are without

information sufficient to form a belief as to the truth of these allegations and therefore deny them.

Defendants deny any remaining allegations in Paragraph 206.

207.    Accordingly, together with its affiliates, each of Ocean State, Blueprint Test Prep and Fyzical Holdings had approximately 1,968 employees and an estimated annual revenue of over $232 million at the time it filed its PPP application (not including Fyzical Holdings).

**ANSWER:**

Paragraph 207 contains Relator's characterization of his claims and/or legal conclusions to

which no response is required.  To the extent a response is required, Defendants deny such

characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph

207.

208.    Second, each of Ocean State, Blueprint Test Prep and Fyzical Holdings, together with its affiliates, did not meet the SBA employee-based size standard for the NAICS code applicable to its primary industry (found in 13 C.F.R. § 121.201).    See 15 USCS § 636(a)(36)(D)(i)(II); SBA FAQ Question 3.

**ANSWER:**

Paragraph 208 contains Relator's characterization of his claims and/or legal conclusions to

which no response is required.  To the extent a response is required, Defendants deny such

characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph

208.

209.    Ocean State's NAICS code is 621999 ("All Other Miscellaneous Ambulatory Health Care Services") and there is no applicable employee-based size standard for NAICS code 621999.  Accordingly, Ocean State could not rely on this size-standard test.

**ANSWER:**

Paragraph 209 contains Relator's characterization of his claims and/or legal conclusions to

which no response is required.  To the extent a response is required, Defendants deny such

characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 209.

210.    Nor could Blueprint Test Prep or Fyzical Holdings rely on this size-standard test Blueprint Test Prep's NAICS code is 611691 ("Exam Preparation and Tutoring") and there is no applicable employee-based size standard for NAICS code 611691. Fyzical Holdings' NAICS code is 541990 ("All Other Professional, Scientific, and Technical Services") and there is no applicable employee-based size standard for NAICS code 541990.

**ANSWER:**

Paragraph 210 contains Relator's characterization of his claims and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 210.

211.    Third, neither Ocean State, Blueprint Test Prep, nor Fyzical Holdings' primary industry is not in NAICS category 72 (accommodations and food service). See 15 USCS § 636(a)(36)(D)(iii). Accordingly, Ocean State, Blueprint Test Prep and Fyzical Holdings could not rely on this size-standard test.

**ANSWER:**

Paragraph 211 contains Relator's characterization of his claims and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 211.

212.    Fourth, neither Ocean State, Blueprint Test Prep nor Fyzical Holdings, on its own, does not meet the size standard (employee-based or receipts/revenue-based) established by SBA for the NAICS code applicable to its primary industry (621999, 611691, 541990), and together with its affiliates, it does not meet the size standard (employee-based or receipts/revenue-based) established by SBA for the NAICS code applicable to the higher of its primary industry or the primary industry of itself and its affiliates on a combined basis. See 13 C.F.R. § 121.301(a); SBA FAQ Question 2.

**ANSWER:**

Paragraph 212 contains Relator's characterization of his claims and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such

characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph

212.

213.    Fifth, each Ocean State, Blueprint Test Prep and Fyzical Holdings had, together with its affiliates, $15 million or more of tangible net worth as of March 27, 2020, and $5 million or more of average net income after Federal income taxes (excluding carry-over losses) for the last two full fiscal years before the date of application.  See 15 USCS § 632(a)(5)(B); SBA FAQ Question 2.

**ANSWER:**

As the term "tangible net worth" is imprecise, Defendants are unable to form a belief as to

the truth of the allegations in Paragraph 213, and on that basis deny those allegations.  Paragraph

213 contains Relator's characterization of his claims and/or legal conclusions to which no response

is required.  To the extent a response is required, Defendants deny such characterizations and/or

conclusions.  Defendants deny any remaining allegations in Paragraph 213.

214.    Based on the foregoing, Ocean State knowingly miscalculated and misrepresented its employee-count and net worth, its compliance with the PPP size and affiliation rules, and its eligibility for a PPP loan.

