UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. JAMES R. BERKLEY<br>               Plaintiff,<br><br>           vs.<br><br>OCEAN STATE, LLC,<br>NEW HARBOR CAPITAL FUND LP, NEW HARBOR CAPITAL FUND II LP,<br>NEW HARBOR CAPITAL MANAGEMENT LP, BLUEPRINT TEST PREPARATION, LLC, FYZICAL ACQUISITION HOLDINGS, LLC<br>               Defendants. | C.A. No. 1:20-cv-00538-JJM-PAS |

**RELATOR'S MOTION TO COMPEL DISCOVERY OF ATTORNEY-CLIENT COMMUNICATIONS CONCERNING THE LEGAL ADVICE RECEIVED BY DEFENDNTS REGARDING THE PPP LOANS AT ISSUE**

Pursuant to Fed. R. Civ. P. 37(a), plaintiff-relator, James R. Berkley ("Relator"), moves to compel defendants, Ocean State, LLC ("Ocean State"), New Harbor Capital Fund LP, New Harbor Capital Fund II LP, New Harbor Capital Management LP, Blueprint Test Preparation, LLC ("Blueprint") and Fyzical Acquisition Holdings, LLC ("Fyzical") (collectively, the "Defendants"), to order Defendants to produce all documents and communications concerning legal advice, opinions, reviews, and analyses related to the PPP loans at issue in this litigation or, in the alternative, to prohibit Defendants from using any documents and communications concerning their analysis of the PPP loans and PPP loan eligibility to support any defense to Relator's claims.

Relator attempted in good faith to resolve this issue before seeking the Court's intervention. On several occasions, including during depositions, counsel for the parties discussed the reliance upon counsel defense and waiver issues raised herein, but have been unable to reach a resolution.

# BACKGROUND[1]

## I.  Defendants' Alleged Violations of the False Claims Act

Relator commenced this *qui tam* action in December 2020, alleging that Defendants defrauded the United States Government in violation of the False Claims Act, 31 U.S.C. § 3729 *et seq*. ("FCA") when they ***knowingly*** presented and caused to be presented false claims for payment to the government and used false records and statements that caused false claims to be paid by the government, in violation of FCA subsections 3729(a)(1)(A) and (B).  As alleged, Ocean State, Blueprint and Fyzical (the so-called "PPP Recipients")—with New Harbor Capital's knowledge, direction and oversight—violated the FCA by falsely certifying in their applications under the United States Small Business Administration's ("SBA") Paycheck Protection Program ("PPP") that the PPP loans were "necessary" to support their ongoing operations and were unable to access other sources of available liquidity.  Relator also alleges that Ocean State, Blueprint and Fyzical, with New Harbor Capital's knowledge, direction and oversight, falsely certified compliance with the PPP size and affiliation rules.  Relator further alleges that New Harbor Capital is liable for causing the submission of false claims made by the PPP Recipients because it controlled and directed the conduct and operations of the PPP Recipients both generally and with respect to submission of their PPP loan applications and receipt and use of PPP loan funds.

## II.  One of the Principal Factual Disputes in this Case is Whether Defendants Acted Knowingly in Violating the False Claims Act (i.e., with Scienter)

### A.  The False Claims Act Requires Proof of Defendants' Scienter

Relator must show that Defendants acted knowingly in presenting or causing false claims

---

[1] Capitalized terms used herein have the same meaning as set forth in the Second Amended Complaint ("SAC"), ECF No. 28, unless otherwise defined herein.  Relator refers to New Harbor Capital Fund LP, New Harbor Capital Fund II LP, New Harbor Capital Management LP collectively as "New Harbor Capital" or the "New Harbor Defendants."

to be presented to the United States for payment or approval, *see* 31 U.S.C. § 3729(a)(1)(A), or that they acted knowingly by making, using, or causing to be made or used, a false record or statement to get—or that was material to—false or fraudulent claims paid or approved by the United States. *See* 31 U.S.C. § 3729(a)(1)(B). Under the FCA, the term "knowingly" means that a person, with respect to information contained in a claim, (i) "has actual knowledge of the information"; (ii) "acts in deliberate ignorance of the truth or falsity of the information"; or (iii) "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1).

