# In The Matter Of:

*United States of America ex rel. James R. Berkley v. Ocean State, LLC, et al.*

*Eric Thompson*
*March 21, 2024*



SARASOTA
BRADENTON
LAKEWOOD RANCH

TAMPA
ST. PETERSBURG
VENICE

*Thank you for your continued business!*



941.260.9000
imperialcourtreporting.com
admin@imperialcourtreporting.com

*Min-U-Script® with Word Index*

Case 1:20-cv-00538-JJM-PAS   Document 47-3   Filed 05/17/24   Page 2 of 12 PageID #: 2060

United States of America ex rel. James R. Berkley v. Ocean State, LLC, et al.

Eric Thompson
March 21, 2024

## Page 1

```
                 UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF RHODE ISLAND

         CASE NO.:  1:20-cv-00538-JJM-PAS

UNITED STATES OF AMERICA ex rel.
JAMES R. BERKLEY

        Plaintiff,

vs.

OCEAN STATE, LLC,
NEW HARBOR CAPITAL FUND LP, NEW
HARBOR CAPITAL FUND II LP,
NEW HARBOR CAPITAL MANAGEMENT
LP, BLUEPRINT TEST PREPARATION,
LLC, FYZICAL ACQUISITION
HOLDINGS, LLC

        Defendants.
_____/

              DEPOSITION OF ERIC THOMPSON

         Taken on Behalf of the Plaintiff

     DATE TAKEN:  March 21, 2024

     TIME:        9:07 a.m.

     REPORTED BY: SHARON F. BUTLER
                  Court Reporter
                  Notary Public
                  State of Florida at Large

     PLACE:       The Westin Sarasota
                  100 Marina View Drive
                  Sarasota, Florida  34236
```

## Page 2

```
              APPEARANCES FOR THE PLAINTIFF

              ERIC E. RENNER, Esquire
                Duffy & Sweeney, LTD.
                321 South Main Street
                      Suite 400
              Providence, Rhode Island 02903
                erenner@duffysweeney.com



              APPEARANCES FOR THE DEFENDANTS

              PATRICK J. WEEKS, Esquire
                MAX SAMELS, Esquire
                 Kirkland & Ellis LLP
                300 North La Salle Drive
                Chicago, Illinois 60654
              patrick.weeks@kirkland.com
                max.samels@kirkland.com




                          * * *
```

## Page 3

```
                          INDEX

Deposition of ERIC THOMPSON

                                               Page number

Direct Examination by Mr. Renner:                    6
Cross-Examination by Mr. Weeks:                    149
Redirect Examination by Mr. Renner:                165
Certificate of Reporter                            168
Certificate of Oath                                169
Errata Sheet                                       170
Read and Sign Letter                               171


                        Exhibits

Number Description                      Identified   Marked
Plaintiff's
Exh 1    Fyzical Acquisition Holdings'
         Objection to Deposition Notice      12         6
Exh 2    Fyzical Acquisition Holdings'
         Responses to Interrogatories        12         6
Exh 3    Fyzical Acquisition Holdings'
         Limited Liability Company
         Agreement Dated 2/28/19             12         6
```

## Page 4

```
                  Exhibits (Continued)

Number Description                      Identified   Marked
Exh 4    Diagram                             15         6
Exh 5    Structure Chart dated 12/21/17      15         6
Exh 6    Professional Services Agreement     37         6
Exh 7    Fyzical Corporate Org Chart         41         6
Exh 8    Audit Report dated 12/31/20         43         6
Exh 9    Fyzical's Franchise
         Disclosure Document                 54         6
Exh 10   PPP Borrower Application Form       57         6
Exh 11   Email Exchange Dated 5/13/20        68         6
Exh 12   Memo by Mr. Thompson                69         6
Exh 13   Copy of Federal Register            74         6
Exh 14   PPP FAQs Dated 6/13/23              75         6
Exh 15   SBA Franchise Directory Page       113         6
Exh 16   Fyzical Acquisition Holdings
         Board of Managers Document
         Dated 5/13/20                      117         6
Exh 17   Letter from SBA Dated 4/4/20       117         6
Exh 18   Fyzical Quarterly Update -
         First Quarter 2020                 120         6
Exh 19   Fyzical Business Update
         Dated 4/24/20                      121         6
Exh 20   Fyzical Document Dated 3/31/20     131         6
```

Case 1:20-cv-00538-JJM-PAS   Document 47-3   Filed 05/17/24   Page 3 of 12 PageID
United States of America ex rel. James R. Berkley v.   #: 2061                    Eric Thompson
Ocean State, LLC, et al.                                                          March 21, 2024

Page 69

1  you if I addressed it to the board, it would have
2  been sent to the full board.
3      Q.   So if you sent this email, it would --
4      A.   It would go to the nine members of the
5  board that I went through earlier.
6      Q.   Okay.  All right.  This is Exhibit 12.
7  Do you recognize this document, sir?
8      A.   Yes, I do.
9      Q.   And did you draft this document?
10     A.   I did.
11     Q.   Did anyone else assist you in drafting
12 this document?
13     A.   Yeah.  We had -- I ran it by Brian
14 Belmont.  And, also, I did seek some help from
15 Reed Smith just to read over it.  Correct.
16     Q.   All right.  But you drafted the document?
17     A.   Oh, yeah.  I mean, I didn't draft every
18 single word in here, but I drafted the majority of
19 this.  Correct.
20     Q.   Well, what did you --
21     A.   -- including the Excel schedule.
22     Q.   Okay.  Sorry.
23          What did you not draft?
24     A.   Oh, I don't recall.  I mean, I don't
25 know, but I know I spent a ton of time on it.

