UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. JAMES R. BERKLEY<br>                Plaintiff,<br><br>     vs.<br><br>OCEAN STATE, LLC,<br>NEW HARBOR CAPITAL FUND LP, NEW HARBOR CAPITAL FUND II LP,<br>NEW HARBOR CAPITAL MANAGEMENT LP, BLUEPRINT TEST PREPARATION, LLC, FYZICAL ACQUISITION HOLDINGS, LLC<br>                Defendants. | C.A. No. 1:20-cv-00538-JJM-PAS |

**REPLY IN SUPPORT OF RELATOR'S MOTION TO COMPEL DISCOVERY OF ATTORNEY-CLIENT COMMUNICATIONS CONCERNING THE LEGAL ADVICE RECEIVED BY DEFENDNTS REGARDING THE PPP LOANS AT ISSUE**

Plaintiff/Relator, United States of America ex rel. James R. Berkley, respectfully submits this reply memorandum in response to defendants, Ocean State, LLC, New Harbor Capital Fund LP, New Harbor Capital Fund II LP, New Harbor Capital Management LP, Blueprint Test Preparation, LLC and Fyzical Acquisition Holdings, LLC's, Opposition to Relator's Motion to Compel Discovery of Attorney-Client Communications Concerning the Legal Advice Received by Defendants Regarding the PPP Loans at Issue ("Opposition"), and responds below to certain arguments set forth in the Opposition.[1]

---

[1] To the extent that Relator does not respond to some arguments raised in the Opposition, he does not intend to waive any arguments and relies on the arguments set forth in his Motion to Compel Discovery of Attorney-Client Communications Concerning the Legal Advice Received by Defendants Regarding the PPP Loans at Issue ("Motion") (ECF 47). Capitalized and abbreviated terms have the same meaning as set forth in the Motion.

## INTRODUCTION

Relator filed the Motion to address the significant prejudice that Defendants have caused by engaging in two deliberate acts in defending against Relator's claims that they violated the False Claims Act: (1) asserting an affirmative defense that they had a subjective good faith belief that their conduct with respect to the PPP applications and the certifications contained therein were lawful and accurate; and (2) relying on information and documents that purportedly evidence their belief that were based on and prepared with the advice of counsel showing (or in the least suggesting) that their attorneys not only reviewed but also subsequently *approved* the Defendants' PPP loans—i.e., redacted emails, so-called "business case" memos, and board of director consents parroting the business case memos—while blocking Relator from taking full discovery of the legal advice Defendants received that might disprove their purported belief.

In their Opposition, Defendants rely heavily on *United States ex rel. Long v. Janssen Biotech, Inc.*, No. CV 16-12182-FDS, 2024 WL 862308 (D. Mass. Feb. 29, 2024). But the *Janssen* case actually supports Relator's position. Unlike in *Janssen*, it is not Defendants' mere disclosure of documents and information in discovery that warrants a waiver of the attorney-client privilege. Rather, it is Defendants' good faith belief defense and their *use* of the documents and information that warrants a waiver. *Janssen*, 2024 WL 862308, at *2-3. Defendants have deliberately placed the supposed good faith belief and documents and testimony built on their attorneys' legal advice concerning the PPP loans squarely in issue, and they are now so enmeshed in the key factual dispute of whether Defendants willfully violated the False Claims Act that it would be unfair to withhold the material. *See Massachusetts Mut. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 293 F.R.D. 244, 249 (D. Mass. 2013).

