UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THE UNITED STATES OF AMERICA *ex rel.* JAMES R. BERKLEY,<br><br>      Plaintiff,<br><br>v.<br><br>OCEAN STATE, LLC; NEW HARBOR CAPITAL FUND, LP; NEW HARBOR CAPITAL FUND II, LP; NEW HARBOR CAPITAL MANAGEMENT LP; BLUEPRINT TEST PREPARATION, LLC; and FYZICAL ACQUISITION HOLDINGS, LLC,<br><br>      Defendants. | Civil Action No. 20-CV-00538-JJM-PAS |

**THE UNITED STATES OF AMERICA'S STATEMENT OF INTEREST**

Pursuant to 28 U.S.C. § 517, the United States of America respectfully submits this Statement of Interest to address an issue raised by the parties' summary judgment briefing. Specifically, Defendants' Motion for Summary Judgment (ECF No. 75) and Defendants' Opposition to Relator's Motion for Summary Judgment (ECF No. 79) assert that materiality under the False Claims Act (FCA) depends exclusively upon the actual behavior of the government, in this case, whether the government has demanded repayment of the Paycheck Protection Program ("PPP") loans at issue. As discussed below, under *Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016) ("*Escobar*"), materiality under the FCA is determined by a holistic analysis of numerous factors, none of which are automatically dispositive of the materiality inquiry. One potentially relevant factor identified by the *Escobar*

court is the government's continued payment of claims. However, this factor is relevant only if the government paid with actual knowledge that requirements were violated. Awareness of mere allegations of noncompliance has no bearing on the materiality inquiry.

The United States is not a party to this action because it has not intervened in this case. Nevertheless, the United States remains the real party in interest, entitled to receive the majority of any recovery. *See* 31 U.S.C. § 3730(d); *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 934–35 (2009). Additionally, because the FCA is the United States' primary civil tool for redressing fraud against the government, the United States has a substantial interest in the proper interpretation of FCA law. *See United States ex rel. Doe v. Staples, Inc.*, 773 F.3d 83, 84 (D.C. Cir. 2014) (citing S. Rep. No. 99-345, at 2, 4 (1986)). The United States, therefore, submits this Statement of Interest to clarify the applicable case law on the materiality issue.

The United States takes no position on the facts the parties contend are disputed or undisputed; it submits this Statement of Interest solely to address relevant points of law. Neither the Court nor the parties should construe the fact that the United States is not providing its views on other arguments or issues as support or opposition.

## DISCUSSION

### I. Materiality Is Determined by a Holistic Analysis of Multiple Factors.

False claims must be "material" to the government's decision to pay in order to provide a basis for liability under the FCA. The FCA defines the term "material" as

"having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). In *Escobar*, the Supreme Court stressed that this definition was the same as that employed in "other federal fraud statutes," which "descends from 'common-law antecedents.'" 579 U.S. at 192–93. The court explained that the same basic concept of materiality applies in all of these contexts and focuses upon "'the effect on the *likely or actual* behavior of the recipient of the alleged misrepresentation.'" *Id.* at 193 (emphasis added) (quoting 26 R. LORD, WILLISTON ON CONTRACTS § 69:12, at 549 (4th ed. 2003)). The court stated that "a matter is material" if: (1) a reasonable person would attach importance to it in determining a "choice of action," or (2) "the defendant knew or had reason to know that the recipient of the representation attaches importance to the specific matter in 'determining his choice of action,'" regardless of whether a reasonable person would do so. *Id.* While drawing on numerous fraud statutes, *Escobar* framed the test of materiality under the FCA in terms of the likely effect on the government's decision to pay in whole or in part when the government has actual knowledge of non-compliance with a particular requirement. *See id.* at 195 (stating that proof of materiality can include whether government consistently "refuses to pay claims" or "pays a particular claim in full").

The Supreme Court clarified that a variety of factors are relevant to the materiality inquiry and stressed that no one factor is automatically dispositive. *Id.* at 191 (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 39 (2011)); *see also United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 109 (1st Cir.

