UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. JAMES R. BERKLEY,<br>     Plaintiff,<br><br>    vs.<br><br>OCEAN STATE, LLC,<br>NEW HARBOR CAPITAL FUND LP, NEW HARBOR CAPITAL FUND II LP,<br>NEW HARBOR CAPITAL MANAGEMENT LP, BLUEPRINT TEST PREPARATION, LLC, FYZICAL ACQUISITION HOLDINGS, LLC,<br>     Defendants. | C.A. No. 1:20-cv-00538-JJM-PAS |

**RELATOR'S SUR-REPLY TO DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Relator respectfully submits this sur-reply brief in response to Defendants' reply brief and in further opposition to Defendants' motion for summary judgment (ECF 96-1) ("Reply") and responds below to certain arguments set forth in the Reply.

**I.** ***Dewberry Group, Inc. v. Dewberry Engineers Inc.***

Defendants argue that "Relator's attempt to hold the New Harbor Defendants liable for the actions of separate companies is foreclosed by [] well-established principles" of corporate law referenced in the U.S. Supreme Court's recent decision in *Dewberry Grp., Inc. v. Dewberry Eng'rs Inc.*, 145 S. Ct. 681 (2025). Not so. Defendants attempt to stretch *Dewberry* beyond its narrow holding on the Lanham Act text at issue in that case. As Defendants' own law firm noted, "the *Dewberry* decision is simultaneously clear in the narrow holding it reaches but leaves much undecided." *See* **Exhibit 1**, Kirkland Alert, March 4, 2025, *Supreme Court Clarifies Scope of*

1

*Disgorgement Awards in Trademark Cases*.

The U.S. Supreme Court's decision in *Dewberry* was narrowly focused on one question: whether the trial court erred in treating the profits of defendant's affiliates as "defendant's profits" within the meaning of the Lanham Act.  *Dewberry*, 145 S. Ct. at 685.  The decision reversed a $43 million award that the lower courts had granted to Dewberry Engineers, a competitor of Dewberry Group, based on the aggregated profits of Dewberry Group and its property-owning affiliates.  *Id.* at 686.  The Supreme Court emphasized that the Lanham Act's remedies provision, 15 U.S.C. § 1117(a), allows for the recovery of the "defendant's profits" only, not those of affiliated companies.  *Id*. at 686.  The Supreme Court clarified that the term "defendant" in the Lanham Act refers solely to the party named in the lawsuit, which in this case was Dewberry Group alone, not any of the affiliate companies, as Dewberry Engineers had argued, and thus the affiliates' profits should not have been recoverable.  *Id*.  The Court based its reasoning in part on the principle of corporate separateness, which maintains the separate legal identities of affiliated companies unless there is a valid reason to pierce that separation.  *Id.* at 686-87.  Because Dewberry Engineers never argued for piercing the corporate veil, and neither lower court did so, the Court held that the need to respect corporate formalities, combined with the Lanham Act's text and the principle that trademark remedies should be specific to the defendant's wrongful conduct, meant that "defendant's profits" under the Lanham Act should be understood to only apply to the named Defendant.  *Id.* at 687-88.  The Supreme Court, therefore, vacated the trial court's monetary award and remanded the case for further factual determinations consistent with the opinion.

As noted in the Kirkland Alert, *see* **Exhibit 1**, p. 2, in deciding only the narrow issue before it, the Supreme Court explicitly noted that there were three questions that fell outside the scope of its ruling: (1) the use of the "just-sum provision" in the Lanham Act to adjust disgorgement awards

2

based on the defendant's true financial gain; (2) the examination of a defendant's tax or accounting records to understand the economic realities; and (3) the possibility of veil-piercing in the case on remand. *Dewberry*, 145 S. Ct. at 688. As to veil piercing, the Supreme Court reasoned that Dewberry Engineers had not made this argument before the trial court or on appeal, and, thus, that issue should return to the district court for consideration on remand.

Justice Sotomayor filed a concurring opinion which laid out a roadmap for the lower courts to disgorge affiliated companies' profits while remaining faithful to the Court's holding in *Dewberry*. Her concurrence emphasizes that principles of corporate separateness neither prevent courts from considering practical business realities, nor do they force courts to accept corporate accounting schemes that seek to obscure a defendant's true financial gain via its relationship with affiliates.

> I write separately to underscore that principles of corporate separateness do not blind courts to economic realities. Nor do they force courts to accept clever accounting, including efforts to obscure a defendant's true financial gain through arrangements with affiliates. To the contrary, there are myriad ways in which courts might consider accounting arrangements between a defendant and its affiliates in calculating a "defendant's profits" … This is all to say that principles of corporate separateness do not force courts to close their eyes to practical realities in calculating a "defendant's profits" … Courts must be attentive to practical business realities for our Nation's trademark laws to function, and the Lanham Act gives courts the power and the duty to do so.

