UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* JAMES R. BERKLEY,<br>    Plaintiff,<br><br>v.<br><br>OCEAN STATE, LLC; NEW HARBOR CAPITAL FUND, LP; NEW HARBOR CAPITAL FUND II LP; NEW HARBOR CAPITAL MANAGEMENT LP; BLUEPRINT TEST PREPARATION, LLC; and FYZICAL ACQUISITION HOLDINGS, LLC,<br>    Defendants. | C.A. No. 20-cv-538-JJM-PAS |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., Chief Judge, United States District Court.

Under the qui tam provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3730, Relator James R. Berkley filed this lawsuit against Defendants Ocean State, LLC, Blueprint Test Preparation, LLC, Fyzical Acquisition Holdings, LLC ("PPP Recipients"), New Harbor Capital Fund LP, New Harbor Capital II LP, and New Harbor Capital Management LP ("New Harbor"), alleging that they violated the FCA by applying for and receiving Paycheck Protection Program ("PPP")[1] funds, and

---

[1] In response to the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). This law, among other things, established the Paycheck Protection Program that allowed small businesses adversely affected by COVID-19 to apply for and receive a loan to pay for, among other things, payroll costs. Various regulations and restrictions applied to PPP applicants and recipients including those that relate to the size of the company (the

getting loan forgiveness on those loans, when they knew they did not qualify. Defendants moved to dismiss the case, which the Court denied. Now, with the record fully developed and Mr. Berkley's allegations tested during discovery, he filed a Motion for Partial Summary Judgment and Defendants filed a Motion for Summary Judgment. ECF Nos. 64, 75. Because the Court finds that discovery has not borne out Mr. Berkley's allegations made to defeat the public disclosure bar, it GRANTS Defendants' motion based on that FCA provision. ECF No. 75. The Court DENIES Mr. Berkley's Partial Motion for Summary Judgment. ECF No. 64.

## I. BACKGROUND

The facts here are extensive so the Court will only recount those facts that are relevant to the disposition of this case.

This lawsuit is against six companies. The PPP Recipients applied for and received PPP loans and loan forgiveness. The three New Harbor Defendants are private equity firms and the management company that employs the people who manage the investments. None of these entities applied for or received PPP loans.

Mr. Berkley's initial dispute here had nothing to do with the loans the PPP Recipients ultimately sought. It started with his broken-down landlord-tenant relationship with Ocean State. When the COVID-19 pandemic hit businesses across the globe, Ocean State's CEO, John Roselli emailed its landlords, including Mr. Berkley, notifying them that Ocean State believed it would not be able to pay its

---

affiliation requirement) and whether the loan is necessary (the necessity requirement).

2

rent. Mr. Berkley spoke with Mr. Roselli after this email and suggested that Ocean State get the rent money from New Harbor; he believed that New Harbor's controlling investment in Ocean State would require New Harbor to step in to make the payments. Mr. Roselli made it clear that that was not going to happen.

To pressure Ocean State to settle the rent dispute, Mr. Berkley alleged that he began investigating its PPP loan applications. His investigation included reading publicly available information and speaking with Ocean State employees and others with knowledge of the fraud. Along with this information, his professed expertise in private equity allowed him to, mosaic-style, discern the PPP Recipients' knowingly fraudulent loan applications and New Harbor's complicity and encouragement in the fraud.

Mr. Berkley filed a complaint under the FCA's qui tam provision, which encourages private citizens, often whistleblowers with insider information, to come forward with claims of fraud on the government. Mr. Berkley amended it twice so the Second Amended Complaint ("Complaint") is the operative one. ECF No. 28. In that Complaint, Mr. Berkley alleged that the PPP Recipients committed fraud because they falsely certified that they met the CARES Act's affiliation and necessity requirements–essentially he asserted that Ocean State, Blueprint, and Fyzical did not meet the size requirement and they had plenty of funds available to them via New Harbor, a well-capitalized private equity firm, so they did not qualify for a PPP loan. He alleged that New Harbor's liability is rooted in its ability to direct and control the PPP Recipients' actions.

3

All Defendants moved to dismiss his Complaint on the grounds that it was barred by the public disclosure provision and on substance for failure to state a claim. ECF No. 29. The Court denied the motion, finding Mr. Berkley's allegations, taken as true, were enough to confer jurisdiction and state a claim. ECF No. 33. Specifically, the Court determined that Mr. Berkley's allegations that his investigation of the fraud and professed expertise in private equity were sufficient to find that the public disclosure bar did not apply on the face of the Complaint.[2] Now that discovery is completed, Defendants move for summary judgment and Mr. Berkley moves for partial summary judgment. Defendants raise the public disclosure bar again, arguing that discovery has not borne the fruit Mr. Berkley promised in opposing that bar at the motion to dismiss stage.[3]

## II. STANDARD OF REVIEW

A party is entitled to summary judgment if the movant shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A party can show a genuine dispute by citing to

---

[2] At the time of the motion to dismiss, the parties mainly focused the Court on the *Daily Beast* article that discussed the appropriateness of other companies, not Defendants, filing PPP applications when they may not have met the SBA requirements. The information both parties invoke here comes from the Small Business Administration ("SBA") PPP loan data, New Harbor's website, press releases issued by New Harbor and republished by third-party news source websites, and a *Daily Beast* article.