**ANSWER:**

Defendants deny the allegations in Paragraph 214.

215.    Ocean State's false certification of employee-count and/or net worth was material because the certification affected Ocean State's eligibility for the PPP loan and the SBA's decision to approve the loan and the SBA would not have done so but for Ocean State's false certification.

**ANSWER:**

Paragraph 215 contains Relator's characterization of his claims and/or legal conclusions to

which no response is required.  To the extent a response is required, Defendants deny such

characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph

215.

216.    Additionally, based on the foregoing, New Harbor Capital's other portfolio companies—Blueprint Test Prep and Fyzical Holdings—also knowingly miscalculated and misrepresented their employee-count and net worth, their compliance with the PPP size and affiliation rules, and their eligibility for a PPP loan.

**ANSWER:**

Defendants deny the allegations in Paragraph 216.

217.    Blueprint Test Prep and Fyzical Holdings' false certifications of employee-count and/or net worth were material because the certification affected their eligibility for the PPP loan and the SBA's decision to approve the loans and the SBA would not have done so but for these false certifications.

**ANSWER:**

Paragraph 217 contains Relator's characterization of his claims and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 217.

218.    As alleged, New Harbor Capital directed and oversaw Ocean State, Blueprint Test Prep, and Fyzical Holdings' PPP loan applications and the information and certifications contained therein. In the least, New Harbor Capital had knowledge of Ocean State, Blueprint Test Prep, and Fyzical Holdings' PPP loan applications and the information and certifications contained therein. As a result, New Harbor Capital may be held liable for the submission of false claims by its portfolio companies. (*See* ¶ 146 supra.)

**ANSWER:**

Paragraph 218 contains Relator's characterization of his claims and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 218.

219.    All Defendants—inclusive of New Harbor Capital, Ocean State, Blueprint Test Prep and Fyzical Holings—knew that compliance with the certification of the PPP size and affiliation rules was a condition of eligibility for the PPP loans and the SBA's decision to approve the loans and material requirement for SBA's approval, guarantee and payment of the PPP loans.

**ANSWER:**

Defendants state that each Defendant submitting a PPP loan application reasonably believed that they acted in compliance with existing federal laws, regulations, and relevant authoritative guidance in connection with the submission of any PPP loan application or otherwise

adopted an interpretation of ambiguous laws, regulations, and relevant authoritative guidance that

was objectively reasonable.  Defendants deny any remaining allegations in Paragraph 219.

### D.    Ocean State, Blueprint Test Prep and Fyzical Holdings Failed to Repay PPP Loan Funds for Which They Were Not Entitled, with New Harbor Capital's Knowledge, Direction, and Oversight

220.    As described above, Ocean State, Blueprint Test Prep and Fyzical Holdings each falsely certified in its application that a PPP loan was "necessary" to support its ongoing operations.

**ANSWER:**

Paragraph 220 contains Relator's characterization of his claims and/or legal conclusions to

which no response is required.  To the extent a response is required, Defendants deny such

characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph

220.

221.    Ocean State, Blueprint Test Prep and Fyzical Holdings also each falsely certified in its application compliance with the PPP size and affiliation rules.

**ANSWER:**

Paragraph 221 contains Relator's characterization of his claims and/or legal conclusions to

which no response is required.  To the extent a response is required, Defendants deny such

characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph

221.

222.    Additionally, as described herein, New Harbor Capital had direct involvement in and knowledge of the PPP applications submitted by Ocean State, Blueprint Test Prep and Fyzical Holdings and the information and certifications contained therein.

**ANSWER:**

As the term "direct involvement" is imprecise, Defendants are unable to form a belief as

to the truth of the allegations in Paragraph 222, and on that basis deny those allegations.

Defendants deny any remaining allegations in Paragraph 222.