### B. Defendants' Scienter-Related Defenses

In their Answer to the SAC, Defendants deny that they knowingly presenting and causing to be presented to the SBA false and/or fraudulent claims for payment or approval." *See* Answer, ECF No. 36 at ¶ 242. They further deny that they "knowingly making, using, or causing to be made or used, false records, or statements: (i) material to false or fraudulent claims for payment to the SBA; and/or (ii) in order to get false or fraudulent claims paid or approved; (iii) which claims the United States did pay or approve; and (iv) payment of the false or fraudulent claims was a reasonable and foreseeable consequence of the Defendants' statements and actions." *Id*. at ¶ 246.

Defendants then assert an affirmative defense that specifically disputes the scienter elements of Relator's claims by arguing that they had a subjective good faith belief that their conduct was lawful: "Relator's claims are barred, in whole or in part, because Defendants had a reasonable belief in the lawfulness of their conduct." *Id*. at Affirmative Defense No. 5.

Defendants also deny a host of Relator's allegations in the SAC concerning the scienter element and raise their alleged subjective good faith belief that their conduct was lawful: "Defendants state that each Defendant submitting a PPP loan application reasonably believed that they acted in compliance with existing federal laws, regulations, and relevant authoritative

3

guidance in connection with the submission of any PPP loan application or otherwise adopted an interpretation of ambiguous laws, regulations, and relevant authoritative guidance that was objectively reasonable." *Id.* at ¶¶ 133, 176, 177, 182, 183, 186, 214, 216, 219, 229, 230.

### C. Defendants are Using the Attorney-Client Privilege as Both a Sword and a Shield

Defendants also raised their subjective good faith belief defense in the PPP Recipients' interrogatory answers. When asked to state the basis for their Fifth Affirmative Defense that "Relator's claims are barred, in whole or in part, because Defendants had a reasonable belief in the lawfulness of their conduct", Defendants responded that "Defendants believed that all of their conduct with respect to the PPP loan application and all of the certifications contained in the PPP loan application submitted by Ocean State, Blueprint, and Fyzical were lawful and accurate." *See* Exhibit 1, excerpts of the PPP Recipients interrogatory answers, at No. 18. Further, when asked to explain in detail how they determined they met the economic necessity certification contained in the PPP Loan Application, each of the PPP Recipients disclosed that their determination was based on consultation with their attorneys: "Defendant further states that it consulted with attorneys in relation to its PPP loan application." *Id.* at No. 12. However, despite raising their supposed subjective good faith belief as a sword, the PPP Recipients simultaneously raised the attorney-client privilege as a shield in a footnote: "By making this statement in direct response to Relator's Interrogatory, Defendant does not waive or relinquish any attorney-client privilege, work-product protections, or other privileges and protections, nor is Defendant invoking an "advice of counsel" defense by making this statement." *Id.*

In discovery, Defendants produced numerous emails and other documents showing that their attorneys (from Reed Smith and McDermott Will & Emery) provided advice and reviewed, helped to draft, and approved numerous key documents concerning the PPP Recipients' need and

4

eligibility for the subject PPP loans, including: emails; so-called "business case" memos drafted after the fact to "paper the file" with Defendants' supposed need and eligibility analysis, rationale and decision to apply for the PPP loans; and board of director consents parroting the business case memos. By way of example, *see* Exhibit 2, emails, memos to file, and director consents (filed separately under seal).[2] Defendants also testified at deposition regarding their attorneys' involvement in the PPP loan applications. By way of example, *see* excerpts of the deposition transcripts of Ocean State and Fyzical's 30(b)(6) designees attached hereto as Exhibit 3.[3]

Defendants have made clear through their denials and affirmative defenses, as well as their responses to discovery and deposition testimony, that they are putting forth the defense that they acted in good faith (i.e., did not act "knowingly") because they received advice and approval from their attorneys regarding their eligibility for the PPP loans they took. These defenses directly put at issue Defendants' knowledge regarding the legality of the PPP loans, including all advice, opinions, reviews, and analyses they received or performed regarding the legality of the PPP loans, thereby waiving any privilege that might have otherwise protected this information from discovery.