Page 70

1      Q.   All right.  And it's dated May 6th, 2020.
2      A.   Correct.
3      Q.   Is that when you drafted this document?
4      A.   That's when the document was going out to
5  the board.
6      Q.   All right.  When did you start drafting
7  this document?
8      A.   I don't -- it was probably in -- I mean,
9  obviously, I didn't finish the document in a day,
10 so it would be sometime in April.
11     Q.   Was it after the PPP application?
12     A.   I don't recall.
13     Q.   So you said this was sent to the board,
14 right?
15     A.   Yes.
16     Q.   Other than the board, did it go to anyone
17 else?
18     A.   I don't recall.  I don't think there
19 would have been a reason to, but I -- definitely
20 it would have been sent to the board.
21     Q.   But you just can't say one way or another
22 if it went to anyone other than the board?
23     A.   No.  I mean, if -- I don't know if I
24 copied someone on the email or not.  I don't know.
25 But it was drafted because I wanted to educate the

Page 71

1  board on where we were with PPP.
2      Q.   So at the top, it says, "Regarding
3  Fyzical's eligibility to receive CARES Act PPP
4  funding."
5      A.   Yes.
6      Q.   And then throughout the document it
7  refers to Fyzical?
8      A.   Correct.
9      Q.   Who were you referring to when you used
10 the term Fyzical?
11     A.   Fyzical Acquisition Holdings.
12     Q.   All right.  So this is specific to
13 Fyzical Acquisition Holdings?
14     A.   Correct.
15     Q.   As opposed to some other Fyzical entity?
16     A.   Correct.  It's specific to that.
17     Q.   All right.  So under number 1, "Fyzical's
18 eligibility to receive funding," where did you get
19 the information stated here under number 1?
20     A.   From -- I believe it was from the SBA
21 guidelines.  But we were getting information from
22 a lot of different sources, because APTA was
23 putting out a lot of stuff.  There's a dental firm
24 I follow, they put out a lot of stuff.
25          But overall, I mean, it was -- we were

Page 72

1  swimming in information at that point.
2      Q.   All right.  And then the second
3  paragraph, at the bottom of the second paragraph,
4  it refers to "any business concern operating as a
5  franchise."  Do you see that?
6      A.   Yes.
7      Q.   How did you define -- how do you define
8  the term "business concern"?  Or does that mean
9  Fyzical Acquisition Holdings, or something else?
10         MR. WEEKS:  Objection to form.  Calls for
11   a legal conclusion.
12         But you can answer in your own personal
13   capacity.
14 BY MR. RENNER:
15     Q.   When you fill out this memo, you know --
16     A.   Yeah.
17     Q.   And at the time of the application, in
18 your mind, how did you define the term "business
19 concern"?
20         MR. WEEKS:  Objection to form.  This is a
21   quote from the SBA guidance.  He didn't write
22   that.
23         MR. RENNER: I'm not saying he wrote it.
24   I'm just saying, in his mind, what does
25   "business concern" refer to.

Case 1:20-cv-00538-JJM-PAS    Document 47-3    Filed 05/17/24    Page 4 of 12 PageID #: 2062

United States of America ex rel. James R. Berkley v.
Ocean State, LLC, et al.

Eric Thompson
March 21, 2024

Page 73

1    MR. WEEKS: Objection to form.
2    A.   Anything that -- I would say it's
3  anything that involves a franchise brand.  So
4  Fyzical Acquisition Holdings we consider to be the
5  franchise brand.
6  BY MR. RENNER:
7    Q.   All right.  So in your mind, is it
8  accurate to say that business concern referred to,
9  you know, what, all of the Fyzical entities
10 underneath Fyzical Acquisition Holdings?
11   MR. WEEKS: Objection to form.
12   A.   There is -- what this is is the
13 affiliation waiver, and it was for the franchise
14 brand.  And, yes, Fyzical Acquisition Holdings
15 is -- did deserve the waiver underneath that
16 definition.
17 BY MR. RENNER:
18   Q.   All right.  How did you come to that
19 conclusion that Fyzical Acquisition Holdings
20 deserved a waiver?
21   A.   Because that's what --
22   MR. WEEKS: Objection.  Objection to
23 form.
24   Go ahead.  And I'm just going to caution
25 you not to reveal anything that implicate