Defendants also resort to hyperbole in claiming that adopting Relator's position "would mean that every FCA defendant's only options are to admit scienter or waive attorney client

privilege in all FCA cases." Opposition, p. 11. That is absurd. As noted in Relator's initial brief, Defendants are free to assert that they *acted* in good faith by merely presenting objective facts concerning the steps they took to comply with the law without putting at issue their understanding of the law or compliance with the law. But because Defendants assert their subjective good faith *belief* in their compliance with the law—and are relying on documents built on advice of counsel—they implicate advice they received with respect to the PPP loans from their counsel, even if they also might seek to establish their good faith legal compliance through other acts. This is not a novel concept and Relator cited numerous supporting cases in his Motion. *See* Motion, p. 10-12. When one looks beyond Defendants' rhetoric and focuses on their good faith belief defense and their use of documents and information implicating communications they had with their attorneys concerning the PPP loans at issue and the prejudicial inferences that arise therefrom, it is clear that Defendants are improperly using the attorney-client privilege as both a sword and shield to gain an unfair advantage that could mislead the Court and factfinder into believing that Defendants did not willfully violate the False Claims Act.

I. **Because Defendants are Asserting Their Good Faith Belief and Relying on Legal Advice Concerning Their Attorneys' Approvals of PPP Loans at Issue, Fairness Requires Full Disclosure of this Advice as Well as Other Legal Advice They Received on the Subject**

In defending this action in which Relator must show that Defendants acted knowingly in violating the False Claims Act, Defendants are advancing a subjective good faith belief defense and, to support that defense, are relying on documents and testimony showing that their attorneys not only reviewed and informed the conduct that Relator alleges violated the False Claims Act but, more significantly, that the attorneys approved of Defendants engaging in this alleged illegal conduct. Defendants are relying on documents and testimony premised on this legal advice to gain an advantage in the litigation by creating the appearance that their attorneys determined and

advised them that the PPP loans complied with all of the requisite rules and guidance for PPP loans. At a minimum, Defendants are relying on documents concerning their supposed interpretation of and compliance with the law, which implicates the advice they received from counsel concerning the PPP loans. As part of this stratagem, Defendants are also using the attorney-client privilege to block Relator from taking discovery of the attorney-client communications that Defendants' supposed compliance determinations were based upon, including examination of the attorneys' assessments underlying these approvals and the advice Defendants' received concerning whether the PPP loans would violate the False Claims Act.

### A. Defendants Are Using the Attorney-Client Privilege as Both a Sword and Shield in an Attempt to Mislead the Court About Their Knowledge of the Unlawfulness of Their Conduct

Defendants assert an affirmative defense that they had a subjective good faith belief in the lawfulness of their conduct. In support of that defense, Defendants are using the attorney-client privilege as both a sword and shield to attempt to manufacture what effectively would be an irrebuttable inference that could potentially negate Relator's allegation that Defendants acted knowingly in violating the False Claims Act. To accomplish this, Defendants have produced documents, answered interrogatories and allowed management and board members to provide deposition testimony evidencing four general facts supporting their supposed good faith belief:

1. Defendants consulted with attorneys in relation to the PPP loan applications;

2. Defendants believed that all of their conduct with respect to the PPP loan application and all of the certifications contained in the PPP loan applications by Ocean State, Blueprint, and Fyzical were lawful and accurate;

3. Defendants diligently investigated the applicable laws and regulations in order to ensure the lawfulness of their conduct; and

4. The boards of each company reviewed applicable regulations and supporting documentation prior to determining whether to approve the PPP loans and reached the same conclusion that the applications were lawful—including any New Harbor

4

>Defendant employees or agents serving as board members of Ocean State, Fyzical, or Blueprint.

*See* ECF 47-1 at No. 12 and ECF 49-3 (sealed) at No. 18. In support of those assertions, Defendants rely on various emails and other documents that were informed by and prepared based on advice received from Defendants' counsel. *See* ECF 49-3 (sealed) at No. 18. For example, in support of the second assertion, Defendants produced the documents Bates numbered PPPLITDEFS_00011195; PPPLITDEFS_00089390; PPPLITDEFS_00080744; PPPLITDEFS_00084414; and PPPLITDEFS_00090942. Each of these documents includes redacted legal advice concerning the PPP loans at issue. *See* Exhibit 1 hereto (filed separately under seal). In support of the third assertion, Defendants produced PPPLITDEFS_00089323, which also includes redacted legal advice concerning a key issue in this case, namely "the gray area of [Private Equity] owned companies applying for PPP." Id. And in support of the fourth assertion, Defendants produced PPPLITDEFS_00093122; PPPLITDEFS_00080448; and PPPLITDEFS_00092191, each of which again include redacted legal advice. Id.