3

2016) ("*Escobar II*"). Thus, the materiality inquiry may consider whether the government took action when it had actual knowledge of similar violations, *Escobar*, 579 U.S. at 195; whether the violation goes to the "essence of the bargain," *id.* at 193 n.5 (quoting *Junius Constr. Co. v. Cohen*, 178 N.E. 672, 674 (N.Y. 1931)); and whether the violation is significant or "minor or insubstantial," *id.* at 194. The court also explained that designation of a particular statutory, regulatory, or contractual requirement as a condition of payment is relevant to the materiality inquiry, but it rejected the notion that the designation could be "automatically dispositive" as a matter of law. *Id.* The Supreme Court's fact-based approach to materiality thus requires courts to view materiality holistically and practically, rather than as being dictated by formal designations.

## II. The Government's Action in Continuing to Pay Claims Is Only Relevant to Materiality When the Government Has Actual Knowledge of the Misconduct, Not Mere Awareness of Allegations

Defendants argue that Relator cannot establish materiality because "the government knew of Relator's accusations about the PPP loan applications, but chose to do nothing." *See* ECF No. 79 at 42. This, according to Defendants, demonstrates that Relator's "accusations [are] immaterial as a matter of law." ECF No. 75-1, at 38.; *see also* ECF No. 79, at 42. Defendants' argument is inconsistent with *Escobar*.

Government action may bear on materiality only when the paying agency has "*actual knowledge* that certain requirements were violated." *Escobar*, 579 U.S. at 195 (emphasis added). Following *Escobar*, the federal Courts of Appeal, including the

4

First Circuit, have consistently held that governmental awareness of a relator's allegations is not the same as actual knowledge of violations for purposes of establishing materiality. *See, e.g.*, *Escobar II*, 842 F.3d at 112 (holding that "mere awareness of allegations concerning noncompliance" does not show "knowledge of actual noncompliance"); *accord United States ex rel. Heath v. Wisconsin Bell, Inc.*, 92 F.4th 654, 665 (7th Cir. 2023) ("The government's knowledge of a pending lawsuit making allegations simply does not indicate actual knowledge of actual violations."); *United States ex rel. Druding v. Care Alts.*, 81 F.4th 361, 375 (3d Cir. 2023) ("Like our sister circuits, we will not equate the government's awareness of allegations of fraud with 'actual knowledge' that fraud occurred."); *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 906–07 (9th Cir. 2017) (holding that continued payment of claims by the government cannot be dispositive where the "parties dispute exactly what the government knew and when, calling into question its 'actual knowledge'"). Indeed, in assessing materiality, "it makes sense not to place much weight on the government's response in the wake of such [*qui tam*] litigation because, prior to discovery and a formal court ruling, the relator's allegations are just that—allegations, and the government may not necessarily have knowledge of all the material facts." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 115 (2d Cir. 2021).

Courts have also recognized that a federal agency may decide not to suspend payment to a potentially liable FCA defendant for a variety of reasons unrelated to the materiality of the defendant's false claims, and that drawing inferences about materiality from those agency decisions would be improper. *See, e.g.*, *United States*

5

*ex rel. USN4U, LLC v. Wolf Creek Fed. Servs. Inc.*, 34 F.4th 507, 517 (6th Cir. 2022) ("There are a variety of factors unrelated to the materiality of the allegations that could cause the Government to continue contracting with a party after the Government becomes aware of alleged fraud"—*e.g.*, "there could be a lack of other suppliers" or "other feasible procurement options," or "there could be high 'costs associated with implementing another bidding process[.]'"); *United States ex rel. Prose v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 744 (7th Cir. 2021) (holding that complaint adequately alleged materiality despite government's continued contracting with defendant because "[m]any things could explain the government's continued contracting," such as "need[ing] time to work out a way not to prejudice Medicaid recipients"); *United States ex rel. Cimino v. Int'l Bus. Machs. Corp.*, 3 F.4th 412, 423 (D.C. Cir. 2021) (holding that, at motion to dismiss stage, lack of materiality could not be inferred from the government's decision to extend a license agreement with the defendant after learning of the relator's allegations, because it was plausible that the government "continued to pay for the licenses for any number of reasons that do not render IBM's fraud immaterial"); *see also United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 917 (4th Cir. 2003) (noting that the government "might choose to continue funding the contract despite earlier wrongdoing by the contractor" because the contract is "advantageous to the government" or is too far along to terminate). Thus, "[w]hile *Escobar* articulated that continued payment despite knowledge of fraud often indicates lack of materiality, 'often' does not mean