*Id*. at 688-90.

To illustrate this point, Justice Sotomayor provided specific examples pointing to a lack of corporate separateness between a defendant and its affiliate bearing on the defendant's profits (e.g., a company charging below-market rates to its affiliate for infringing services) and where a court could exercise its equitable powers to hold that an affiliate's revenues are properly within the defendant's profits. *Id*. at 689-90. And the concurrence specifically directs the lower courts to

3

"explore that important issue and consider reopening the record if appropriate" on remand. *Id*. at 690.

Justice Sotomayor's concurrence sends a powerful message to corporate defendants who read the court's decision as an invitation to abuse corporate separateness as monetary-liability safe-havens. Justice Sotomayor did not mince words in proclaiming that courts have the equitable power to decide when to pierce the corporate veil and disregard the separate corporate existence of two entities when the facts suggest it is necessary to do justice.

This case stands on very different footing than *Dewberry*. For one thing, unlike in *Dewberry*, the text of the federal statute at issue does not weigh against a determination that that Ocean State, Fyzical Holdings and Blueprint had the ability to access liquidity from New Harbor Capital. Nothing in the CARES Act mandates that New Harbor Capital's liquidity cannot be considered when considering whether Ocean State, Fyzical Holdings and Blueprint made the necessity certification in good faith.

Moreover, Relator is asking this Court to do exactly what the plaintiff in *Dewberry* did not ask and what the Supreme Court instructed the trial court to consider on remand: invoke veil piercing to reflect economic realities. Here, Relator explained that veil piercing is appropriate because Defendants cannot misuse the corporate form to circumvent the PPP loan program and create the fiction that Ocean State, Fyzical Holdings and Blueprint did not have the ability to access liquidity from New Harbor Capital when New Harbor Capital exercised direct control over these companies. ECF 91, Page 39-43. As Relator noted, in federal common law veil piercing cases involving federal statutes, the First Circuit has consistently refused to give effect to the corporate form where, as here, it is interposed to defeat legislative policies. *See* ECF 91, Page 41-42, *citing Bhd. of Locomotive Engineers v. Springfield Terminal Ry. Co*., 210 F.3d 18, 26–27 (1st Cir. 2000).

4

## II.     Defendants' Exhibit 108 is More Inadmissible Hearsay

Defendants seek to rely on an unsworn excerpt of the expert report from their private equity expert witness, Gustavo Schwed, to support their argument that Ocean State, Fyzical Holdings and Blueprint did not have the ability to access liquidity from New Harbor Capital. *See* Reply, ECF 96-1, Page 28. However, the unsworn excerpt from Mr. Schwed's report is inadmissible hearsay that cannot be considered as part of the summary judgment record. *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) (excluding expert report from consideration on summary judgment as hearsay when the substance of the report was not sworn to by expert while noting that a third party's description of an expert's supposed testimony is not "suitable grist for the summary judgment mill") (internal citations omitted); *Ramirez-Ortiz v. Corporacion Del Centro Cardiovascular de Puerto Rico y Del Caribe*, 32 F. Supp. 3d 83, 88 (D.P.R. 2014), *citing Pack v. Damon Corp.*, 434 F.3d 810, 815 (6th Cir.2006) (expert report was "unsworn and thus is hearsay, which may not be considered on a motion for summary judgment"); *Capobianco v. City of N.Y.*, 422 F.3d 47, 55 (2d Cir.2005) (stating that unsworn physician's letters "generally are inadmissible hearsay that are an insufficient basis for opposing a motion for summary judgment"); *Wilgus v. F/V SIRIUS, INC.*, No. CIV. 08-225-P-H, 2009 WL 1372963, at *9 (D. Me. May 14, 2009) (same).

Accordingly, the Court should strike and not consider Exhibit 108 and should disregard Defendants' arguments concerning Exhibit 108.

        Respectfully submitted,

        /s/ Eric E. Renner
        Eric E. Renner (#7481)
        DUFFY & SWEENEY, LTD
        321 South Main Street, Suite 400
        Providence, RI  02903
        Phone: 401-457-1803
        Fax: 401-457-0701
        erenner@duffysweeney.com

        *Attorneys for Plaintiff-Relator,*
        *United States of America ex rel James R. Berkley*

Date:  March 17, 2025


## CERTIFICATE OF SERVICE

    I hereby certify that on the 17th day of March, 2025, a true copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and copies will be mailed to those indicated as non-registered participants.

        /s/ Eric E. Renner

# **EXHIBIT 1**

# KIRKLAND & ELLIS

Kirkland Alert

# Supreme Court Clarifies Scope of Disgorgement Awards in Trademark Cases

04 March 2025

On February 26, 2025, the U.S. Supreme Court unanimously held in *Dewberry Group, Inc. v. Dewberry Engineers Inc.* that (subject to exceptions) an award of a defendant's profits under the Lanham Act must be limited to only those "profits properly ascribable to the defendant itself." As discussed below, the *Dewberry* decision is simultaneously clear in the narrow holding it reaches but leaves much undecided.