[3] These motions also argue that there are no disputes of material fact—Mr. Berkley argues that the undisputed evidence shows that he has met the elements of his FCA claims and damages and Defendants counter that the undisputed evidence shows that he has not, or at the very least, argues that there are disputes particularly as to scienter, that a jury should decide.

materials in the record, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations ... admissions, interrogatory answers, or other materials," or by showing that the materials cited either do not establish a genuine dispute or are not supported by admissible evidence. *Id.* Summary judgment is mandated against a party who, given adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case ... on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A complete failure of proof of an essential element shows that there is "no genuine issue as to any material fact" because if one element fails, all other facts are rendered irrelevant; it entitles the moving party to "judgment as a matter of law" because, by definition, the nonmoving party cannot carry their burden at trial. *Id.* at 323.

### III. DISCUSSION

Because Defendants argue that the public disclosure bar should be applied here and an answer in the affirmative would deprive this Court of subject matter jurisdiction, the Court will address that argument first.

The FCA contains qui tam provisions that encourage private citizens to come forward with claims of fraud on the government. "The FCA allows private persons, called relators, to bring qui tam actions on behalf of the United States against persons or entities who knowingly submit false claims to the federal government." *United States ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 53 (1st Cir. 2009) (citing 31 U.S.C. § 3730(b)(1)). The United States can decide to prosecute the case, but if it

declines to do so, "the relator may pursue the action on its behalf." *Id.* (citing § 3730(b)(4)). "Either way, the relator is eligible to collect a portion of any damages awarded." *Id.* (citing § 3730(d)).

Because of this potential financial reward, the FCA contains conditions to limit or block a qui tam action "to walk a fine line between encouraging whistle-blowing and discouraging opportunistic behavior." *United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.*, 719 F.3d 31, 33 (1st Cir. 2013) (citations omitted). The public disclosure bar is one such condition; the statute provides that such action should be dismissed "if substantially the same allegations or transactions" "were publicly disclosed in a Federal criminal, civil, or administrative hearing,"; "in a congressional, Government Accountability Office or other Federal report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A). The "bar is designed to foreclose qui tam actions in which a relator, instead of plowing new ground, attempts to free-ride by merely repastinating previously disclosed badges of fraud." *Ondis*, 587 F.3d at 53.

Public disclosure occurs when allegations of fraud are placed in the public domain. In analyzing whether this bar applies here, the Court must undertake a three-part inquiry. The Court asks: "(1) whether there has been a prior, public disclosure of fraud; (2) whether that prior disclosure of fraud emanated from a source specified in the statute's public disclosure provision; and (3) whether the relator's qui tam action is 'based upon' that prior disclosure of fraud." *United States ex rel. Poteet*

6

*v. Bahler Med., Inc.*, 619 F.3d 104, 109 (1st Cir. 2010). If the undisputed record evidence here militates three "yes" answers, then the public disclosure bar applies, and this Court does not have jurisdiction unless the relator is the "original source" under 31 U.S.C. § 3730(e)(4)(B). *Id.*[4]

### A. Disclosure

Defendants argue that the essential elements of Mr. Berkley's claims–that 1) each PPP Recipient applied for a PPP loan and certified their applications, 2) New Harbor invested in those businesses, making them affiliates as defined in the CARES Act, and 3) the information that New Harbor and the PPP Recipients had a certain number of employees and New Harbor's funds held assets under management such that they could not meet the affiliation and necessity requirements could be found in publicly available sources. Mr. Berkley argues that Defendants have not identified a single source of alleged public disclosure of the fraud.

To be a relevant disclosure, it "must present either a direct allegation of fraud, or else both a misrepresented state of facts and a true state of facts such that the recipient may infer fraud. The misrepresented facts and the true facts may also appear in several separate disclosures that combine to create an inference of fraud." *United States ex rel. Conrad v. Abbott Lab'ys, Inc.*, Civil Action No. 02-11738-RWZ, 2013 WL 682740, at *3 (D. Mass. Feb. 25, 2013) (citing *Poteet*, 619 F.3d at 110, 110 n. 6). In this case, Defendants argue that the misrepresented state of facts (that the

---

[4] Mr. Berkley does not allege or argue that he qualifies as an "original source" of the fraud so the Court will not elaborate on the applicability of that exception.