223.    As described above, for applicants that applied for and received a PPP loan but then believed, based on subsequent SBA guidance, that they could not certify in good faith that current

economic uncertainty makes their PPP loan necessary to support ongoing operations, the SBA provided a safe harbor that permitted borrowers to repay PPP loans in full by May 18, 2020.

**ANSWER:**

Paragraph 223 contains Relator's characterization of his claims and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 223.

224. Borrowers that repaid their PPP loans in full by May 18, 2020, will be deemed to have made the required certification of need in good faith. See IFR #4 § 5 as modified by IFR #9 and IFR #13 § 1; SBA FAQ Question 31, as modified by SBA FAQ Question 43 and SBA FAQ Question 47.

**ANSWER:**

Paragraph 224 contains Relator's characterization of his claims and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 224.

225. In addition, the SBA has stated that: "Any borrower that, together with its affiliates, received PPP loans with an original principal amount of less than $2 million will be deemed to have made the required certification concerning the necessity of the loan request in good faith." Affiliation for this purpose is determined based on the rules that apply for determining eligibility for a PPP loan. See SBA FAQ Question 46.

**ANSWER:**

To the extent the allegations in Paragraph 225 purport to characterize or describe an SBA FAQ or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. To the extent Paragraph 225 contains Relator's characterization of his claims and/or legal conclusions, no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 225.

226.    However, repaying the loan pursuant to FAQ 46 does not shield the borrower from all potential liability. FAQ 46 merely states that SBA will not pursue additional action based on a determination that the borrower lacked an adequate basis for the certification of need. A borrower is still liable if there are other violations of the PPP statute or implementing regulations, such as falsely certifying compliance with the PPP size and affiliation rules.

**ANSWER:**

To the extent the allegations in Paragraph 226 purport to characterize or describe an SBA FAQ or other sources, Defendants state that such sources speak for themselves and specifically deny any characterization or description that is inconsistent with the referenced sources. To the extent Paragraph 226 contains Relator's characterization of his claims and/or legal conclusions, no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 226.

227.    Neither Ocean State, Blueprint Test Prep nor Fyzical Holdings repaid the PPP loan funds it received but for which it was not eligible.

**ANSWER:**

Paragraph 227 contains Relator's characterization of his claims and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 227.

228.    Further, because the loans received by Ocean State, Blueprint Test Prep, and Fyzical Holdings are at least $2 million, they are not deemed to have made the necessity certification in good faith and are subject to a full review by the SBA to ensure eligibility and compliance with PPP program requirements.

**ANSWER:**

Paragraph 228 contains Relator's characterization of his claims and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 228.

229.    Ocean State knowingly avoided and/or concealed its obligation to return money back to the Government.

**ANSWER:**

Defendants deny the allegations in Paragraph 229.

230.    Additionally, based on the foregoing, New Harbor Capital's other portfolio companies—Blueprint Test Prep and Fyzical Holdings—also knowingly avoided and/or concealed their obligation to return money back to the Government.

**ANSWER:**

Defendants deny the allegations in Paragraph 230.

231.    As alleged, New Harbor Capital directed and oversaw Ocean State, Blueprint Test Prep, and Fyzical Holdings' retention and use of the illegitimate PPP loan funds.  In the least, New Harbor Capital had knowledge of Ocean State, Blueprint Test Prep, and Fyzical Holdings' retention and use of the illegitimate PPP loan funds.  As a result, New Harbor Capital may be held liable for the retention and use of the illegitimate PPP loan funds by its portfolio companies.  (*See* ¶ 146 supra.)

**ANSWER:**

Paragraph 231 contains Relator's characterization of his claims and/or legal conclusions to

which no response is required.  To the extent a response is required, Defendants deny such

characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph

231.

**E.    The United States Suffered Damages**

232.    As described above, based on information provided by PPP borrowers, PPP lenders submit PPP borrower loan forgiveness applications to the SBA, requesting payment of the forgiveness amount by the SBA.

**ANSWER:**

To the extent the allegations in Paragraph 232 relate to third parties, Defendants are without

information sufficient to form a belief as to the truth of these allegations and therefore deny them.