To prove his claims and rebut Defendants' affirmative scienter-related defenses, Relator propounded discovery relevant to the issues of whether Defendants acted knowingly and willfully or with a true good faith belief that their PPP loans were lawful. Standing behind the shield of privilege, Defendants have objected to providing this relevant evidence despite their intention to

---

[2] Defendants designated these materials as "Confidential" pursuant to the parties' Discovery Confidentiality Order (ECF No. 39). Relator does not concede that the materials are appropriately designated and instead leaves it to Defendants to justify any sealing of these materials.

[3] Relator has not yet received the transcripts of the depositions of Blueprint and New Harbor Capital's managing partner, Tom Formolo, which further detail Defendants' attorneys' involvement in the PPP loan applications.

5

use the emails, business case memos and director consents, which are tantamount to legal opinions, as a sword to try to strike down Relator's claims on the merits. While they have provided Relator with redacted versions of the memos and emails, Defendants are withholding the underlying legal analyses under a claim of privilege.

Defendants' refusal to produce legal analyses and opinions underlying their decision to apply for and keep the PPP loan funds on the basis of privilege is improper as Defendants have affirmatively put this matter at issue. The Court must reject Defendants' attempt to use the attorney-client privilege as both a sword and a shield by compelling them to disclose all legal analyses, reviews, advice, and opinions they received regarding the propriety of the PPP loans from their legal department and outside counsel. Or, in the alternative, the Court should preclude Defendants from using any documents and communications concerning their analysis of the PPP loans and PPP loan eligibility to support any defense to Relator's claims.

## ARGUMENT

I.   **Because Defendants are Partially Disclosing Legal Advice and Implying (If Not Stating) that Their Attorneys Reviewed and Concluded that the PPP Loan Applications Complied with the False Claims Act, Fairness Requires Full Disclosure of the Legal Advice They Actually Received**

It is evident that Defendants are trying to rebut Relator's claim that they acted willfully in violating the False Claims Act by partially disclosing select privileged information to create the appearance that, before providing applying for the PPP loans, their attorneys reviewed whether they needed and were eligible for the PPP loans and determined that they were. Tellingly, however, Defendants have made these selective disclosures and created this unsubstantiated inference while concealing other information that would reveal the legal assessments that were actually performed and the legal advice they received regarding whether they violated the False Claims Act. This is a poorly disguised attempt at using the attorney-client privilege as both a

sword and shield. Due to Defendants deliberately choosing to disclose selective information about their attorneys' assessments and approvals of the PPP loans, Defendants have waived their right to assert the attorney-client privilege over the actual communications and assessments performed by Defendants' attorneys and other contemporaneous legal advice they received regarding whether the PPP Recipients needed and were eligible for the PPP loans and/or violated the False Claims Act. Accordingly, Defendants should be ordered to make full disclosure of these formerly privileged communications.

By disclosing certain legal advice and using it as a sword to gain a benefit in this litigation, Defendants have directly placed that legal advice, as well as other legal advice concerning the same subject, in issue. However, in an effort to prevent Relator from testing and rebutting these disclosed facts and the inferences they create, Defendants have asserted the attorney-client privilege to shield information concerning the actual legal analyses and reviews underlying their attorneys' advice and approvals of the PPP loans. Discovery of the actual legal assessments that the attorneys conducted and offered is essential to testing the accuracy of the facts Defendants are asserting and implying. For instance, disclosure of the actual legal reviews underlying the attorneys' advice and approvals might reveal that: (i) the attorneys warned of a risk that they PPP Recipients do not satisfy the need and affiliation requirements for the PPP loans or that the PPP loans might violate the False Claims Act; (ii) the attorneys approved applying for the PPP loans without actually reviewing whether doing so would violate the False Claims Act; (iii) the attorneys reviewed Defendants' need and eligibility for the PPP loans and compliance with the False Claims Act but were not apprised of material facts concerning the PPP loans, causing their advice and approvals to be incorrect and/or unreliable; (iv) the attorneys knew that the PPP loans violated the False Claims Act but approved it anyway; and/or (v) the attorney lacked the expertise or

7

competence to be able to provide reliable legal advice concerning the PPP loans and the False Claims Act.