Page 74

1  conversations with counsel.  You can answer in
2  your own personal capacity if you landed at
3  that conclusion.
4    A.   Yes.  The SBA franchise identifier code
5  is where -- I specifically found that out on the
6  internet when I went to go search for our
7  franchise brand.
8  BY MR. RENNER:
9    Q.   Well, that wasn't -- so that wasn't
10 really my question.  My question was --
11   MR. RENNER: Well, can you read back my
12 last question, please.
13   (Record read back.)
14   MR. WEEKS: So that's the question.
15   A.   So can you state that again, please?
16 BY MR. RENNER:
17   Q.   Yeah.  How did you come to the
18 determination that Fyzical Acquisition Holdings
19 deserved a waiver from the affiliation rules?
20   A.   Because to me, it's pretty clear there.
21 Operating as a franchise, Fyzical Acquisition
22 Holdings is the business concern that's operating,
23 and we have the SBA identifier code.
24   Q.   All right.  I'm going to show you
25 Exhibit 13.  There's a footnote there.  Well, the

Page 75

1  document here refers to an interim final rule.
2  And if you look at Exhibit 13 on the second page,
3  at the footnote there, it refers to the section of
4  the CARES Act here that's referenced in your memo.
5    Did you refer to this document when
6  preparing your memo, Exhibit 13?
7    A.   Yes.  It was one of several documents
8  that -- that was involved in drafting this
9  document, in drafting the document that went to
10 the board.
11   Q.   All right.  It says here, "Business
12 concern operating as a franchise."  Right?
13   A.   Yes.  Yes, it does.
14   MR. WEEKS: Where are you pointing?
15   MR. RENNER: In the memo.
16   MR. WEEKS: Okay.
17 BY MR. RENNER:
18   Q.   So did you give any thought to whether or
19 not Fyzical Acquisition Holdings was operating as
20 a franchise as opposed to being merely a holding
21 company?
22   A.   I view it -- it is the franchise.  It's
23 the one who owns it.
24   Q.   Did you give any thought, though, to
25 whether or not, you know, a holding company -- the

Page 76

1  distinction between a holding company as opposed
2  to an operating company, was that part of your
3  thought process?
4    MR. WEEKS: Objection to form.
5    A.   Again, I just view Fyzical Acquisition
6  Holdings as the brand.  That's even what I get
7  audited on.  I mean, that's my parent.  That is
8  Fyzical.
9  BY MR. RENNER:
10   Q.   All right.  I'm going to show you
11 Exhibit 14.  And if you could turn to page 10.
12   And, again, these are my highlights in
13 here, yellow highlights.
14   So your memo that's Exhibit 12 refers to
15 Response Number 23 in the SBA Frequently Asked
16 Questions.  And it says what you say, "Addresses
17 the eligibility of franchise operations for PPP
18 loan proceeds."
19   A.   Yes, I've read it.
20   Q.   All right.  So your memo, Exhibit 12, at
21 the bottom of the first page, you know, you refer
22 to Response Number 23.
23   A.   Correct.
24   Q.   Right.  And then you say, Response 23
25 addresses the eligibility of franchise operations

Case 1:20-cv-00538-JJM-PAS   Document 47-3   Filed 05/17/24   Page 5 of 12 PageID #: 2063

United States of America ex rel. James R. Berkley v.
Ocean State, LLC, et al.

Eric Thompson
March 21, 2024

Page 165

1 reviewed related to the PPP loan eligibility, how
2 confident were you when you submitted the loan
3 application that Fyzical was eligible to receive
4 the loan?
5     MR. RENNER: Objection.
6   A.  I was 100 percent confident, because I
7 will tell you, my signature was on that document.
8 And there is no way I would have moved forward
9 without being extremely confident, in fact, 100
10 percent confident of our ability and how deserving
11 we were of PPP.
12     MR. WEEKS: All right.  I have nothing
13   further.
14     MR. RENNER: I just have a few
15   follow-ups.
16         REDIRECT EXAMINATION
17 BY MR. RENNER:
18   Q.  Did you ever seek legal counsel regarding
19 what's been called the franchise waiver?
20     MR. WEEKS: Objection to form.
21     You can answer yes or no, but don't
22   reveal anything --
23 BY MR. RENNER:
24   Q.  And by "you," I mean --
25     MR. WEEKS: -- you talked to counsel

Page 166

1   about.
2 BY MR. RENNER:
3   Q.  -- Fyzical?
4   A.  Yes.
5   Q.  Okay.  You just testified regarding the
6 SBA, various follow-ups about corporate structure.
7 Do you remember that?
8   A.  Yes.
9   Q.  Were you saying the SBA or were you
10 talking about Webster followed up?
11   A.  I don't recall the exact names on the
12 email, but I know that Webster was involved and
13 partnering with the SBA.  I don't recall if the
14 SBA people were on it or if it was direct to
15 Webster.  But it definitely was for the
16 forgiveness with the SBA.
17   Q.  Are those emails in -- have they been
18 produced, to your knowledge?
19     MR. WEEKS: Objection to form.
20   Foundation.
21   A.  I don't know.
22     MR. RENNER: All right.  That's all I
23   have.
24     MR. WEEKS: I have nothing further.
25     THE COURT REPORTER: Do you guys do read

Page 167

1 or waive?
2     MR. WEEKS: We will read.
3     MR. RENNER: Yeah, we'll need a
4 signature.
5     THE COURT REPORTER: And ordering
6 transcripts?
7     MR. WEEKS: Yes, please.
8     MR. RENNER: Yes.
9     THE COURT REPORTER: Who's ordering the
10 original?
11     MR. RENNER: That would be me, I guess.
12     (Thereupon, this deposition was concluded at
13 1:05 p.m.  Reading and signing were not waived.)