Moreover, the documents supporting the fourth contention show that the boards of each company reviewed the so-called "business case" memos drafted after the fact with the advice of counsel to "paper the file" with Defendants' supposed need and eligibility analysis, rationale and decision to apply for the PPP loans in connection with the board of director consents approving the PPP loans. That is, these documents show that the Defendants' boards directly relied on the legal advice received from Defendants' counsel in reaching the determination to approve the PPP loans. That legal advice pertains to critical issues involved in this case. For example, Fyzical claims that it qualified for a waiver of the affiliation rules because it had an SBA franchise identifier code and was a "business operating as a franchise." *See* ECF 49-3 at No. 10. Fyzical's PPP business case memo shows that Fyzical solicited and received legal advice from its counsel

5

at Reed Smith about the SBA's guidance regarding the eligibility of franchise operations for PPP loan proceeds.  *See* <u>Exhibit 2</u> to Relator's Motion (filed under seal) at PPPLITDEFS_00079543-PPPLITDEFS_00079544.  Similarly, Ocean State claims that it qualified for a waiver of the affiliation rules because it received SBIC funding.  *See* ECF 47-1 at p, 25.  Ocean State's business case memo shows (or at least suggests) that Ocean State solicited and received legal advice from Reed Smith about Ocean State's application covering both the MSO and the practice entities.  This is important because Ocean State was the MSO (Management Services Organization) that merely provided administrative and management services to the various legally distinct practicing entities that the employees claimed in Ocean State's PPP actually worked for.  Relator contends that each of the practicing entities should have filed a PPP application—not Ocean State as the MSO—and that Ocean State only did so because it was the entity with an SBIC loan.  Relator contends that Ocean State and New Harbor Capital conspired to falsely claim the SBIC affiliation waiver.  Finally, Blueprint claims that its PPP loan was "necessary" and that it qualified for a waiver of the affiliation rules because it received SBIC funding.  *See* ECF 47-1 at p, 25.  Again Blueprint's business case memo shows that Blueprint solicited and received legal advice on one or both of these subjects.  *See* Opposition, p. 4.

> **B.    Fundamental Fairness Requires Discovery into Attorney Advice Because Defendants Are Relying on the Defense of Subjective Good Faith Belief of Legal Compliance**

Defendants' assertion of a subjective good faith affirmative defense is not merely the mirror image of Relator's obligation to establish scienter.  Relator did not file the Motion for an implied waiver because Defendants are asserting a defense that they acted in good faith by reviewing the PPP loans with counsel.  Relator's Motion clearly distinguishes between an "acted in good faith" defense and the much different "good faith belief" defense asserted by Defendants,

with the Motion focusing on the latter.  *See* ECF 47-1 at p, 10-12 (distinguishing between the good faith belief defense and acted in good faith defense).  Because Defendants assert their subjective good faith with respect to matters of legal compliance, a determination of such subjective good faith necessarily depends on the advice given to Defendants by their counsel, even if Defendants do not seek to establish their good faith based on such advice (which they do as discussed above).  Such advice may or may not have been acted upon and colors Defendants' assertion of a subjective good faith belief.   As Relator pointed out in his Motion, where, as here, subjective good faith is asserted with respect to Defendants' understanding and compliance with the law, the party's knowledge about the law is vital, and the advice of counsel is highly relevant to the legal significance of the client's conduct.  *See* Motion, p. 10-12.  Because Defendants assert their subjective good faith in their compliance with the law, it implicates advice they received with respect to the PPP loans from their counsel, even if they wish to establish their good faith legal compliance through other acts.