'always.'" *United States ex rel. Aldridge v. Corp. Mgmt., Inc.*, 78 F.4th 727, 738 (5th Cir. 2023).

The cases cited by Defendants do not support their argument that the government's inaction after receiving a relator's allegations warrants summary judgment to Defendants on materiality grounds. *See* ECF No. 79, at 3–4, 41; ECF No. 75-1, at 36–39. Two of the cases cited by Defendants hinged on the sufficiency of allegations at the motion to dismiss stage, not on the sufficiency of relator's evidence at summary judgment. In *D'Agostino v. EV3, Inc.*, 845 F.3d 1, 7–10 (1st Cir. 2016), the court affirmed dismissal of the relator's fraudulent inducement claims because the relator failed to plausibly allege a causal link between the alleged fraudulent representations and the government's payment of claims. The court's only observation about the materiality of the alleged fraudulent representation was made in passing. In *Zotos v. Town of Hingham*, 98 F.4th 339, 345 (1st Cir. 2024), the court affirmed dismissal of the relator's claims for lack of materiality because the relator failed to plausibly allege that compliance with the federal requirements at issue relating to "ultra vires" speed limit signs "was necessary for federal funding" under the Federal-Aid Highway Program or went to the "essence of the bargain." *Id.* In coming to this conclusion, the court assumed that the government was not aware of the falsity of the defendants claims, and commented *in dicta* that the relator's *qui tam* complaint was one of "multiple prior occasions" over a decade where relator had sued the town concerning speed limit signs. *Id.* at 342, 345.

In four other cases cited by Defendants, decided at summary judgment, the courts pointed to evidence that the government had actual knowledge of misconduct. *See United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 334 (9th Cir. 2017) (relator "failed to establish a genuine issue of material fact regarding . . . materiality" where undisputed facts demonstrated that the agency was aware of defendant's noncompliance with contractual requirement, continued paying under the contract, and eventually eliminated the requirement altogether because "it provided minimal benefit"); *United States ex rel. Janssen v. Lawrence Mem'l Hosp.*, 949 F.3d 533, 539, 542 (10th Cir. 2020) (evidence was insufficient to raise a dispute of fact as to materiality, where the evidence showed that a Medicare contractor had investigated the relator's fraud allegations and the contractor's documentation confirmed that Medicare had been made "aware of quality issue" following completion of the investigation, but continued paying claims);[1] *United States ex rel. McBride v. Halliburton Co.*, 848 F.3d 1027, 1034 (D.C. Cir. 2017) (affirming summary judgment to contractor because following receipt of a *qui tam* complaint, the government "investigated [the Relator's] allegations and did not disallow any charged costs"); *United States ex rel. Miller v. ManPow, LLC*, No. 2:21-cv-05418, 2024 WL 305699, at *15–16 (C.D. Cal. Jan 3, 2024) (granting summary judgment to PPP loan recipient defendants after finding no dispute of fact that "the

---

[1] In *Janssen*, the Tenth Circuit also observed that its holding was not inconsistent with *Escobar II*, because *Escobar II* "assessed the sufficiency of a complaint at the motion to dismiss stage, finding that potential knowledge of allegations was insufficient to warrant dismissal," while *Janssen* affirmed a grant of summary judgment. *See Janssen*, 949 F.3d at 542 n.13. The court noted that "[i]t is not inconsistent to state that knowledge of allegations is insufficient, alone, to warrant dismissal under Rule 12(b)(6) and yet constitutes some evidence of immateriality under Rule 56(a)." *Id.*

[Small Business Administration (SBA)] separately reviewed each of Defendant's forgiveness applications and sought payroll provider records" and engaged in an "thorough and interactive SBA review process" and that "the SBA has reviewed all of Relators' allegations" and refrained from taking action).