*Dewberry* involves a dispute between two unrelated real estate companies. The plaintiff, Dewberry Engineers Inc. ("Dewberry Engineers"), provides real estate development services for commercial entities in connection with its DEWBERRY mark. The sole named defendant, Dewberry Group, Inc. ("Dewberry Group"), is a commercial real estate company owned by John Dewberry that provides services solely to 30 separately incorporated companies also owned by Mr. Dewberry. The enterprise is structured so the affiliate companies own commercial property and collect rents while Dewberry Group provides the affiliates with necessary financial, legal and marketing services in exchange for a fee. According to tax returns, Dewberry Group has operated at a loss for decades while the affiliates have generated tens of millions of dollars in profits.

Dewberry Engineers previously sued Dewberry Group for infringing its DEWBERRY mark and settled the case. Ten years later, Dewberry Group reneged on the settlement, and Dewberry Engineers filed the present lawsuit. The district court found Dewberry Group liable for willful infringement and entered a disgorgement award that lumped together all of the profits from the individual affiliates on the grounds that treating all of the affiliates and Dewberry Group as a single entity would reflect the "economic reality" and was necessary to avoid allowing the "entire Dewberry Group enterprise" from evading the consequences of its willful infringement. Notably, the affiliates were not named as defendants, and there was no claim made to pierce the corporate veil between them and Dewberry Group. The U.S. Court of Appeals for the Fourth Circuit

affirmed on similar "economic reality" grounds to those expressed by the district court.

In a unanimous opinion drafted by Justice Elena Kagan, the Supreme Court vacated and remanded. The Court based its holding on the statutory language stating that a plaintiff who prevails on certain Lanham Act claims (trademark infringement, false designation of origin, false advertising, willful dilution and cybersquatting) is entitled to "recover [the] **defendant's** profits" (emphasis added). According to the Court, "defendant" refers to "the party against whom relief or recovery is sought in an action or suit." It was thus inappropriate for the lower courts to allow an award disgorging the profits of other entities not named as defendants in the suit. The Court also said its holding is bolstered by principles of corporate law, which generally require recognizing separately formed corporations as separate legal entities with distinct rights and obligations. It is thus clear that a court disgorging profits under the Lanham Act must generally base its calculation of the amount of the defendant's profits on only those profits appropriately attributable to the defendant. But the analysis does not end there.

The Court expressly declined to decide several issues that could have a significant impact on the monetary award. **First**, the Court declined to consider whether a court may award a nonparty affiliate's profits under the Lanham Act clause allowing a court to deviate from the defendant's actual profits and award as disgorgement "such sum as the court shall find to be just." According to the Supreme Court, that issue was not before it because the lower courts did not base their holdings on that provision. **Second**, the Court declined to opine on when, irrespective of the "just-sum" provision, courts may look behind a defendant's tax or accounting records to consider the "true economic realities" of a transaction in identifying the defendant's "true financial gain." **Third**, the Court declined to reach whether corporate veil piercing is an available option on remand.

The Court thus gave a clear answer to a narrow question while leaving much broader questions unanswered. What are the takeaways to consider?

1. Parties addressing Lanham Act disgorgement claims may want to consider which entities at least nominally earn profits and assess their litigation strategies accordingly;
2. Expect decisions in the coming years to define the contours of the "just-sum" provision of the Lanham Act, including whether and when it may be used to justify an award of profits earned by nonparties (such as corporate affiliates);
3. Expect decisions in the coming years to define the contours of whether and when the "true economic realities" of a transaction allow a court to treat profits at least

nominally earned by a nonparty as the defendant's true financial gain; and

4. Corporate veil-piercing theories remain available in appropriate cases.

## Author

Lauren Schweitzer

Partner  /  Los Angeles – Downtown

## Related Services

### Practices

- Intellectual Property
- Trademark Litigation & Counseling

## Suggested Reading

- 04 March 2025 Press Release Kirkland Advises Pennybacker on Strategic Partnership with Maslow's Campus Communities
- 03 March 2025 Press Release Kirkland Represents Warburg Pincus-backed ModMed in Majority Growth Investment by Clearlake
- 03 March 2025 Award Kirkland Partner Kat Li Receives 2025 J. Stephen Ravel Award

This publication is distributed with the understanding that the author, publisher and distributor of this publication and/or any linked publication are not rendering legal, accounting, or other professional advice or opinions on specific facts or matters and, accordingly, assume no liability whatsoever in connection with its use. Pursuant to applicable rules of professional conduct, portions of this publication may constitute Attorney Advertising.

© 2025 Kirkland & Ellis LLP.