PPP Recipients falsely certified compliance with the size and necessity requirements and falsely submitted claims for loan forgiveness) and the true facts (detailed corporate information about each PPP Recipient such as the number of employees and its relationship with New Harbor) were all publicly available in the identified sources.

To start, it is undisputed that, before he set out to file his case, Mr. Berkley had no documents from the PPP Recipients related to the loans, never spoke with any of their employees about the applications or any potential fraudulent scheme, did not work for any of the Defendants, and had no private information about New Harbor's assets under management or fee structure. Moreover, the essential elements of his FCA claim were all publicly available. Each PPP Recipient applied for a loan and completed the certifications. In July 2020, the Department of the Treasury published the PPP loan data and Mr. Berkley acknowledged that "[t]he fact that the three portfolio companies applied for PPP loans is something [he] learned from going to the [Treasury] website." ECF No. 78 ¶ 202. The day after he learned this information, he emailed Mr. Roselli related to the rent dispute, noting that Ocean State took PPP money. As to the element of whether Defendants falsely certified that they met the size, affiliation, and necessity requirements, the PPP Recipients' and New Harbor's employee counts and assets were publicly disclosed on ZoomInfo web pages, which Mr. Berkley relied on in alleging fraud in his original complaint. *See* ECF No. 1 at 30-31.

As to New Harbor's role, Mr. Berkley testified that the "fact that New Harbor had an investment [in] Ocean State. . . was publicly available in the news media at the time [he] filed this lawsuit." ECF No. 78 ¶ 215. And documents produced during discovery show that it was publicly known that New Harbor invested in each PPP Recipient, making the companies affiliates. *See id.* ¶¶ 20, 67, 114. New Harbor's assets were published in the Wall Street Journal and other news media sources published before Mr. Berkley filed his Complaint. *Id.* ¶ 212. And he confirmed that he saw those public sources, testifying that he "learned about" New Harbor's "assets under management" by "going online" where it was "publicly available." *Id.* ¶ 213.

The contradiction of PPP Recipients' certifications of size, necessity, and affiliation in their publicly available PPP applications and the true facts of their company data and affiliations with private equity and New Harbor, was publicly available such that it could "lead to a plausible inference of fraud." *Ondis*, 587 F.3d at 54. Even if "a person studying all of these sources would likely need substantial expertise in the field in order to find the alleged discrepancy[,] [] the only question is whether the material facts exposing the alleged fraud are already in the public domain, not whether they are difficult to recognize." *Conrad*, 2013 WL 682740, at *4 (citing *Ondis*, 587 F.3d at 59–60). Thus, the Court finds that the first element of the public disclosure bar has been met.

### B.   Source

Statutorily articulated sources are (1) "criminal, civil, or administrative hearing[s]," (2) "congressional, administrative, or Government Accounting Office

9

report[s], hearing[s], audit[s], or investigation[s]," or (3) "from the news media." *Poteet*, 619 F.3d at 113 (quoting *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 285-86 (2010)). The information both parties invoke here comes from the Small Business Administration ("SBA") PPP loan data, New Harbor's website, New Harbor's press releases issued and then republished by third-party news source websites, and a *Daily Beast* article. The Court determined on Defendants' motion to dismiss that these are all appropriate statutory sources, so this element is satisfied.

C.  **Basis**

The Court's decision declining to dismiss this case based on the public disclosure bar was rooted in Mr. Berkley's allegations that his investigation and expertise in private equity formed the basis for his claim, not information in the public. *United States ex rel. Berkley v. Ocean State, LLC*, C.A. No. 20-cv-538-JJM-PAS, 2023 WL 3203641, at *5 (D.R.I. May 2, 2023). The Court relied on his assertions that he conducted his own research leading him to draw inferences of fraud that the government could not see and of which it was not put on notice. He alleged that he detected "Defendants' alleged role in defrauding the government through his own investigation and knowledge" and "that he was only able to discern the fraud through his 'experience and knowledge of the private equity fund model and compensation structure, coupled with his investigation and analysis into New Harbor Capital and its portfolio companies.'" *Id.* (quoting ECF No. 28 ¶ 160.) Mr. Berkley now argues

10

that he discovered the fraud through a "mosaic theory"[5] where he gathered seemingly innocuous pieces of public and nonpublic information from various sources and formed fraud allegations that were materially advanced through his independent analysis, application of industry knowledge, and direct communications with Mr. Roselli and other insiders. Discovery has not borne this out.