Defendants deny any remaining allegations in Paragraph 232.

233.    The SBA will, subject to any SBA review of the loan or loan application, remit the appropriate forgiveness amount to the lender, plus any interest accrued through the date of payment.

**ANSWER:**

To the extent the allegations in Paragraph 233 relate to third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them. Defendants deny any remaining allegations in Paragraph 233.

234.    As described above, Ocean State received PPP loan funds of $3,159,800 in April 2020.

**ANSWER:**

Ocean State admits that it applied for and received certain funds through the PPP loan program. To the extent the allegations in Paragraph 234 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them. Defendants deny any remaining allegations in Paragraph 234.

235.    On or about June 15, 2021, Ocean State's PPP loan was forgiven and paid by the SBA in the amount of $3,197,279 including accrued interest. Notably, as described above, at the time Ocean State's PPP loan was forgiven, New Harbor Capital had already exited its investment in Ocean State in March 2021 when it sold off Ocean State to VillageMD.

**ANSWER:**

Ocean State and New Harbor admit that certain New Harbor entities have previously made investments in Ocean State and have since sold certain of those investments to third parties. To the extent the allegations in Paragraph 235 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them. Defendants deny any remaining allegations in Paragraph 235.

236.    As described above, Blueprint Test Prep received PPP loan funds of $1,267,200 in April 2020.

**ANSWER:**

Blueprint admits that it applied for and received certain funds through the PPP loan program. To the extent the allegations in Paragraph 236 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them. Defendants deny any remaining allegations in Paragraph 236.

237.    Upon information and belief, Blueprint Test Prep's PPP loan was forgiven and paid by the SBA in an amount no less than the principal amount of its PPP loan.

**ANSWER:**

To the extent the allegations in Paragraph 237 relate to third parties, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them. Defendants deny any remaining allegations in Paragraph 237.

238.    As described above, Fyzical Holdings received PPP loan funds of $3,076,600 in April 2020.

**ANSWER:**

Fyzical admits that it applied for and received certain funds through the PPP loan program. To the extent the allegations in Paragraph 238 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them.  Defendants deny any remaining allegations in Paragraph 239.

239.    On or about June 11, 2021, Fyzical Holdings' PPP loan was forgiven and paid by the SBA in the amount of $3,110,822 including accrued interest.

**ANSWER:**

Fyzical admits that it applied for and received certain funds through the PPP loan program. To the extent the allegations in Paragraph 239 relate to third parties or other Defendants, Defendants are without information sufficient to form a belief as to the truth of these allegations and therefore deny them.  Defendants deny any remaining allegations in 239.

240.    Accordingly, based on the above, the Government has paid out approximately $7,575,301 for PPP loan funds for which Ocean State, Blueprint Test Prep and Fyzical Holdings were not eligible or entitled to receive.

**ANSWER:**

Defendants admit that Ocean State, Blueprint, and Fyzical applied for and received certain funds through the PPP loan program.  Paragraph 240 contains Relator's characterization of his claims and/or legal conclusions to which no response is required.  To the extent a response is

required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 240.

## COUNT I
### Violation of the False Claims Act
### (31 U.S.C. § 3729(a)(1)(A))

241.    Relator repeats and realleges the foregoing paragraphs as if fully set forth herein.

**ANSWER:**

Paragraph 241 contains no factual assertions to which a response is required. To the extent that a response is required, Defendants repeat each of their above answers to each Paragraph of the Complaint. Defendants deny any remaining allegations in Paragraph 241.

242.    Defendants violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), by knowingly presenting and causing to be presented to the SBA false and/or fraudulent claims for payment or approval.

**ANSWER:**

Paragraph 242 contains Relator's characterization of his claims and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such characterizations and/or conclusions. Defendants deny any remaining allegations in Paragraph 242.

243.    Upon information and belief, the United States paid or approved the false and/or fraudulent claims because of Defendants' acts that would not have been paid or approved but for Defendants' unlawful conduct and incurred damages as a result.