Defendants' tactics are a textbook example of using the attorney-client privilege as both a sword and shield. An implied waiver should result because Defendants cannot be permitted to partially disclose legal advice to their advantage. *See In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.),* 348 F.3d 16, 24 (1st Cir. 2003) ("Implying a subject matter waiver in such a case ensures fairness because it disables litigants from using the attorney-client privilege as both a sword and a shield. Were the law otherwise, the client could selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truth-seeking process.").

An implied waiver results when "the party asserting the privilege place[s] protected information in issue for personal benefit through some affirmative act, and the court [finds] that to allow the privilege to protect against disclosure of that information would [be] unfair to the opposing party." *In re Keeper of Recs.*, 348 F.3d at 24. At the center of an implied waiver determination is the notion of unfairness to the adversary. *See United States v. Gorski*, 36 F. Supp.3d 256, 268 (D. Mass. 2014) (Saylor, C.J.) (instructing that, in determining whether an implied waiver has been triggered, "[t]he touchstone is fairness; a defendant cannot put his attorney's advice or involvement at issue in a case and then claim a privilege as to the details of that advice or involvement."). Some courts, including courts in the First Circuit, assess whether the claims and defenses are so "enmeshed" in privileged evidence that it would be unfair to withhold the material. *See Massachusetts Mut. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 293 F.R.D. 244, 249 (D. Mass. 2013); *see also United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[T]he privilege may implicitly be waived when defendant asserts a

8

claim that in fairness requires examination of protected communications."). In assessing whether fairness requires an implied waiver, courts must consider "the type of unfairness to the adversary that results in litigation circumstances when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." *In re Cty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) (*quoting John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003)).  Here, the prejudice and unfairness resulting from Defendants' partial disclosures of legal advice, and the facts reasonably inferred from those disclosures, are significant, as they go directly to one of the critical issues in the litigation – whether Defendants "knowingly" submitted false claims.

Because Relator cannot test or rebut the inference Defendants have created without examining the actual legal reviews performed and legal advice received, Relator's claims and Defendants' affirmative defenses are enmeshed in privileged communications concerning whether Defendants' attorneys advised that the PPP loans were lawful and in compliance with the False Claims Act.  It would be manifestly unfair for Defendants to selectively present evidence of their attorneys' reviews and approvals—or their own analysis and decision based on their attorneys' advice—to create inferences that the attorneys reviewed whether the PPP Recipients needed and were eligible for the PPP loans and subsequently approved the PPP loans because they concluded that the PPP loans did not violate the False Claims Act, while depriving Relator of the opportunity to test and rebut these asserted facts and inferences that are highly relevant to the scienter element of Relator's claims as well as Defendants' affirmative defenses that they had a subjective good faith belief that their conduct was lawful, a defense that Defendants are, in fact, asserting. Alternatively, the Court should preclude Defendants from using any documents and communications concerning their analysis of the PPP loans and PPP loan eligibility to support any

defense to Relator's claims.

## II. Because Defendants are Asserting an Affirmative Defense that They Had a Good Faith Belief that Their Conduct Was Lawful, Fairness Requires Full Disclosure of the Legal Advice They Received on This Subject