Page 168

1     REPORTER'S DEPOSITION CERTIFICATE
2 STATE OF FLORIDA  )
3 COUNTY OF SARASOTA)
4     I, SHARON F. BUTLER, Court Reporter,
5 certify that I was authorized to and did
6 stenographically report the deposition of ERIC
7 THOMPSON; (Pages 1 through 170) that a review of
8 the transcript was requested; and that the
9 transcript is a true and complete record of my
10 stenographic notes.
11     I further certify that I am not a
12 relative, employee, attorney, or counsel of
13 any of the parties, nor am I a relative or
14 employee of any of the parties' attorney or
15 counsel connected with the action, nor am I
16 financially interested in the action.
17     Dated this 2nd day of April, 2024.

*Sharon F. Butler*
_____
SHARON F. BUTLER, Court Reporter

Case 1:20-cv-00538-JJM-PAS  Document 47-3  Filed 05/17/24  Page 6 of 12 PageID #: 2064

United States of America ex rel. James R. Berkley v. Ocean State, LLC, et al.

Eric Thompson
March 21, 2024

Page 169

```
 1              CERTIFICATE OF OATH
 2    STATE OF FLORIDA  )
 3    COUNTY OF SARASOTA)
 4          I, the undersigned authority, certify
 5    that ERIC THOMPSON appeared before me and was
 6    duly sworn.
 7          WITNESS my hand and official seal this
 8    2nd day of April, 2024.
 9
10              [signature: Sharon F. Butler]
11
12
13              [notary seal: SHARON F. BUTLER
14               Commission # HH 089253
15               Expires March 30, 2025
                 Bonded Thru Budget Notary Services]
16        SHARON F. BUTLER, Notary Public
17
18              SHARON F. BUTLER
                MY COMMISSION # HH 089253
19              EXPIRES:  MARCH 30, 2025
                Budget Notary Services
20
21
22
23
24
25
```

Page 170

```
 1              ERRATA SHEET
 2    Page   Line   Correction and reason therefor
 3    _____
 4    _____
 5    _____
 6    _____
 7    _____
 8    _____
 9    _____
10    _____
11    _____
12    _____
13    _____
14    _____
15
16        I, ERIC THOMPSON, do hereby state that
17    the foregoing transcript is true and accurate
18    except as above.  Signed this _____ day of
19    _____, 2024.
20
21
22        _____
23        ERIC THOMPSON
24
25
```

Page 171

April 2, 2024

Patrick J. Weeks, Esquire
Kirkland & Ellis LLP
patrick.weeks@kirkland.com

In Re:  United States of America vs. Ocean State, LLC, et al. - Deposition of Eric Thompson taken 3/21/24

Dear Counsel:

This letter is to advise that the transcript of the above-referenced deposition has been completed and is available for review. Please have your client contact Imperial Court Reporting at (941) 260-9000 to make arrangements to read and sign the transcript at our office within 30 days from the date of this letter; otherwise, they may sign below to waive review of this transcript and email this page to the email address below.

In the alternative, if you have purchased a copy of the transcript and will be handling reading and signing, have your client note any corrections on the errata sheet provided and email it to production@imperialcourtreporting.com to be forwarded to all parties for inclusion in the transcript.

Sincerely,

Imperial Court Reporting

cc:  Eric Renner, Esquire

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

Waiver:

I, _____, hereby waive the reading and signing of my deposition transcript.