### C. Unlike in the *Janssen* Case, Defendants are (1) Asserting a Good Faith Belief Defense and (2) Using—Not Merely Disclosing—the Documents and Testimony, Which Constitutes a Waiver

Echoing the defendant in *Janssen,* Defendants argue (falsely) that they have no intention of asserting an advice of counsel defense and do not plan to use any aspect of their communications with counsel at trial.  *See, e.g.*, Opposition, p. 8.  This is just another example of Defendants' gaslighting and speaking out of both sides of their mouth.  In their Second Supplemental Responses to Relator's Contention Interrogatories, Defendants rely on numerous documents that were based on and/or prepared with the advice of counsel to support their subjective good faith argument.  *See* ECF 49-3 (sealed) at No. 18.

The *Janssen* case supports Relator's position and is distinguishable in at least three critical respects. First, the *Janssen* case was limited to the "narrow question of whether the mere production of the [defendant's review committee] documents in discovery constituted an implied waiver of the attorney-client privilege." 2024 WL 862308, at *3. Second, in *Jenssen*, the defendant affirmatively represented to the court that it was not and had no intention of ever asserting a defense based on its subjective good faith belief that the subject marketing programs were legal. 2024 WL 862308, at *2. Here, of course, Defendants assert a defense that they subjectively believed that their conduct was lawful and accurate and complied with the appliable PPP rules and guidance. Third, the defendant in *Jenssen* also represented that it had no intention of ever (i) relying on privileged legal advice or (ii) asserting or implying that its attorneys determined the programs were legal in support of a subjective good faith belief defense. Here, however, despite their claim to the contrary, Defendants are specifically relying on and have stated their intent to *use* documents in evidence at trial that show that: (1) Defendants and their boards approved the PPP loans; and (2) the approvals were based on advice given to Defendants and their boards from their counsel, which in the very least would have the practical effect of suggesting to the jury that their lawyers had approved the PPP loans. Likewise, Defendants are relying on testimony to the same effect: that their attorneys reviewed and approved the PPP loans. Id. That constitutes an implied waiver, requiring the production of otherwise privileged information. Thus, unlike in *Janssen*, it is not Defendants' mere disclosure of documents and information in discovery that warrants a waiver of the attorney-client privilege, but rather it is Defendants' *use* of the documents and information that warrants a waiver. *Janssen*, 2024 WL 862308, at *2–3.

8

**II.     In the Alternative, Defendants Should be Precluded from Asserting a Defense That They Had a Good Faith Belief That the PPP Loans Were Lawful and Accurate**

Relator submits that the Court should rule that Defendants have impliedly waived the attorney-client privilege and must produce the communications they had with their attorney concerning the PPP loans at issue. Alternatively, the Court should: (1) preclude Defendants from using in the litigation any documents and communications concerning their analysis of the PPP loans and PPP loan need and eligibility to support any defense to Relator's claims; and (2) strike Defendants' denials and affirmative defense that they had a good faith belief in the lawfulness of their conduct.

## CONCLUSION

For the foregoing reasons, and for those previously stated in Relator's Motion, Relator respectfully requests that the Motion be GRANTED in its entirety and the Court should order that Defendants have impliedly waived the attorney-client privilege and must produce the communications they had with their attorney concerning the PPP loans at issue. Alternatively, the Court should: (1) preclude Defendants from using in the litigation any documents and communications concerning their analysis of the PPP loans and PPP loan need and eligibility to support any defense to Relator's claims; and (2) strike Defendants' denials and affirmative defense that they had a good faith belief in the lawfulness of their conduct.

Respectfully submitted,

Plaintiff,
UNITED STATES OF AMERICA *ex rel*
JAMES R. BERKLEY

By His attorneys,

/s/ Eric E. Renner
Eric E. Renner (#7481)
DUFFY & SWEENEY, LTD
321 South Main Street, Suite 400
Providence, RI  02903
Phone: 401-457-1803
Fax: 401-457-0701
erenner@duffysweeney.com

Date:  June 7, 2024

## CERTIFICATE OF SERVICE

    I hereby certify that on the 7th day of June, 2024, a true copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and copies will be mailed to those indicated as non-registered participants.

/s/ Eric E. Renner