Further, in support of their argument concerning the government's inaction, the Defendants omit certain facts that may be relevant to materiality. Specifically, the declaration submitted by an SBA representative states that "SBA did not conduct a manual review" of Defendants' PPP loan forgiveness application packages, ECF No. 75-70, Ex. 79, Frulla Decl. ¶¶ 12, 20, 26, contrary to Defendants' contentions. *See* ECF No. 75-1, at 38 ("SBA also conducted contemporaneous 'Loan Review(s)' 'related to' both Ocean State and Fyzical's 'PPP loan forgiveness application' in 2020 and early 2021 . . . ."); ECF No. 79, at 44 ("[T]the government has fully considered Relator's allegations . . . ."). Further, the declarations submitted by SBA do not state that the agency "has been fully aware" of relator's allegations, contrary to Defendants' argument. *Compare* ECF No. 75-69, Ex. 78, Zelaya Decl.; ECF No. 75-70, Ex. 79, Frulla Decl., *with* ECF No. 79, at 3–4 ("The SBA has provided affidavits confirming it has been fully aware of Relator's allegations for years but has declined to require repayment of the loans . . . .").

Moreover, the United States' decision to decline intervention in this case does not support Defendants' assertion that materiality is lacking. *See United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 892 F.3d 822, 836 (6th Cir. 2018) (finding "government's decision not to intervene" to be "unpersuasive" in materiality

9

inquiry). Indeed, even in the *Escobar* case, the government had declined to intervene, "and the Supreme Court did not mention this as a relevant factor in its materiality analysis." *Id.* (citing *Escobar*, 579 U.S. at 185). "[I]ntervention decisions are, at best, of minimal relevance" because there are many non-merits-based reasons for the government's litigation choices, ranging from the conservation of scarce prosecutorial resources to the prioritization of other cases. *United States ex rel. Int'l Bhd. of Elec. Workers Loc. Union No. 98 v. Farfield Co.*, 5 F.4th 315, 346 (3d Cir. 2021). And even merits-based reasons for declination might have nothing to do with the materiality of a defendant's alleged course of conduct. There is accordingly no basis for drawing any inferences with respect to materiality when the government has decided not to intervene in a *qui tam* action and permit a relator to proceed with the litigation as permitted by 31 U.S.C. § 3730(d)(2).

The United States urges the Court to refrain from adopting Defendants' narrow interpretation of materiality. As noted above, there are many possible explanations for the government's payment decisions, and it would be inappropriate to draw inferences from those decisions, or lack thereof, absent evidence that the government had actual knowledge of misconduct. Again, the United States takes no position as to whether the facts related to materiality as put forward in Defendants' and Relator's briefs are in dispute.

## CONCLUSION

For these reasons, the Court should follow the *Escobar* materiality standard, which requires a holistic assessment of materiality, with no one factor necessarily

dispositive, and considers government action relevant only when the paying agency acts with actual knowledge that a requirement was violated.

Dated: February 14, 2025

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

BRETT A. SHUMATE
Acting Assistant Attorney General

ZACHARY A. CUNHA
United States Attorney

*/s/ Kevin Love Hubbard*
Kevin Love Hubbard
Assistant United States Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel: (401) 709-5000
Fax: (401) 709-5001
Kevin.Hubbard@usdoj.gov

Jamie Ann Yavelberg
Allison Cendali
Sarah E. Loucks
Attorneys, Civil Division
U.S. Department of Justice
P.O. Box 261, Ben Franklin Station
Washington, DC 20044
Phone: (202) 616-2921
Fax: (202) 307-6364
Sarah.E.Loucks@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 14, 2025, I electronically filed the within Statement of Interest with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System, thereby serving it on all registered users in accordance with Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rule Gen 305.

Dated: February 14, 2025

                                            */s/ Kevin Love Hubbard*
                                            Kevin Love Hubbard
                                            Assistant United States Attorney