An action is considered "based upon" previous public disclosures if "the relator's allegations are substantially similar to allegations or transactions already in the public domain at the time he brings his qui tam action." *Ondis*, 587 F.3d at 58. A complaint "is based on public disclosures for FCA purposes if the facts publicly available to [relator] could have been synthesized to form the same inference" as alleged in the complaint. *United States ex rel. Solomon v. Lockheed Martin Corp.*, 878 F.3d 139, 145 (5th Cir. 2017) (citing *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 331 (5th Cir. 2011)).

The undisputed facts in the record show that Mr. Berkley's fraud claims against these Defendants are substantially like transactions appearing in the public

---

[5] There is some debate over whether either party is attempting to apply the original source exception standard here when Mr. Berkley asserts that he has not invoked that exception. The Court believes, based on its reading of the briefs and case law, that confusion results from Mr. Berkley's mosaic theory because he is essentially arguing that he cobbled together the fraud from public sources that he investigated, along with his expertise. This is irrelevant because Mr. Berkley does not claim he is an original source but the Court notes that the First Circuit has declined to "join other circuits in holding that discovery and synthesis of information from different public sources during the course of an independent investigation can result in original sourcing[.]" *U.S. ex rel. Est. of Cunningham v. Millennium Lab'ys of Cal., Inc.*, 713 F.3d 662, 674–75 (1st Cir. 2013).

11

domain.  The public disclosures of PPP Recipients' applications revealed the information underlying the fraudulent scheme Mr. Berkley alleged, including employee counts, affiliation with a private equity firm, New Harbor's assets under management, and other public documents and websites confirming their eligibility (or ineligibility) for PPP loans and forgiveness.  He admitted that he found out that the PPP Recipients applied for PPP loans through the Department of the Treasury's website and researched New Harbor's assets under management, including its investments in the PPP Recipients by visiting public websites.  ECF No. 78 ¶¶ 199-218.

And as for his assertion that his Complaint was based on his experience with private equity, he conceded that his experience only informed his "allegation that New Harbor could have made cash available to the portfolio companies."  ECF No. 78 ¶ 230.  But he also noted that to conclude this, he relied on two publicly disclosed facts: that New Harbor had assets and an equity investment in each PPP Recipient.  Mr. Berkley also admitted that private equity structure and "[t]he fact that a private equity sponsor can inject liquidity, can provide cash … to its portfolio companies" is "general industry knowledge."  ECF No. 78 ¶¶ 231-234.

As to whether his investigation led to discovery of the fraud, Mr. Berkley said in his Complaint that he communicated with numerous Ocean State employees but admitted during discovery that his only contact with six out of eleven individuals he named as sources was that they were copied on the email that Mr. Roselli sent to all Ocean State's landlords about its inability to make rent.  *Id.* ¶ 226.  For example,

Ocean State physician Dr. Rocco Andreozzi testified that he never heard of Mr. Berkley. *Id.* ¶ 229. Of the others he said he spoke with, he testified that he did not know if any of them had any involvement with Ocean State's PPP application. That was confirmed by Ocean State physician Dr. Scott Wilson and two other Ocean State employees, Dina D'Alfonso and Julie D'Alesandro, who testified that they did not share any information with him. *Id.* ¶¶ 221, 225. Thus, it is undisputed that Mr. Berkley's investigation aimed at getting insider information from Ocean State employees bore no fruit.

"To achieve its real purpose, the FCA should reward only those who come forward with original, direct, and independent knowledge of a fraud." *Ondis*, 587 F.3d at 58 (citations omitted). "Under that interpretation, the FCA's real purpose is to reward whistleblowers with first-hand knowledge, not hard work and expertise." *Conrad*, 2013 WL 682740, at *7. Mr. Berkley's mosaic-building fraud claims created using tiles gathered from the public domain does not adhere to Congress' intent in passing the FCA. Therefore, the third and final element of the public disclosure inquiry is satisfied.

## IV.   CONCLUSION

The Court concludes that, on the full summary judgment record, the three aspects of the public disclosure inquiry are met here. The essential facts giving rise to an inference of fraud were publicly disclosed, the disclosure was through qualified sources according to the statute, and Mr. Berkley's FCA action is based on those public disclosures. There was no dispute that Mr. Berkley was not an original source

13

under the public disclosure provision. Thus, the Court lacks subject matter jurisdiction, see *Poteet*, 619 F.3d at 109–110; *Ondis*, 587 F.3d at 53, and can go no further.

The Court GRANTS Defendants' Motion for Summary Judgment. ECF No. 75. The Court DENIES Mr. Berkley's Motion for Partial Summary Judgment. ECF No. 64.

IT IS SO ORDERED.

*John J. McConnell, Jr.*

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

September 26, 2025