**ANSWER:**

Defendants deny the allegations in Paragraph 243.

244.    By reason of the foregoing, the United States suffered actual damages in an amount to be determined at trial, and therefore is entitled under the False Claims Act to treble damages plus a civil penalty for each false or fraudulent claim.

**ANSWER:**

Paragraph 244 contains Relator's characterization of his claims and/or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such

characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 244.

## COUNT II
### Violation of the False Claims Act
### (31 U.S.C. § 3729(a)(1)(B))

245.    Relator repeats and realleges the foregoing paragraphs as if fully set forth herein.

**ANSWER:**

Paragraph 245 contains no factual assertions to which a response is required.  To the extent that a response is required, Defendants repeat each of their above answers to each Paragraph of the Complaint.  Defendants deny any remaining allegations in Paragraph 245.

246.    Defendants violated the provisions of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B), by knowingly making, using, or causing to be made or used, false records, or statements: (i) material to false or fraudulent claims for payment to the SBA; and/or (ii) in order to get false or fraudulent claims paid or approved; (iii) which claims the United States did pay or approve; and (iv) payment of the false or fraudulent claims was a reasonable and foreseeable consequence of the Defendants' statements and actions.

**ANSWER:**

Paragraph 246 contains Relator's characterization of his claims and/or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 246.

247.    Said false records and statements were made, used, or caused to be made or used, with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

**ANSWER:**

Defendants deny the allegations in Paragraph 247.

248.    Upon information and belief, the United States paid or approved the false and/or fraudulent claims because of Defendants' acts that would not have been paid or approved but for Defendants' unlawful conduct and incurred damages as a result.

**ANSWER:**

Defendants deny the allegations in Paragraph 248.

249.    By reason of the foregoing, the United States suffered actual damages in an amount to be determined at trial, and therefore is entitled under the False Claims Act to treble damages plus a civil penalty for each false or fraudulent claim.

**ANSWER:**

Paragraph 249 contains Relator's characterization of his claims and/or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 249.

## COUNT III
## Violation of the False Claims Act
## (31 U.S.C. § 3729(a)(1)(G))

250.    Relator repeats and realleges the foregoing paragraphs as if fully set forth herein.

**ANSWER:**

Paragraph 250 contains no factual assertions to which a response is required.  To the extent that a response is required, Defendants repeat each of their above answers to each Paragraph of the Complaint.  Defendants deny any remaining allegations in Paragraph 250.

251.    Defendants violated the so-called "reverse false claim" provision of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G), by knowingly making or using a false record or statement for the purpose of avoiding or decreasing an obligation owed to the United States.

**ANSWER:**

Paragraph 251 contains Relator's characterization of his claims and/or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 251.

252.    Defendants retained overpayments or avoided an obligation to repay money to the United States and the United States incurred damages as a result.

**ANSWER:**

Defendants deny the allegations in Paragraph 252.

253.     By reason of the foregoing, the United States suffered actual damages in an amount to be determined at trial, and therefore is entitled under the False Claims Act to treble damages plus a civil penalty for each false or fraudulent claim.

**ANSWER:**

Paragraph 253 contains Relator's characterization of his claims and/or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny such characterizations and/or conclusions.  Defendants deny any remaining allegations in Paragraph 253.

## RELIEF REQUESTED

**ANSWER:**

Relator's "Relief Requested" contains no factual assertions to which a response is required. Relator's "Relief Requested" further states legal conclusions and Relator's characterizations of this action, with which Defendants disagree and to which no response is required.  To the extent Relator's "Relief Requested" is deemed to require a response, Defendants admit that Relator seeks treble damages, injunctive relief, penalties, and further relief, but denies that Relator is entitled to any relief requested.  Defendants deny each and every allegation in Relator's Complaint except as expressly admitted and qualified above.  Defendants request that Relator's Complaint be dismissed with prejudice, that the Court find that Relator is not entitled to any judgment or relief, that the Court enter judgment in favor of Defendants, and that the Court award Defendants their attorneys' fees, costs, and expenses, and such other and further relief as the Court deems just and proper.