When a defendant asserts a defense that it had a good faith belief in the lawfulness of its actions, an implied waiver will likely be necessary because "the plaintiff, in order to test the assertion of good faith, would need to know whether the defendant received any legal advice suggesting that its actions were in fact not lawful." *Bacchi v. Mass. Mut. Life Ins. Co.*, 110 F. Supp.3d 270, 276 (D. Mass. 2015) (*citing In re Cty. of Erie*, 546 F.3d at 229). Said differently, "it would be unfair for a party asserting contentions [of good faith belief in the lawfulness of its actions] to then rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contentions." *S.E.C. v. Honig*, No. 18-cv-8175, 2021 WL 5630804, at *11 (S.D.N.Y. Nov. 30, 2021) (*quoting Arista Recs. LLC v. Lime Grp. LLC*, No. 06-cv-5936, 2011 WL 1642434, at *3 (S.D.N.Y. Apr. 20, 2011)); *see also Bilzerian*, 926 F.2d at 1292-94 (holding if a defendant presents "testimony that he thought his actions were legal [then he] would have put his knowledge of the law and the basis for his understanding of what the law required in issue" and would therefore be required to disclose privileged communications regarding the legality of his conduct.); *Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1419 (11th Cir. 1994) (holding that a party that goes beyond mere denial and asserts an affirmative defense that it believed its actions were lawful "inject[s] the issue of its knowledge of the law into the case and thereby waive[s] the attorney-client privilege," as "it would be inequitable, to allow [a defendant] to present evidence tending to show that it intended to comply with the law, while allowing it to cloak in privilege those documents tending to show it might have known its actions did not conform to the law." ); *United States ex rel. Calilung v. Ormat Indus.,*

10

*Ltd.*, No. 3:14-cv-00325, 2016 WL 4107682, at *4 (D. Nev. Aug. 1, 2016) (holding that asserting a defense of good faith belief in the lawfulness of its conduct went "beyond mere denial of scienter to put its state of mind and knowledge of the [statutory] requirements at issue," resulting in a waiver); *Hamilton v. Yavapai Comm. College Dist.*, No. CV-12-08193, 2016 WL 8199695, at *2 (D. Ariz. June 29, 2016) (finding "where the Defendants assert their subjective good faith with respect to a matter of legal compliance, as the Defendants do here, a determination of such subjective good faith may depend on the advice given the Defendants by their counsel," triggering waiver of the privilege ); *United States ex rel. Saldivar v. Fresenius Med. Care Hldgs., Inc*., No. 1:10-cv-1614-AT, 2014 WL 11517840, at *2 (N.D. Ga. Feb. 21, 2014) (holding that by asserting an affirmative defense that it had a good faith belief that its conduct was lawful defendant waived the privilege because "allow[ing] [defendant] to argue its good faith belief that its conduct was legal, but deny the Relator an opportunity to explore [defendant's] belief would prejudice the Relator and thus be manifestly unfair.").

Not every good faith defense places the advice the defendant received from its counsel in issue. Courts distinguish good faith defenses that implicate a defendant's knowledge of the law from a good faith defense that is based on a defendant's knowledge of objective facts. *See Bacchi*, 110 F. Supp.3d at 277 (holding that an implied waiver was not warranted because the defendant had not asserted a good faith defense that put in issue its understanding of the law but rather asserted a defense that it acted in good faith and intended to prove the defense by merely presenting objective facts concerning the steps it took to comply with the law); *Honig*, 2021 WL 5630804, at *12 (observing that not every good faith defense implicates the defendant's knowledge of the law) (citing cases); *United States ex rel. Patzer v. Sikorsky Aircraft Corp.*, 575 F. Supp.3d 1032, 1043 (E.D. Wis. 2021) (finding that a defendant does not place advice of counsel at issue whenever it

11

alleges "good faith" as part of a defense; rather, "at issue waiver will occur only when the defendant claims that it has a good-faith belief that its conduct was legal").

And so, when a defendant asserts a defense that it acted in good faith to comply with a legal or contractual requirement, such defense is normally based on objective facts and likely would not implicate the defendant's knowledge of the law and, in that case, it may not be necessary for the plaintiff to examine the defendant's privileged communications. On the other hand, when a defendant asserts that it had a good faith belief in the lawfulness of its actions and had reviewed the conduct with its counsel—as is the case here—the plaintiff must be given access to the privileged communications, otherwise he has no way to test or rebut the asserted belief.

Here, it is clear that Defendants are asserting an affirmative defense that, at the time they applied for the PPP loans and thereafter, they had a good faith belief that the PPP loans were lawful and did not violate the False Claims Act. Defendants' assertion of this affirmative defense triggers an implied waiver of their privilege because Relator has no way of testing or rebutting this defense unless he is able to examine the privileged communications and legal advice Defendants had received concerning whether the PPP Recipients needed and were eligible for the PPP loans.