_____        _____
Witness Signature                     Date

```
 1            UNITED STATES DISTRICT COURT
 2         FOR THE DISTRICT OF RHODE ISLAND
 3   UNITED STATES OF AMERICA    )
     ex rel. JAMES R.            )
 4   BERKLEY,                    )
              Plaintiffs,        )
 5     vs.                       )  No. 1:20-cv-O0538
     OCEAN STATE, LLC, NEW       )
 6   HARBOR CAPITAL FUND LP,     )
     NEW HARBOR CAPITAL FUND     )
 7   II LP, NEW HARBOR           )
     CAPITAL MANAGEMENT LP,      )
 8   BLUEPRINT TEST              )
     PREPARATION, LLC,           )
 9   FYZICAL ACQUISITION         )
     HOLDINGS, LLC,              )
10            Defendants.        )
11
12     The CONFIDENTIAL DEPOSITION of JOHN ROSELLI,
13   called for examination pursuant to the Rules of
14   Civil Procedure for the United States District
15   Courts pertaining to the taking of depositions,
16   taken before MARY KAY ANDRIOPOULOS, Certified
17   Shorthand Reporter in the State of Illinois, at
18   300 North LaSalle Street, Illinois, on
19   March 14, 2024, at the hour of 10:00 a.m.
20
21
22
23
24   REPORTED BY: MARY KAY ANDRIOPOULOS, CSR
25   LICENSE NO.  084-002248
                                                       1
```

```
 1   APPEARANCES:
 2
 3        DUFFY & SWEENEY, LTD.
 4        BY: MR. ERIC E. RENNER
 5        321 South Main Street
 6        Suite 400
 7        Providence, Rhode Island 02903
 8        401.455.0700
 9        Erenner@duffysweeney.com
10              Representing the Plaintiffs;
11
12        KIRKLAND & ELLIS, LLP
13        BY: MR. RYAN MOORMAN
14            MR. PATRICK J. WEEKS
15        300 North LaSalle Street
16        Chicago, Illinois 60654
17        312.862.3755
18        Ryan.moorman@kirkland.com
19        Patrick.weeks@kirkland.com
20              Representing the Defendants.
21
22
23
24
25
                                                       2
```

```
 1                  I N D E X
 2   WITNESS                            EXAMINATION
 3   JOHN ROSSELLI
 4     BY MR. RENNER                       4, 168
 5     BY MR. MOORMAN                      152
 6
 7
 8
 9
10
11               E X H I B I T S
12   NUMBER                          MARKED FOR ID
13   ROSELLI Deposition
     Exhibit No. 1                         4
14   Exhibit No. 2                         4
     Exhibit No. 3                         4
15   Exhibit No. 4                         4
     Exhibit No. 5                         4
16   Exhibit No. 6                         4
     Exhibit No. 7                         4
17   Exhibit No. 8                         4
     Exhibit No. 9                         4
18   Exhibit No. 10 (withdrawn)            4
     Exhibit No. 11                        4
19   Exhibit No. 12                        4
     Exhibit No. 13                        4
20   Exhibit No. 14                        4
     Exhibit No. 15                        4
21   Exhibit No. 16                        4
     Exhibit No. 17                        4
22   Exhibit No. 18                        4
     Exhibit No. 19                        4
23   Exhibit No. 20                        66
24
25
                                                       3
```

```
 1   ***CONFIDENTIAL DEPOSITION OF JOHN ROSELLI***
 2              (Whereupon, ROSELLI Deposition
 3               Exhibit Nos. 1-19 were marked
 4               for identification.)
 5              (Whereupon, the witness was duly
 6               sworn.)
 7              JOHN ROSELLI,
 8   having been first duly sworn, was examined and
 9   testified as follows:
10              EXAMINATION
11   BY MR. RENNER:
12       Q.  Good morning, Mr. Roselli.  My name is
13   Eric Renner.  I represent the plaintiff in a
14   lawsuit pending in Rhode Island Federal Court.
15       I'm here to today for your deposition.
16   I don't know if you've been deposed before or
17   not.
18       A.  I have not.
19       Q.  Never, okay.
20       So I'll just go over kind of some
21   ground rules.
22       I'm going to be asking you questions.
23   If you don't understand my question, please let
24   me know, I'll try to rephrase so that you
25   understand the question; is that okay?
                                                       4
```

**Page 53**

1  would not otherwise have been eligible under the
2  affiliation rules due to New Harbor's ownership?
3      A.   Well, that would just be speculation,
4  because we did.
5           Like we had an SBA loan from Deerpath,
6  and we qualified waiving the affiliation
7  requirements, so --
8      Q.   So did you -- when I say you, I mean
9  Ocean State -- did Ocean State undertake any
10 analysis as to whether or not the affiliation
11 rules would have precluded it from being
12 eligible if the SBIC didn't apply?
13          MR. MOORMAN:  Let him finish his
14 question.
15          Are you done?
16          MR. RENNER:  Yes.
17          THE WITNESS:  So in the -- in the SBA
18 loan explanations that we got from the Small
19 Business Administration, it clearly stated in
20 there affiliation requirements are waived if you
21 already have credit from an SBIC accredited
22 lender.
23          So the affiliation waived the
24 affiliation requirements.
25 BY MR. RENNER:

**Page 54**

1      Q.   Fair enough.
2           My question, though, is if the
3  affiliation rules weren't waived, would you
4  agree that Ocean State would not have been
5  eligible for a PPP loan?
6      A.   I mean, it --
7           MR. MOORMAN:  Objection, calls for
8  speculation, calls for a legal conclusion.
9           THE WITNESS:  So again, we specifically
10 waived the affiliation, because we had SBA
11 lending, so there's no reason to speculate.
12 BY MR. RENNER:
13     Q.   Maybe I'm not asking the question the
14 right way.
15          Let's -- well, so is it fair to say
16 then that because Ocean State determined that it
17 received SBIC funding, it did not undertake any
18 analysis as to whether or not it otherwise would
19 have been precluded under the affiliation rules
20 from eligibility?
21     A.   So we did quite a bit of analysis and
22 consultation with the bankers that facilitated
23 the loan, our CFO did a whole bunch of webinars
24 to try to understand what was going on.
25          You have to remember, the PPP loan

**Page 55**

1  program came out in like late March, and, you
2  know, you were applying like a week later.
3           They had -- they had hotlines that you
4  could call, e-mails you could send, and nobody
5  responded to any of those.  They weren't even
6  picking up the phone.
7           So we had to go with, you know, the
8  legal counsel we were getting and --
9           MR. MOORMAN:  Don't say anything you
10 talked about with lawyers.
11          THE WITNESS:  And, you know, we had to
12 go with, you know, our banker's advice, and all
13 the webinars we were doing, and all the other
14 things we were doing, and it clearly stated in
15 the Small Business Administration explanation
16 documents that you can qualify one of two ways;
17 you know, you have 500 or less employees and a
18 certain amount less revenue, and in that
19 situation you have to identify your affiliates,
20 or if you're already SBIC qualified, you know,
21 getting money from an SBIC qualified lender, you
22 can waive the affiliation requirements.
23 BY MR. RENNER:
24     Q.   All right.  And so if the affiliation
25 rules weren't waived, you'd agree that there