## RELATOR HEREBY DEMANDS A TRIAL BY JURY FOR ALL ISSUES SO TRIABLE

**ANSWER:**

Relator's jury demand contains no factual assertions to which a response is required.  To the extent Relator's jury demand may be deemed to require a response, Defendants admit that Relator purports to demand a jury trial but denies that Relator has stated claims that are triable.

## DEFENSES

Defendants state the following defenses to Relator's Complaint.  Each defense is asserted as to all claims against Defendants unless otherwise noted.  By setting forth these defenses, Defendants do not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Relator.  Nothing herein is intended or shall be construed as an admission that any particular issue or subject matter is relevant to the Relator's allegations. Defendants incorporate and re-allege each of the above Answers as if fully set forth below.

1.  Relator's Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

2.  The False Claims Act's public disclosure bar bars Relator's claim in whole or in part.

3.  Relator's claims are barred, in whole or in part, because Relator failed to fulfill the pre-filing disclosure requirements set forth in the False Claims Act.

4.  Relator's claims are barred because any loan applications or other documents submitted by Defendants to the federal government comply with all applicable laws, regulation, and authoritative guidance available at the time they were made.

5.  Relator's claims are barred, in whole or in part, because Defendants had a reasonable belief in the lawfulness of their conduct.

6.  Relator's claims are barred, in whole or in part, because the federal government was aware of Defendants' statements.

7.  Relator's claims are barred, in whole or in part, because Defendants' statements were not material to any payments made by or on behalf of the federal government.

Defendants have not knowingly or intentionally waived any applicable defenses and reserve the right to assert and rely upon such other defenses as may become available or apparent during discovery proceedings.  Defendants further reserve the right to amend its Answer and/or defenses accordingly, and/or to delete defenses that Defendants determine during the course of subsequent discovery are not applicable.

## JURY DEMAND

Pursuant to the Federal Rule of Civil Procedure 38, Defendants demand a trial by jury of all claims and defenses upon which it is entitled to a jury trial.

## PRAYER FOR RELIEF

Defendants request that Relator's Complaint be dismissed with prejudice, that the Court find that Relator is not entitled to any judgment or relief, that the Court enter judgment in favor of Defendants, and that the Court award Defendants their attorneys' fees, costs, and expenses, pre-judgment interest, and such other and further relief as the Court deems just and proper.


Dated:  June 6, 2023                                    Respectfully submitted,


                                                        */s/ Ryan Moorman*
                                                        Ryan Moorman (*pro hac vice*)
                                                        ryan.moorman@kirkland.com
                                                        Kirkland & Ellis LLP
                                                        300 North LaSalle
                                                        Chicago, IL 60654
                                                        Tel:  312-862-2000

                                                        */s/ Patrick Weeks*
                                                        Patrick Weeks (*pro hac vice*)
                                                        patrick.weeks@kirkland.com
                                                        Kirkland & Ellis LLP
                                                        300 North LaSalle
                                                        Chicago, IL 60654
                                                        Tel:  312-862-2000

*/s/ Patricia K. Rocha*
Patricia K. Rocha (#2793)
procha@apslaw.com
Patrick N. Sampson (#9885)
psmapson@apslaw.com
ALDER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel: 401-274-7200
Fax: 401-351-4670

*Attorneys for Defendants New Harbor Capital Fund LP, New Harbor Capital Fund II LP, and New Harbor Capital Management LP, and Ocean State, LLC, Blueprint Test Preparation, LLC, and Fyzical Acquisition Holdings, LLC.*

## CERTIFICATE OF SERVICE

I hereby certify that I filed a copy of the foregoing through the ECF system on June 6, 2023, and that notice will be sent electronically to all counsel of record for Case No. 1:20-cv-00538-JJM-PAS.

<u>/s/ Patricia K. Rocha</u>