**III. Despite Their Statements to the Contrary, Defendants are Putting Forth a Reliance Upon Counsel Defense and Fairness Requires Full Disclosure of the Legal Advice They Received Concerning the PPP Loans Were Lawful**

Defendants, through counsel, have argued that they are not asserting an advice of counsel defense. Obviously, Defendants and their counsel know that if they state that they are going to rely upon advice Defendants received from their counsel concerning whether the PPP Recipients needed and were eligible for the PPP loans, then they would have overtly waived the attorney-client privilege and been required to turn over all legal advice they received on this critical issues. whether the PPP Recipients needed and were eligible for the PPP loans. In an obvious effort to

12

avoid this consequence and prevent the decisionmaker in this action from seeing that advice, Defendants have been representing that they are not asserting such a defense.

But Defendants' actions belie their representations: although Defendants have stated that they are not asserting a reliance upon counsel defense, Defendants are partially disclosing legal advice by revealing information concerning their counsel's review and approvals of the PPP loans. And although Defendants have stated that they are not asserting a reliance upon counsel defense, Defendants are asserting as an affirmative defense that they had a subjective good faith belief that their conduct was lawful, an assertion that puts directly in issue their attorneys' assessments and other legal advice they received concerning whether the PPP loans violated the False Claims Act.

Accordingly, despite Defendants' equivocation, it is evident that they are relying on selectively disclosed portions of legal advice in the form of their attorneys' approvals of the PPP loans and the inferences reasonably drawn from such approvals in defending against Relator's claim that they willfully violated the False Claims Act. Because Defendants are relying upon advice of counsel, albeit in a furtive manner, Defendants have put at issue their privileged communications concerning whether providing the PPP loans violated the False Claims Act and have thereby impliedly waived the attorney-client privilege concerning those communications. *See Bacchi*, 110 F. Supp.3d at 275 (*quoting Banco do Brasil, S.A. v. 275 Washington Street Corp.*, No. 09-11343, 2011 WL 3208027, at *3 (D. Mass. July 27, 2011)) ("The classic example [of an implied waiver] is where a defendant defends itself against a claim on the ground that it relied on the advice of counsel in performing or failing to perform the challenged conduct. In such a case, the defendant voluntarily puts its attorney's advice at issue and fairness dictates that the opposing party should be able to discover all the attorney's communications on the particular subject, not just the advice that is helpful to the defendant."); *Nitinol Med. Tech., Inc. v. AGA Med. Corp.*, 135

13

F. Supp.2d 212, 217 (D. Mass 2000) (internal citation omitted) ("the deliberate injection of the advice of counsel into a case waives the attorney-client privilege … because a "party should not be allowed to rely on self-serving documents in its defense while withholding potentially damaging information under the guise of the attorney-client privilege.").

## CONCLUSION

For the foregoing reasons, Relator respectfully requests that the Motion be GRANTED in its entirety and that the Court issue an order that Defendants have waived the attorney-client privilege with regard to the assessments concerning whether the PPP Recipients needed and were eligible for the PPP loans and/or violated the False Claims Act that Defendants' attorneys performed and the advice their attorneys provided concerning the submission of the PPP loan and forgiveness applications and the receipt and use of PPP funds.

Alternatively, the Court should: (i) preclude Defendants from using in the litigation any documents and communications concerning their analysis of the PPP loans and PPP loan need and eligibility to support any defense to Relator's claims; and (ii) strike Defendants' denials and affirmative defense that it had a good faith belief in the lawfulness of its conduct.

Relator requests oral argument on this motion.

Respectfully submitted,

Plaintiff,
UNITED STATES OF AMERICA *ex rel*
JAMES R. BERKLEY

By His attorneys,

/s/ Eric E. Renner
Eric E. Renner (#7481)
DUFFY & SWEENEY, LTD
321 South Main Street, Suite 400
Providence, RI  02903
Phone: 401-457-1803
Fax: 401-457-0701
erenner@duffysweeney.com

Date:  May 17, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of May, 2024, a true copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and copies will be mailed to those indicated as non-registered participants.

/s/ Eric E. Renner