**Page 56**

1  would have been more than 500 employees, right,
2  if you take into account all of the New Harbor
3  --
4      A.   Again, I don't know why we have to
5  speculate.  That wasn't the case.  They were
6  waived.
7      Q.   I know, I mean, I know that's what
8  you're saying, but I just want to confirm,
9  though, that if you -- if Ocean State were to
10 have considered the employees of Ocean State
11 combined with the various other portfolio
12 companies owned by New Harbor, then that would
13 have been more than the 500 employee limit,
14 right?
15     A.   Yes.
16     Q.   Okay.  And likewise --
17     A.   And so that's why the portfolio
18 companies we had that weren't -- that didn't
19 have money from an SBIC lender, did not take PPP
20 money.
21     Q.   Okay.  And like for the same reason you
22 mentioned, the revenue amount would have
23 exceeded the revenue amount allowable --
24     A.   Yes.
25     Q.   -- for a PPP program?  Okay.

**Page 145**

1  MR. MOORMAN: And my objection is the
2  same.
3      The corporate representative is not
4  going to articulate the basis of a legal
5  argument its lawyers are making in a future
6  filing in the midst of that discovery.
7      If he wants to say he's going to rely
8  on his lawyers, he can say he's going to rely on
9  his lawyers.
10     MR. RENNER: All right. So then for
11 No. 17, you know, which continues on to Page 25,
12 the same statement is made about further
13 documents. I assume that the same objection
14 applies?
15     MR. MOORMAN: Right. Like, this is a
16 -- we're going to file a motion for summary
17 judgment, a directed verdict motion, there's no
18 expectation to lay all of that out in an
19 interrogatory.
20     We've already provided significant
21 detail, and certainly no expectation for a
22 witness to testify about that, and I would add,
23 there is considerable detail in the
24 interrogatories already.
25     MR. RENNER: Yeah, the point of my

**Page 146**

1  question is just to figure out what is the
2  universe of factual support for that defense?
3      MR. MOORMAN: It's in the
4  interrogatory, and if there's more documents
5  before the close of fact discovery, if we have
6  more information, we'll supplement the
7  interrogatory. It's a civil obligation to our
8  Rule 37.
9  BY MR. RENNER:
10     Q. All right. So Interrogatory 18 on
11 Page 25 asks Ocean State to state the basis for
12 its fifth affirmative defense that relators
13 claims are barred in whole or in part, because
14 defendants had a reasonable belief in the
15 lawfulness of their conduct, and in your
16 response -- supplemental response on Page 26,
17 among other things, it states that defendants
18 diligently investigated the applicable laws and
19 regulations in order to ensure the lawfulness of
20 their conduct.
21     So what specific laws and regulations
22 did Ocean State investigate?
23     MR. MOORMAN: So I'm going to caution
24 the witness not to disclose any communications
25 that he or anyone else at Ocean State had with

**Page 147**

1  their lawyers.
2      You can answer his question in your
3  capacity as somebody who was involved in the
4  process about what you did to -- or what
5  provides the foundation for your reasonable
6  belief and the lawfulness of your conduct.
7      MR. RENNER: No, but I'm asking him as
8  the 30(b)(6) witness.
9      MR. MOORMAN: You can testify why from
10 a factual point of view based on what you did at
11 the time you had a reasonable belief that Ocean
12 State was acting lawfully.
13     MR. RENNER: I'm asking Ocean State.
14     MR. MOORMAN: I just said that.
15     THE WITNESS: I understand.
16     MR. RENNER: You said you.
17     MR. MOORMAN: I just said Ocean State.
18     THE WITNESS: Yeah.
19     MR. RENNER: No, you said you.
20     I mean, I think we're all on the same
21 page.
22     THE WITNESS: Yeah, yeah.
23     MR. RENNER: When you said you --
24     THE WITNESS: This references Blueprint
25 and Fyzical. I can't speak to that. I'm

**Page 148**

1  talking about Ocean State.
2      So we had the SBA detailed explanation
3  documents of the loan program with a whole bunch
4  of, you know, FAQs that specifically stated in
5  -- specifically stated affiliation requirements
6  are waived for those that already have an SBIC
7  loan from, you know, an SBIC guaranteed lender.
8      So we relied on that. We relied on our
9  bank helping us. We did rely on some legal
10 counsel and --
11     MR. MOORMAN: Don't get into anything
12 with --
13     THE WITNESS: Yeah, I'm not going to --
14     MR. MOORMAN: -- counsel. You can say
15 you consulted with counsel.
16     THE WITNESS: Yeah, and we consulted
17 among the portfolio of New Harbor Capital,
18 because everybody was looking at this, we
19 consulted with Deerpath, and they gave us a lot
20 of advice and counsel, because they were dealing
21 with a lot of their portfolio companies that
22 were dealing with this, so I'm very confident
23 that we were operating legally.
24 BY MR. RENNER:
25     Q. Okay. But my question was specifically

**Page 149**

1  with respect to the applicable laws and
2  regulations that Ocean State investigated, and
3  you mentioned the FAQs regarding affiliation?
4      A.   Yeah.
5      Q.   Other than that, any other laws and
6  regulations?
7           MR. MOORMAN:  Again, don't answer this
8  question to the extent that the rules and
9  regulations were investigated by counsel you
10 retained to assist you in this process.
11          I also object that this question was
12 asked and answered.
13          He provided a full response to this
14 question.
15          THE WITNESS:  Yeah, I told you what we
16 did, so --
17 BY MR. RENNER:
18     Q.   All right.  So the testimony is
19 complete on the record then?
20     A.   Yeah.
21     Q.   Okay.  All right.  So now I want to
22 talk about your dealings with the plaintiff,
23 James Berkley, and I believe you also had
24 interactions with his wife.
25          So this is in your personal capacity as

**Page 150**

1  opposed to your 30(b)(6) capacity.
2      A.   Yeah.
3      Q.   Can you describe for me the
4  communications you had with Mr. Berkley,
5  whether, you know, via e-mail or orally?
6      A.   I think we might have talked on the
7  phone a few times, and I think we exchanged
8  e-mails a few times.
9           Never met in person.
10     Q.   What were the nature of the telephone
11 conversations?
12     A.   It was around our inability to pay our
13 rent, trying to negotiate, you know, rent
14 abatement.
15     Q.   And do you recall the subject being
16 raised by Mr. Berkley of New Harbor Capital
17 contributing funds to pay the rent?
18     A.   Yes.
19     Q.   All right.  What can you tell me about
20 those conversations?
21     A.   Well, I tried to explain to him that
22 that's -- I think my exact words were that's not
23 how it works.
24          So, you know, he was under the
25 impression that there was this sort of an

**Page 151**

1  endless huge bank account that New Harbor had
2  that we could just tap into it, and I made it
3  clear to him that that's not how this works.
4           You know, they're an owner in the
5  business, and they choose to or choose not to
6  invest additional equity.
7      Q.   So that's what you meant by that's not
8  how it works?
9      A.   Yes.
10     Q.   All right.
11     A.   And then he turned off -- and then he
12 turned off our garbage collection and our
13 utilities.
14     Q.   For nonpayment?
15     A.   Because that's what he could do.
16     Q.   Were there other conversations with Mr.
17 Berkley?
18     A.   I mean, I think there was more than
19 one, there was more than one e-mail, but those
20 were the gists of the discussions.
21     Q.   And at some point did you speak to his
22 wife, Heidi Berkley?
23     A.   I think the first discussion was with
24 his wife.
25     Q.   What was the nature of that discussion?

**Page 152**

1      A.   It was letting them know that we were
2  unable to pay rent, and she -- as I remember it,
3  she was, you know, very upset about it, and said
4  that, you know, this is -- you know, we're just
5  a small investor, this is how we pay our -- you
6  know, this is how we pay for our lives, like,
7  you're going to make us go bankrupt.
8      Q.   I have marked for the record -- I don't
9  need to question you about it -- but I have
10 marked for the record as Exhibit 19, Ocean
11 State's responses and objections to the 30(b)(6)
12 notice.
13          MR. MOORMAN:  Understood.
14          (Whereupon, a discussion was had
15           off the record.)
16          MR. RENNER:  That's all I have.
17          MR. MOORMAN:  Okay.  Can I ask some
18 questions?
19          It's okay if we go straight through?
20          MR. RENNER:  Yes.
21          MR. MOORMAN:  Okay.  Great.
22                 EXAMINATION
23 BY MR. MOORMAN:
24     Q.   You can put that to one side, Mr.
25 Roselli.

**Page 169**

1 consult Ocean State's financial records, they
2 would show what they show, right, I mean,
3 they'll show, you know, financial performance in
4 2020 versus 2019?
5     MR. MOORMAN: You don't have to endorse
6 a document you have not seen.
7     If you need to see a document to answer
8 the question, you can say that.
9     THE WITNESS: Yeah, I guess, I would
10 need to see the document to actually --
11 BY MR. RENNER:
12  Q.  I'm just saying in general.
13  A.  You know, it's been a number of years
14 since all this transpired, so it's difficult for
15 me to say 20 -- how we did in 2020 versus '19,
16 so I'd prefer having the document in front of me
17 to answer that question.
18  Q.  And fair enough. I appreciate that.
19     I'm not asking about a specific
20 document.
21     I'm just saying generally speaking,
22 that Ocean State's financial records will bear
23 out, you know, the financial performance of the
24 company?
25     MR. MOORMAN: Are you asking if the

**Page 170**

1 financial records are accurate?
2     THE WITNESS: My --
3     MR. RENNER: Yeah, I mean, they show
4 what they show, right?
5     THE WITNESS: Yeah, my understanding is
6 you have the financial documents, and they'll
7 show what they show.
8     MR. RENNER: That's all I'm asking.
9     THE WITNESS: Okay.
10     MR. MOORMAN: All right. Are you done?
11     MR. RENNER: Done.
12     MR. MOORMAN: All done.
13     THE COURT REPORTER: Signature?
14     MR. MOORMAN: Yes, please.
15     (FURTHER DEPONENT SAITH NOT.)
16     (Proceedings concluded at 2:42 p.m.)

**Page 171**

1       UNITED STATES DISTRICT COURT
2       FOR THE DISTRICT OF RHODE ISLAND
3 UNITED STATES OF AMERICA  )
4 ex rel. JAMES R.          )
5 BERKLEY,                  )
6     Plaintiffs,           )
7  vs.                      ) No. 1:20-cv-00538
8 OCEAN STATE, LLC, NEW     )
9 HARBOR CAPITAL FUND LP,   )
10 NEW HARBOR CAPITAL FUND  )
11 II LP, NEW HARBOR        )
12 CAPITAL MANAGEMENT LP,   )
13 BLUEPRINT TEST           )
14 PREPARATION, LLC,        )
15 FYZICAL ACQUISITION      )
16 HOLDINGS, LLC,           )
17     Defendants.          )
18     I, JOHN ROSELLI, being first duly sworn,
on oath say that I am the deponent in the
19 aforesaid deposition taken on March 14, 2024;
that I have read the foregoing transcript of my
20 deposition, and affix my signature to same.
21 _____
             JOHN ROSELLI
22
Subscribed and sworn to
23 before me this       day
of              , 2024
24
Notary Public
25

**Page 172**

1 STATE OF ILLINOIS   )
2                     )  SS:
3 COUNTY OF C O O K   )
4     I, MARY KAY ANDRIOPOULOS, CSR, a notary
5 public within and for the County of Cook County
6 and State of Illinois, do hereby certify that
7 heretofore, to-wit, on March 14, 2024,
8 personally appeared before me, at 300 North
9 LaSalle Street, Chicago, Illinois, JOHN ROSELLI,
10 in a cause now pending and undetermined in the
11 United States District Court, for the District
12 of Rhode Island, wherein UNITED STATES OF
13 AMERICA ex rel. JAMES R. BERKLEY are the
14 Plaintiffs, and OCEAN STATE, LLC, NEW HARBOR
15 CAPITAL FUND LP, NEW HARBOR CAPITAL FUND II LP,
16 NEW HARBOR CAPITAL MANAGEMENT LP, BLUEPRINT TEST
17 PREPARATION, LLC, FYZICAL ACQUISITION HOLDINGS,
18 LLC are the Defendants.
19     I further certify that the said JOHN
20 ROSELLI was first duly sworn to testify the
21 truth, the whole truth and nothing but the truth
22 in the cause aforesaid; that the testimony then
23 given by said witness was reported
24 stenographically by me in the presence of the
25 said witness, and afterwards reduced to

```
 1   typewriting by Computer-Aided Transcription, and
 2   the foregoing is a true and correct transcript
 3   of the testimony so given by said witness as
 4   aforesaid.
 5        I further certify that the signature to
 6   the foregoing deposition was reserved by counsel
 7   for the respective parties and that there were
 8   present at the deposition the attorneys
 9   hereinbefore mentioned.
10        I further certify that I am not counsel
11   for nor in any way related to the parties to
12   this suit, nor am I in any way interested in the
13   outcome thereof.
14        IN TESTIMONY WHEREOF:  I have hereunto
15   set my verified digital signature this 20th day
16   of March, 2024.
17
18                    _____-
19
20
21            MARY KAY ANDRIOPOULOS, CSR
22            LICENSE NO. 084-002248
23
24
25
                                              173
```

```
 1           McCorkle Court Reporters, Inc.
             200 N. LaSalle Street Suite 770
 2              Chicago, Illinois 60601-1014
 3
 4   DATE:  March 20, 2024
 5   KIRKLAND & ELLIS, LLP
     MR. RYAN MOORMAN
 6   300 North LaSalle Street
     Chicago, Illinois 60654
 7
     IN RE:  USA and BERKLEY V. OCEAN STATE, et al.
 8   COURT NUMBER:  1:20-cv-00538
     DATE TAKEN:  MARCH 14, 2024
 9   DEPONENT:  JOHN ROSELLI
10   Mr. Moorman:
11   Enclosed is the deposition transcript for the
     aforementioned deponent in the above-entitled
12   cause. Also enclosed are additional signature
     pages, if applicable, and errata sheets.
13
     Per your agreement to secure signature, please
14   submit the transcript to the deponent for review
     and signature.  All changes or corrections must
15   be made on the errata sheets, not on the
     transcript itself.  All errata sheets should be
16   signed and all signature pages need to be signed
     and notarized.
17
     After the deponent has completed the above,
18   please return all signature pages and errata
     sheets to me at the above address, and I will
19   handle distribution to the respective parties.
20   If you have any questions, please call me at the
     phone number below.
21
22   Sincerely,
23   Cynthia Alecia        Court Reporter Present:
     Signature Department  Mary Kay Andriopoulos, CSR
24
     cc: All counsel of record
25
                                              174
```

